**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PACKAGING CORPORATION OF AMERICA, | ) ) ) | |
| *Plaintiff,* | ) ) | No. |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| NORTHLAND INSURANCE COMPANY, | ) ) ) | |
| *Defendant.* | ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND EXTRA-CONTRACTUAL RELIEF**

NOW COMES Packaging Corporation of America ("PCA"), through its counsel, and for its Complaint against Defendant Northland Insurance Company ("Northland"), with knowledge as to its own acts and on information and belief as to the acts of all others, alleges as follows:

**NATURE OF THE ACTION**

1.     This is an action for declaratory judgment, breach of contract, and extra-contractual relief against Northland under a liability insurance policy sold by Northland to J.A. Trucking, Inc. ("JA"), which explicitly names PCA as an insured.  PCA brings this action to redress Northland's breaches of its insuring obligations under the policy with respect to Northland's failure to defend an underlying lawsuit brought against PCA in Pennsylvania state court in connection with the death of Samuel Plazio. The underlying suit alleges that Mr. Plazio was killed when one of JA's employees, William Day, backed his truck into Mr. Plazio, pinning him between the truck and a loading dock at a PCA facility.

2.      The underlying litigation alleges that both JA and its driver, Mr. Day, were negligent in causing Mr. Plazio's death. Although the Northland policy includes a promise by Northland to defend the insureds, including PCA, against suits alleging bodily injury, Northland has failed and refused to defend PCA against the underlying suit on the false premise that there is no possibility that PCA could be required to pay damages in that suit for the negligence of JA or its driver. That is plainly not so under Pennsylvania tort law, and Northland's pretense to the contrary, along with its failure to respond promptly and reasonably to PCA's communications and requests for coverage are textbook bad faith.

3.      In addition to its bad faith denial of coverage, Northland has violated applicable insurance regulations and statutes by, among other things, failing to conduct a reasonable investigation of the facts underlying the occurrence giving rise to the lawsuit against PCA, by failing to account for the operation of Pennsylvania tort law and its effect on PCA's potential liability, and by failing to timely respond to PCA's communications regarding the underlying litigation.

4.      Northland's denials of coverage and its claims handling conduct are vexatious, unreasonable, and constitute breaches of Northland's statutory and regulatory duties and its common law duties of good faith and fair dealing toward PCA.

### THE PARTIES

5.      Plaintiff PCA is a corporation organized under the laws of Delaware, with its principal place of business in Lake Forest, Illinois.

6.      Defendant Northland is a corporation organized under the laws of Connecticut, with its principal place of business in Connecticut.  At all relevant times, Northland was licensed to do and was doing business in the State of Illinois, including in this District.

.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201 insofar as the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, insofar as, among other things, Northland issued endorsements under the Policy that provide coverage to PCA, a company headquartered in this District, and PCA suffered injury in this District as a direct result of the acts and omissions of Northland that are alleged herein.

## THE INSURANCE POLICY ISSUED BY NORTHLAND

9.     Northland issued Policy No. WF011456 to JA for the policy period of June 1, 2022 to June 1, 2023 (the "Policy").  A true and correct copy of the Policy is attached hereto as Exhibit A.

10.     Under the Policy, Northland promised to reimburse all sums that an insured becomes legally obligated to pay as damages because of bodily injury caused by an accident resulting from the ownership, maintenance or use of a covered auto. Under the Policy, Northland also agreed to defend any insured against a suit seeking such damages.

11.     The Policy defines "bodily injury" to include "bodily injury, sickness or disease sustained by a person including death resulting from any of these."

12.     The Policy defines "auto" to include a "land motor vehicle, 'trailer' or semitrailer designed for travel on public roads."

13.     The Policy includes two endorsements entitled "Additional Insured – Designated Person or Organization" that specifically name PCA in the "Schedule of Additional Insured Persons or Organizations."

14.     Any conditions and requirements imposed on PCA by the Policy, including but not limited to notice of claims or occurrences, have been satisfied and/or have been waived and/or are subject to an estoppel or other avoidance against Northland.

## THE UNDERLYING LAWSUIT AGAINST PCA, JA AND DAY, AND NORTHLAND'S DELAYED DENIAL OF COVERAGE

15.     On or about October 5, 2023, Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, initiated a lawsuit against PCA, JA, and Day in Pennsylvania state court (the "Plazio Suit") asserting claims against them arising out of an incident that took place on or about June 6, 2022 at PCA's facility located in Cheswick, Pennsylvania. A true and correct copy of the complaint in the Plazio Suit is attached hereto as Exhibit B.  The Plazio Suit alleges that Mr. Plazio was killed when he was crushed by a truck negligently driven by Mr. Day and that JA is vicariously liable for Mr. Day's negligence in causing Mr. Plazio's death.

16.     Under Pennsylvania's Fair Share Act ("FSA"), a defendant's liability is joint and several "[w]here the defendant has been held liable for not less than 60% of the total liability apportioned to all parties…." 42 Pa. C.S. § 7102(a.1)(iii)(3). Thus, if PCA were held to be at least 60% at fault in causing Mr. Plazio's death, PCA can be held jointly and severally liable to the underlying plaintiff and required to pay all damages awarded, even if JA and Mr. Day shared fault in bringing about the incident alleged in the Plazio Suit. PCA can similarly be held jointly and severally liable to the underlying plaintiff and required to pay all damages awarded, if a court were to determine that the FSA does not apply to the Plazio Suit. The Plazio Suit thus puts PCA at risk of being held liable for the acts and omissions of co-defendants JA and Mr. Day.

- 4 -

17.     Northland was timely notified of the incident giving rise to the Plazio Suit and the filing of the Plazio Suit.

18.     By letter dated October 12, 2023, PCA tendered the complaint in the Plazio Suit to Northland for defense and indemnity.

19.     On October 26, 2023, Northland responded to PCA's October 12, 2023 tender by merely acknowledging receipt of the tender and stating that Northland was "in the process of evaluating and will respond." No coverage decision was provided at that time, and no additional information was requested by Northland.

20.     Northland failed to provide any coverage determination to PCA in response to PCA's October 12, 2023 tender during the month of November 2023.

21.     Northland did not request any information from PCA concerning the Plazio Suit or the incident giving rise to it during the month of November 2023.

22.     Northland failed to provide any coverage determination to PCA in response to PCA's October 12, 2023 tender during the month of December 2023.

23.     Northland did not request any information from PCA concerning the Plazio Suit or the incident giving rise to it during the month of December 2023.

24.     On January 9, 2024, counsel for PCA contacted Northland via email in view of Northland's failure to provide PCA with a coverage determination in response to PCA's October 12, 2023 tender of the Plazio Suit. In that email, counsel for PCA informed Northland that it was "critical" that PCA hear back from Northland promptly and that PCA was considering retaining new defense counsel for the Plazio Suit.

25.     Northland failed to provide any coverage determination to PCA in response to PCA's October 12, 2023 tender during the month of January 2024.

26.     Northland did not request any information from PCA concerning the *Plazio* Suit or the incident giving rise to it during the month of January 2024.

27.     Northland did not request any input concerning PCA's retention of defense counsel.

28.     On February 1, 2024, having still received no coverage determination, request for additional information, or request for input on selection of defense counsel in response to a tender that was now more than 100 days old or in response to PCA's follow-up, counsel for PCA again contacted Northland via email to remind Northland that it still owed PCA a coverage determination and to inform Northland of its selection of new defense counsel for the *Plazio* Suit.

29.     On February 7, 2024, Northland finally responded to PCA's October 12, 2023 tender by denying coverage to PCA for the *Plazio* Suit, asserting that PCA does not qualify for coverage under the Policy on the purported basis that the *Plazio* Suit's allegations against PCA are "for PCA's independent acts of negligence."

30.     In denying coverage to PCA, Northland seeks to read the complaint in the *Plazio* Suit with blinders on, ignoring the allegations against Mr. Day and JA that appear in the very same complaint, ignoring facts that are known and/or reasonably ascertainable by Northland through reasonable investigation, and ignoring the readily ascertainable nature of Pennsylvania tort law, which renders PCA potentially liable for damages arising from the alleged acts or omissions of Mr. Day and JA.

## COUNT I - BREACH OF CONTRACT

31.     PCA incorporates by reference and realleges Paragraphs 1 through 30, as though fully stated herein.

32.     The *Plazio* Suit alleges that Mr. Plazio suffered "bodily injury" that resulted from ownership, maintenance or use of a covered "auto" as those terms are used in the Policy.

33.     Although Northland received notice of the Plazio Suit and demand has been made on Northland for defense of PCA against that suit, Northland has failed and refused to perform its contractual obligations to provide defense coverage to PCA with respect to the Plazio Suit.

34.     By virtue of this failure and refusal, Northland is in breach of its obligations under the Policy.

35.     Any conditions precedent to coverage under the Policy have been satisfied, waived, or are otherwise inapplicable.

36.     As a result of Northland's breaches of the Policy, PCA has been denied the benefits of insurance coverage under the Policy and PCA has incurred damages for amounts it has paid as a result of the Plazio Suit, including attorneys' fees and expenses it has been forced to incur and will continue to incur in defense of the Plazio Suit.

WHEREFORE, PCA respectfully prays that the Court:

A.   Award PCA its actual damages sustained as a result of Northland's breaches of the Policy, in an amount to be established through proof at trial;

B.   Award PCA its costs and expenses, including but not limited to attorneys' fees, in bringing and pursuing this action;

C.   Award PCA pre-judgment and post-judgment interest; and

D.   Award PCA any other and further relief to which it is entitled.

## COUNT II – DECLARATORY RELIEF

37.     PCA incorporates by reference and realleges Paragraphs 1 through 36, as though fully stated herein.

38.     Pursuant to the terms and conditions of the Policy, Northland is obligated to defend PCA against the Plazio Suit.

39.     Northland has denied that it is obligated to defend PCA against the Plazio Suit.

40.     An actual controversy of a justiciable nature presently exists between PCA and Northland concerning the parties' rights and obligations under the Policy.

WHEREFORE, PCA respectfully prays that the Court:

    A.   Declare that Northland is obligated to defend PCA against the Plazio Suit;

    B.   Award PCA its costs and expenses, including but not limited to attorneys' fees, in bringing and pursuing this action;

    C.   Award PCA pre-judgment and post-judgment interest; and

    D.   Award PCA any other and further relief to which it is entitled.

## COUNT III – EXTRA-CONTRACTUAL RELIEF

41.     PCA incorporates by reference and realleges Paragraphs 1 through 40, as though fully stated herein.

42.     Northland's breaches of the Policy and failure to defend PCA are unreasonable, frivolous, unfounded, outrageous and/or otherwise in violation of common law and applicable statute, including but not limited to 42 Pa. C.S.A. § 8371, to the extent that Pennsylvania law applies to Northland's conduct.

43.     As a direct and natural consequence of Northland's conduct, to the extent that Pennsylvania law applies, PCA is entitled to the common law and statutory remedies provided therefor, including without limitation, money damages in an amount to be proven at trial, punitive damages in an amount sufficient to deter Northland from such conduct in the future, statutory penalties, attorneys' fees and costs, and interest.

44.     Northland's breaches of the Policy and failure to defend PCA are vexatious and unreasonable in violation of 215 ILCS § 5/155, to the extent that Illinois law applies to Northland's

conduct, pursuant to which PCA is entitled to statutory remedies, including without limitation, money damages in an amount to be proven at trial, statutory penalties, attorneys' fees, and costs.

WHEREFORE, PCA respectfully prays that the Court:

A.  Award PCA its actual damages sustained as a result of Northland's breaches of the Policy, in an amount to be established through proof at trial;

B.  Award PCA punitive damages in an amount sufficient to deter Northland from future acts of bad faith;

C.  Award PCA its costs and expenses, including but not limited to attorneys' fees, in bringing and pursuing this action;

D.  Award PCA statutory penalties and/or statutory damages;

E.  Award PCA pre-judgment and post-judgment interest; and

F.  Award PCA any other and further relief to which it is entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all issues deemed so triable.

Dated: February 26, 2024                    Respectfully submitted,


By: /s/ *Thomas A. Marrinson*
Thomas A. Marrinson
REED SMITH LLP
10 S. Wacker Drive, 40th Floor
Chicago, Illinois 60606
Telephone: (312) 207-3868
Facsimile: (312) 207-6400
tmarrinson@reedsmith.com

*COUNSEL FOR PLAINTIFF PACKAGING CORPORATION OF AMERICA*

# **<u>EXHIBIT A</u>**

## CERTIFIED POLICY

This certification is affixed to a policy which is a true and accurate copy of the document in the company's business records as of the date shown below.

**No additional insurance is afforded by this copy.**

Northland Insurance Company

**Name of Insuring Company(ies)**

| WF011456 | 06/01/2022 - 06/01/2023 | 07/29/2022 |
|---|---|---|
| **Policy Number(s)** | **Policy Period(s)** | **Date** |

Kenneth Kupec, Second Vice President
BI Document Management



**Northland Insurance Company**
St. Paul, MN 55102

**COMMON POLICY
DECLARATIONS**

Policy No: WF011456

Producer No: 239000002        Retail No:        Previous Policy No: WF011420

**POLICY PERIOD:**        From  06/01/2022   To  06/01/2023        **Term:** 1 Year
at 12:01 A.M. Standard Time at your mailing address shown below.

**Named Insured:**
J A Trucking Inc

**Mailing Address:** 212 Country Ln

West Newton        PA   15089
**BUSINESS DESCRIPTION:** Truckman

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| COVERAGE PART DESCRIPTION | PREMIUM |
|---|---|
| Commercial Auto Coverage Part ................................................. | $ 428,637.00 |
| Commercial General Liability Coverage Part ................................ | $ 2,000.00 |
| **POLICY TOTAL** | $ 430,637.00 |

**FORMS AND ENDORSEMENTS**

The schedule of coverage declarations, forms and endorsements shown on NL-2500 make up your policy as of the effective date shown above.

Producer Name/Address:        814-255-7878
RSG Specialty, LLC
2307 Menoher Blvd
Johnstown, PA 15905

06/15/2022 BH        By
Date        Producer's Signature

TDL-04 (1/07)        Includes copyrighted material of Insurance Services Office, Inc., with its permission.



P. O. Box 64816
St. Paul, MN 55164-0816

June 15, 2022

J A Trucking Inc
212 Country Ln
West Newton, PA 15089

Thank you for choosing Northland Insurance for your insurance needs. Northland has insured trucking businesses since 1948. In the nearly 70 years since then, we have learned a lot about what it takes to keep trucks on the road, safely and profitably. With a specialized array of products, services and industry expertise, Northland is an industry leader. The total of this knowledge makes up the Northland Advantage.

Your business will benefit from the Northland Advantage in many ways. We will support you with the best service possible, as well as provide tools that can help you with your day-to-day operations.

The insurance coverage you have just selected is supported by many other services such as excellent claim and filing services, as well as robust safety and loss prevention services, including:

- **Consultation services** to help you assess and address your loss exposures.
- **Vehicle safety program assessment** done by specialists experienced in developing safety programs for a wide range of commercial fleets.
- **Northlandins.com** offers you valuable safety information, along with other industry information. To obtain your account number to access these safety materials, please call us at 800.363.2242, option 2 and have your policy number available.
- **Target Accident Reduction Plans (TARPs)** that provide prevention training for common loss types.
- **Safety training and programs**.
- **Drive Times**, our newsletter developed especially for you, contains helpful articles and useful information.
- **24-hour claim services** with experienced adjusters to ensure you are back on the road fast.
- **Specialized** accident and cargo theft investigation.
- **Staff legal representation** when and where you need it.
- **Free filings** where needed.

The Claim Center is available to handle claim reporting 24 hours a day, seven days a week. Reporting a claim is easy:
**Phone:** 800.328.5972 (24 hours)     **Fax:** 866.248.4608     **Email:** nccc@northlandins.com

For specific details on all our services, please call us at 800.237.9334, extension 10527.

Welcome to the Northland Advantage. We look forward to a long and valuable relationship. On behalf of RSG Specialty, LLC, thank you for placing your coverage with us.

Sincerely yours,

Brian Jermeland
President, Northland Transportation

 **Northland Insurance Company**
385 Washington Street, St. Paul, MN 55102
1-800-237-9334     Claims:  1-800-328-5972

# COMMERCIAL INSURANCE
# POLICY

**Your Policy Number:**  WF011456

This policy consists of this policy cover, the Declarations and the forms, schedules and endorsements listed.  READ YOUR POLICY CAREFULLY.

In return for the payment of the premium, the insuring company agrees with the Named Insured to provide the insurance afforded by this policy.  That insurance will be provided by the company indicated as insuring company in the Declarations.

**In Witness Whereof,** we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative for us.

Secretary

President

TJL-01 (1/07)  (Rev. 9-18)

# SCHEDULE OF FORMS AND ENDORSEMENTS

**Effective Date:** 06/01/2022                                          **Policy No:** WF011456
**Named Insured:**
J A Trucking Inc

The following schedule of coverage declarations, forms and endorsements make up your policy as of the effective date shown above.

**COMMON POLICY DECLARATIONS - TDL-04 (1/07)**
The following forms and endorsements apply to all coverage parts:

| | |
|---|---|
| TJL-01 (1/07) | Commercial Insurance Policy Jacket |
| TDL-04 (1/07) | Common Policy Declarations |
| NL-2500 (1/07) | Schedule of Forms and Endorsements |
| N-695 (1/15) | Important Notice |
| N-3208 (6/00) | Important Notice Regarding Your Financial Responsibility Insurance Identification Card |
| N-3383 (9/16) | Important Notice Regarding Compensation Disclosure |
| T-502 (6/13) | Deposits |
| IL 09 10 (07/02) | Pennsylvania Notice |
| N-3775 (6/20) | Notice of Change in Policy Terms |
| N-3791 (11/21) | Notice Of Change In Policy Terms - Combination Endorsements |
| IL T4 14 (01/21) | Cap on Losses From Certified Acts of Terrorism |
| S2965-IL (3/15) | Amendment of Common Policy Conditions Prohibited Coverage - Unlicensed Insurance Trade or Economic Sanctions |
| TL 035A (1/20) | Monthly Report |
| TL 035B (1/20) | Monthly Report - Vehicle Changes |
| IL 00 17 (11/98) | Common Policy Conditions |
| IL 00 21 (09/08) | Nuclear Energy Liability Exclusion Endorsement |
| T-344 (9/16) | Combined Deductible |
| T-432 (1/20) | Reporting Base and Monthly Reporting Requirements |
| T-481 (9/16) | Identity Theft Expense Reimbursement Coverage |
| IL 02 46 (09/07) | Pennsylvania Changes - Cancellation and Nonrenewal |
| TL-018 (8/12) | Schedule of Autos - Monthly Reporting Policy |

**COMMERCIAL AUTO DECLARATIONS - TDL-01 PA (3/20)**
The following forms and endorsements apply to the Commercial Auto Coverage Part only:

| | |
|---|---|
| TDL-01 PA (3/20) | Pennsylvania Commercial Auto Declarations |
| CA 00 20 (10/13) | Motor Carrier Coverage Form |
| MCS-90 (6/21) | Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980 |
| T-006 (9/16) | Punitive Damages Exclusion |
| TL-164 (9/16) | Additional Insured - Designated Person or Organization |
| T-217 (9/16) | Additional Conditions |
| T-224 (9/16) | Physical Damage Coverage Changes |
| TL-237 (1/20) | Covered Auto Symbols - Reported Autos |
| T-538 (6/14) | Amendment of Covered Auto Designation Symbols |

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| CA T6 26 (02/19) | Exclusion - Who Is An Insured - Users Of Trailers |
| CA T6 33 (08/19) | Employee Redefined For Employment Exclusions |
| CA 01 80 (03/21) | Pennsylvania Changes |
| CA 03 02 (10/13) | Deductible Liability Coverage |
| CA 21 92 (10/13) | Pennsylvania Uninsured Motorists Coverage - Nonstacked |
| CA 21 93 (10/13) | Pennsylvania Underinsured Motorists Coverage - Nonstacked |
| CA 22 37 (10/13) | Pennsylvania Basic First Party Benefit |
| CA 99 48 (10/13) | Pollution Liability - Broadened Coverage For Covered Autos |

### COMMERCIAL GENERAL LIABILITY DECLARATIONS - TDL-25 (8/12)

The following forms and endorsements apply to the Commercial General Liability Coverage Part only:

| | |
|---|---|
| TDL-25 (8/12) | General Liability Declarations |
| CG 00 01 (12/07) | Commercial General Liability Coverage Form |
| S42-CG (2/16) | Total Pollution Exclusion With Exceptions For Building Heating, Cooling Or Dehumidifying And Personal Hot Water Heating Equipment And Hostile Fire |
| S43-CG (1/14) | Exclusion - Punitive Or Exemplary Damages |
| S267-CG (2/22) | Combination Endorsement Bodily Injury And Property Damage Liability |
| S2582-CG (1/13) | Exclusion - Aircraft, Auto or Watercraft |
| IL T3 68 (01/21) | Federal Terrorism Risk Insurance Act Disclosure |
| S2623-CG (8/21) | Combination Endorsement Personal and Advertising Injury Liability |
| CG 20 26 (07/04) | Additional Insured - Designated Person or Organization |
| CG 21 32 (05/09) | Communicable Disease Exclusion |
| CG 24 26 (07/04) | Amendment of Insured Contract Definition |

# IMPORTANT NOTICE

ALL PERSONS DRIVING FOR THE INSURED DURING THE TERM OF THIS POLICY MUST BE IMMEDIATELY REPORTED TO THE INSURANCE COMPANY. FAILURE TO REPORT MAY RESULT IN TERMINATION OR NON-RENEWAL OF THIS POLICY.



N-695 (1/15)

## IMPORTANT NOTICE
### Regarding Your Financial Responsibility Insurance Identification Card

The Northland Insurance Company is required by Pennsylvania law to send you an I.D. card. The card shows that an insurance policy has been issued for the vehicle(s) described satisfying the financial responsibility requirements of the law.

If you lose the card, contact your insurance company or agent for a replacement.

The I.D. card information may be used for vehicle registration and replacing license plates. If your liability insurance policy is not in effect, the I.D. card is no longer valid.

You are required to maintain financial responsibility on your vehicle. It is against Pennsylvania law to use the I.D. card fraudulently such as using the card as proof of financial responsibility after the insurance policy is terminated.

N-3208 (6/00)

## IMPORTANT NOTICE REGARDING COMPENSATION DISCLOSURE

For information about how Northland compensates its agents, brokers and program managers, please visit this website:

https://www.travelers.com/w3c/legal/Producer_Compensation_Disclosure.html

If you prefer, you can call the following toll-free number: 1-866-904-8348.  Or you can write to us at Northland Insurance Companies, c/o Law Department, One Tower Square, Hartford, CT 06183.

N-3383 (9/16)

© 2016 The Travelers Indemnity Company.  All rights reserved.

## DEPOSITS

A Deposit amount is shown in the Declarations. Deposits are due at policy inception. Failure to remit a Deposit can result in cancellation of your policy. The total Deposit amount will be available to us for any past due and owing premium or deductibles. Deposits must be in the form of cash or a Northland-approved letter of credit.

We will return the Deposit only after:

**a.** The policy has expired or is cancelled;

**b.** You have submitted all monthly reports and paid all premium due (subject to any applicable minimum premium indicated on the Declarations) after the completion of an audit or inspection;

**c.** All liability claims are closed; and

**d.** You have remitted to us all outstanding deductible amounts.

T-502 (6/13)

© 2013 The Travelers Indemnity Company. All rights reserved.

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

Copyright, ISO Properties, Inc., 2001

## NOTICE OF CHANGE IN POLICY TERMS -

### REPORTING BASE AND MONTHLY REPORTING REQUIREMENTS T-432 (8/12) to T-432 (1/20)
### COVERED AUTO SYMBOLS - REPORTED AUTOS TL-237 (8/12) to TL-237 (1/20)

YOUR NEW POLICY WILL INCLUDE COVERAGE CHANGES FROM YOUR EXPIRING POLICY. THE IMPORTANT COVERAGE CHANGES ARE IDENTIFIED IN THIS NOTICE. PLEASE READ THIS NOTICE CAREFULLY.

YOUR NEW POLICY ALSO MAY INCLUDE CERTAIN WORDING AND FORMATTING CHANGES FOR THE PURPOSE OF CLARIFICATION OR IMPROVED READABILITY. THIS NOTICE DOES NOT NECESSARILY IDENTIFY ANY OR EVERY SUCH CLARIFICATION OR EDITORIAL CHANGE.

NO COVERAGE IS PROVIDED BY THIS NOTICE. THIS NOTICE DOES NOT AMEND ANY PROVISION OF YOUR EXPIRING POLICY OR YOUR NEW POLICY. YOU SHOULD REVIEW YOUR ENTIRE POLICY CAREFULLY FOR COMPLETE INFORMATION ON THE COVERAGES PROVIDED AND TO DETERMINE YOUR RIGHTS AND DUTIES UNDER YOUR POLICY. PLEASE CONTACT YOUR AGENT OR BROKER IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR ITS CONTENTS. IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF YOUR POLICY PREVAIL.

### REPORTING BASE AND MONTHLY REPORTING REQUIREMENTS

The Reporting Base and Monthly Reporting Requirements form T-432 (8/12) has been replaced with a new edition of that form, Reporting Base and Monthly Reporting Requirements T-432 (1/20).

**The following changes clarify coverage.**

The following conditions have been added:

1. You are required to report any autos acquired during the month on the first monthly report following the acquisition of the auto. If an additional auto is not reported on the first monthly report following the acquisition of the auto, it will not be considered a covered auto and coverage for that auto is not effective until the date the auto is reported to us.

2. Failure to report your record of the reporting base to us by the 15th day of the month or failure to pay the earned premium due for the preceding month gives us the right to cancel the policy. When you fail to file your report, we will have the right, without any further demand or notice, to estimate any premium due and owing to us under the policy.

### COVERED AUTO SYMBOLS - REPORTED AUTOS

The Covered Auto Symbols - Reported Autos form TL-237 (8/12) has been replaced with a new edition of that form, Covered Auto Symbols - Reported Autos form TL-237 (1/20), if this endorsement is part of your policy.

**The following changes clarify coverage.**

The covered auto symbol definitions have been modified to include the following:

1. Autos added after the inception of the policy must be reported on the first monthly report following the acquisition of the auto and reported by the monthly report due date of the 15th day of the month. An additional auto will not be a covered auto until the date it is reported to us unless it is reported on the first monthly report following its acquisition.

If you have any questions about your insurance program, please contact your agent or local Company representative.

## NOTICE OF CHANGE IN POLICY TERMS

**Combination Endorsement Bodily Injury And Property Damage Liability
S267-CG (2/22) or P267-CG (2/22)**

**Combination Endorsement Personal And Advertising Injury Liability
S2623-CG (8/21), S2623-CG (2/22) or P2623-CG (2/22)**

**YOUR NEW POLICY INCLUDES COVERAGE CHANGES FROM YOUR PREVIOUS POLICY.
THE IMPORTANT COVERAGE CHANGES ARE IDENTIFIED IN THIS NOTICE. PLEASE READ
THIS NOTICE CAREFULLY.**

**WE ALSO MAY HAVE MADE CERTAIN WORDING AND FORMATTING CHANGES FOR THE
PURPOSE OF CLARIFICATION OR IMPROVED READABILITY. THIS NOTICE DOES NOT
NECESSARILY IDENTIFY ANY OR EVERY CLARIFICATION OR EDITORIAL CHANGE MADE.**

**NO COVERAGE IS PROVIDED BY THIS NOTICE. THIS NOTICE DOES NOT AMEND ANY
PROVISION OF YOUR POLICY. YOU SHOULD REVIEW YOUR ENTIRE POLICY CAREFULLY
FOR COMPLETE INFORMATION ON THE COVERAGES PROVIDED AND TO DETERMINE
YOUR RIGHTS AND DUTIES UNDER YOUR POLICY. PLEASE CONTACT YOUR AGENT OR
BROKER IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR ITS CONTENTS. IF
THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS
OF YOUR POLICY PREVAIL.**

The Combination Endorsement Bodily Injury And Property Damage Liability (S267-CG (6/14) or appropriate
state-specific version) and the Combination Endorsement Personal And Advertising Injury Liability (S2623-CG (6/14) or
appropriate state-specific version) included in your expiring policy will be replaced at renewal with the Combination
Endorsement Bodily Injury And Property Damage Liability (S267-CG (2/22) or appropriate state-specific version) and
the Combination Endorsement Personal And Advertising Injury Liability (S2623-CG (8/21) or appropriate state-specific
version), respectively.

**The following changes in both the Combination Endorsement Bodily Injury And Property Damage Liability and the
Combination Endorsement Personal And Advertising Injury Liability reduce coverage:**

- The Asbestos Or Silica exclusion has been split into separate Asbestos and Silica Or Silica-Related Dust exclusions.

    O   The Asbestos exclusion will also exclude the following:

    - Injury or damage arising out of the actual or alleged presence or actual, alleged or threatened dispersal of
      any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids,
      alkalis, chemicals and waste that are part of any claim or "suit" which also alleges injury or damage arising
      out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers
      or products containing asbestos; and
    - Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement
      to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or respond to or assess the effects
      of asbestos, asbestos fibers or products containing asbestos; or any claim or suit by or on behalf of any
      governmental authority or any other person or organization because of such testing for, monitoring,
      cleaning up, removing, containing, treating, detoxifying, neutralizing, or responding to or assessing the
      effects of asbestos, asbestos fibers or products containing asbestos.

    O   The Silica Or Silica-Related Dust exclusion will include defined terms "silica", meaning silicon dioxide (occurring
        in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds, and "silica-related
        dust", meaning a mixture or combination of "silica" and other dust or particles.

- The Discrimination exclusion will include discrimination based upon pregnancy, color, citizenship, veteran status, genetic information, mental disability, or any other attribute, trait, condition or status that qualifies a person for protection against discrimination under federal, state or local law.

- The Employment-Related Practices exclusion will include injury arising out of a failure to promote or advance.

**The following changes in the Combination Endorsement Personal And Advertising Injury Liability reduce, or may reduce, coverage:**

- The Pollution-Related exclusion now applies to any claim or suit by or on behalf of any other person or organization because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

- The Intellectual Property exclusion now includes additional wording to clarify that the exclusion applies when any party to a claim or suit, including any insured, alleges an infringement or violation of intellectual property rights or laws. This is a wording change that reinforces our intent and, therefore, does not change coverage. This change may be considered to reduce coverage, however, if the exclusion in your previous policy is interpreted to apply only when allegations of such infringement or violation are made against the insured.

- Definitions of "fungi" and "independent contractor" have been added. These changes may be considered coverage reductions if the definitions are interpreted to be narrower than the undefined terms.

© 2021 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM
    CYBERFIRST GENERAL PROVISIONS FORM
    DELUXE PROPERTY COVERAGE PART
    EMPLOYEE BENEFITS LIABILITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EMPLOYMENT PRACTICES LIABILITY⁺ WITH IDENTITY FRAUD EXPENSE REIMBURSEMENT
        COVERAGE PART
    ENVIRONMENTAL HAZARD POLICY
    EQUIPMENT BREAKDOWN COVERAGE PART
    EXCESS FOLLOW-FORM AND UMBRELLA LIABILITY INSURANCE
    EXCESS (FOLLOWING FORM) LIABILITY INSURANCE
    LAW ENFORCEMENT LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MANUFACTURERS ERRORS AND OMISSIONS LIABILITY COVERAGE PART
    MEDFIRST PRODUCTS/COMPLETED OPERATIONS, ERRORS AND OMISSIONS, AND
        INFORMATION SECURITY LIABILITY COVERAGE FORM
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK DEPARTMENT OF
        TRANSPORTATION
    TRAVELERS PROPERTY COVERAGE PART
    TRIBAL BUSINESS MANAGEMENT LIABILITY COVERAGE PART
    Any other Coverage Part or Coverage Form included in this policy that is subject to the federal Terrorism Risk
        Insurance Act of 2002 as amended

The following is added to this policy. This provision can limit coverage for any loss arising out of a "certified act of terrorism" if such loss is otherwise covered by this policy. This provision does not apply if and to the extent that coverage for the loss is excluded or limited by an exclusion or other coverage limitation for losses arising out of "certified acts of terrorism" in another endorsement to this policy.

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our insurer deductible under "TRIA", we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of "TRIA", to be an act of terrorism pursuant to "TRIA". The criteria contained in "TRIA" for a "certified act of terrorism" include the following:

© 2020 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

IL T4 14 01 21

Page 1 of 2

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to "TRIA"; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"TRIA" means the federal Terrorism Risk Insurance Act of 2002 as amended.

© 2020 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

IL T4 14 01 21

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMENDMENT OF COMMON POLICY CONDITIONS - PROHIBITED COVERAGE - UNLICENSED INSURANCE AND TRADE OR ECONOMIC SANCTIONS

This endorsement modifies insurance provided under the following:

ALL COVERAGES INCLUDED IN THIS POLICY

The following is added to the Common Policy Conditions:

**Prohibited Coverage - Unlicensed Insurance**

1. With respect to loss sustained by any insured, or loss to any property, located in a country or jurisdiction in which we are not licensed to provide this insurance, this insurance does not apply to the extent that insuring such loss would violate the laws or regulations of such country or jurisdiction.

2. We do not assume responsibility for:

   a. The payment of any fine, fee, penalty or other charge that may be imposed on any person or organization in any country or jurisdiction because we are not licensed to provide insurance in such country or jurisdiction; or

   b. The furnishing of certificates or other evidence of insurance in any country or jurisdiction in which we are not licensed to provide insurance.

**Prohibited Coverage - Trade Or Economic Sanctions**

We will provide coverage for any loss, or otherwise will provide any benefit, only to the extent that providing such coverage or benefit does not expose us or any of our affiliated or parent companies to:

1. Any trade or economic sanction under any law or regulation of the United States of America; or

2. Any other applicable trade or economic sanction, prohibition or restriction.

# MONTHLY REPORT

**Named Insured:**                                                         **Policy No:** WF011456

J A Trucking Inc
212 Country Ln

**For the Period Beginning:** _____ **And Ending:** _____

MONTHLY REPORTING PREMIUM

| GRP | COVERAGE | REPORTING BASE | EXPOSURE FOR THE PERIOD | X MONTHLY RATE | = PREMIUM |
|-----|----------|----------------|-------------------------|----------------|-----------|
| A | Covered Autos Liability<br>Uninsured Motorist-CSL<br>Underinsured Motorist-CSL<br>Basic First Party Benefits<br>Non-Owned Auto | Mileage<br>Per 100 Miles | | 11.8600 | |

|  |  | Total Reporting | $ | |
|--|--|-----------------|---|-|
|  |  | *Monthly Reporting Minimum | $ | 24,913.00 |

| GRP | COVERAGE | REPORTING BASE | EXPOSURE FOR THE PERIOD | X MONTHLY RATE | = PREMIUM |
|-----|----------|----------------|-------------------------|----------------|-----------|
| B | Comprehensive<br>Collision | Stated Limit Of Equipment<br>Per $100 of Limit | | .3617 | |
| C | Covered Autos Liability<br>Uninsured Motorist-CSL<br>Underinsured Motorist-CSL<br>Basic First Party Benefits | Reported Autos<br>Per Reported Auto | | 109.0000 | |

|  |  | Total Reporting | $ | |
|--|--|-----------------|---|-|
|  |  | *Monthly Reporting Minimum | $ | N/A |

**\*\*Total Monthly Reporting Premium Due** $ _____

*Use the Monthly Reporting Minimum in calculating amount due if greater than the Total Reporting amount above.
**Total Monthly Reporting Premiums must reflect minimums where applicable.

**Vehicles Added, Deleted or Amended during the Reporting Period must be reported
on the MONTHLY REPORT - VEHICLE CHANGES form.**

**FAILURE TO PAY TOTAL PREMIUM DUE GIVES US THE RIGHT TO CANCEL THE POLICY.**

I hereby attest that the above report and reported vehicle changes are true and correct and acknowledge MONTHLY REPORT is part of the policy. I understand that to the extent there are vehicles that I fail to report, any unreported "autos" will not be covered "autos" as Symbol 73 Reported "Autos" or Symbol 11 Reported "Autos".

Named Insured _____ Date _____

# MONTHLY REPORT - VEHICLE CHANGES

**Named Insured:**                                                                                          **Policy No:** WF011456
J A Trucking Inc

**For the Period Beginning:** _____ **And Ending:** _____

Physical Damage Coverage applies only for "autos" Added or Amended below for which there is a Stated Limit shown.

Action*           =    (1) Add, (2) Amend, (3) Delete
Vehicle Type**  =    Truck, Tractor, Trailer, etc.
Ownership***    =    (1) Owned, (2) Employee Owned, (3) Leased Without Driver, (4) Leased With Driver Including
                             Non-Trucking, (5) Leased With Driver Excluding Non-Trucking

| Action* | Unit No. | Unit ID | Year | Make | Vehicle Type** | 17 Digit VIN | Stated Limit | Ownership*** |
|---------|----------|---------|------|------|----------------|--------------|--------------|--------------|
|         |          |         |      |      |                |              |              |              |
|         |          |         |      |      |                |              |              |              |
|         |          |         |      |      |                |              |              |              |
|         |          |         |      |      |                |              |              |              |
|         |          |         |      |      |                |              |              |              |
|         |          |         |      |      |                |              |              |              |
|         |          |         |      |      |                |              |              |              |
|         |          |         |      |      |                |              |              |              |
|         |          |         |      |      |                |              |              |              |
|         |          |         |      |      |                |              |              |              |
|         |          |         |      |      |                |              |              |              |

ADDITIONAL INTERESTS:
Action*        =    (1) Add, (2) Amend, (3) Delete
AI Type**     =    AI=Additional Insured, AL=Lessor-Additional Insured and Loss Payee, LP=Loss Payee,
                          LI=Leased With Driver Including Non-Trucking, LX=Leased With Driver Excluding Non-Trucking

| Action* | Unit No. | Unit ID | AI Type** | Name/Address/City/State/ZIP |
|---------|----------|---------|-----------|-----------------------------|
|         |          |         |           |                             |
|         |          |         |           |                             |
|         |          |         |           |                             |
|         |          |         |           |                             |
|         |          |         |           |                             |
|         |          |         |           |                             |
|         |          |         |           |                             |
|         |          |         |           |                             |
|         |          |         |           |                             |
|         |          |         |           |                             |
|         |          |         |           |                             |

I hereby attest that the above reported vehicle changes are true and correct and acknowledge MONTHLY REPORT - VEHICLE CHANGES is part of the policy. I understand that to the extent there are vehicles that I fail to report, any unreported "autos" will not be covered "autos" as Symbol 73 Reported "Autos" or Symbol 11 Reported "Autos".

Named Insured _____ Date _____

TL-035B (1/20)                          © 2020 The Travelers Indemnity Company. All rights reserved.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc. 1998

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

Copyright, ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, ISO Properties, Inc., 2007

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## COMBINED DEDUCTIBLE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
CUSTOM CARGO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
PREMIER CARGO COVERAGE FORM

**PROVISIONS**

1.  The following is added to Paragraph **D., Deductible,** of the **PHYSICAL DAMAGE COVERAGE** Section in the **MOTOR CARRIER COVERAGE FORM** and the **BUSINESS AUTO COVERAGE FORM**, whichever Coverage Form is part of your policy:

    If you have a "loss" to more than one covered "auto" when such covered "autos" are attached to one another at the time of "loss", then only the single highest deductible for any such covered "autos" will apply.

    If at the time of "loss" to one or more covered "autos" when such covered "autos" are attached to one another, you also have a "loss" to cargo insured by us as Covered Property under the **CUSTOM CARGO COVERAGE FORM** or **PREMIER CARGO COVERAGE FORM** while that cargo is in or on such covered "auto", then only the single highest applicable Physical Damage deductible or Cargo deductible will apply.

    However, if your Cargo Coverage with us includes the Any Theft Deductible endorsement, then the Cargo Coverage Theft Deductible still applies and this combined deductible will apply only to your Physical Damage deductibles.

2.  The following is added to Paragraph **D., Deductible,** of the **CUSTOM CARGO COVERAGE FORM** and the **PREMIER CARGO COVERAGE FORM**, whichever Coverage Form is part of your policy:

    If at the time of "loss" to Covered Property, that Covered Property is in or on a covered "auto" insured by us, attached to another covered "auto", also insured by us, and you also have a "loss" to one or more of such covered "autos", then only the single highest applicable Physical Damage deductible or Cargo deductible will apply.

    However, if your policy includes the Any Theft Deductible endorsement, then the Theft Deductible still applies and this combined deductible will apply only to your Physical Damage deductibles.

© 2016 The Travelers Indemnity Company.  All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# REPORTING BASE AND MONTHLY REPORTING REQUIREMENTS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
CUSTOM CARGO COVERAGE FORM
PREMIER CARGO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**PROVISIONS**

1. The following is added to the **General Conditions** section of the **BUSINESS AUTO COVERAGE FORM, MOTOR CARRIER COVERAGE FORM, CUSTOM CARGO COVERAGE FORM** and the **PREMIER CARGO COVERAGE FORM**, whichever forms are part of your policy and for which a Monthly Reporting Base is shown in the **MONTHLY REPORTING POLICIES ITEM** of the Declarations:

   **Reporting Base And Monthly Reporting Requirements**

   a. For any coverage shown in the **MONTHLY REPORTING POLICIES ITEM** of the Declarations, your premium for that coverage will be calculated based upon the Reporting Base shown in that **ITEM**. If the Reporting Base shown is:

      (1) Reported Autos, you agree to keep an accurate monthly record of all covered "autos" under this policy and submit this record of covered "autos" monthly. If Reported Autos is the Reporting Base for the same coverage in multiple reporting groups, you will report the covered "autos" applicable to each reporting group.

         (a) You are required to report any "autos" acquired during the month on the first monthly report following the acquisition of the "auto". If an additional "auto" is not reported on the first monthly report following the acquisition of the "auto", it will not be considered a covered "auto" and coverage for that "auto" is not effective until the date the "auto" is reported to us.

      (2) Gross Receipts, you agree to keep an accurate record of all "gross receipts" from your transportation business and report to us monthly the full amount of such "gross receipts". If Gross Receipts is the Reporting Base for the same coverage in multiple reporting groups, you will report the "gross receipts" applicable to each reporting group.

      (3) Mileage, you agree to keep an accurate record of all "mileage" from your transportation business and report to us monthly the full amount of such "mileage". If Mileage is the Reporting Base for the same coverage in multiple reporting groups, you will report the "mileage" applicable to each reporting group.

      (4) Stated Limit of Equipment, you agree to keep an accurate monthly record of the stated limit of each covered "auto" under this policy for physical damage coverage and submit this record of covered "autos" monthly.

      (5) Brokerage Gross Receipts, you agree to keep an accurate monthly record of "brokerage gross receipts" from your brokerage business and submit this record of "brokerage gross receipts" monthly.

   b. You are required to report your record of the reporting base to us by the 15th day of each month and you will pay the earned premium for the preceding month based on the rates shown in the Declarations, subject to any applicable minimum premium indicated on the Declarations. This Monthly Report will be part of the policy. Failure to report your record of the reporting base to us by the 15th day of the month or failure to pay the earned premium due for the preceding month gives us the right to cancel the policy.

   When you fail to file your report, we will have the right, without any further demand or notice, to estimate any premium due and owing to us under the policy.

                    © 2020 The Travelers Indemnity Company. All rights reserved.

2. The following is added to the **DEFINITIONS** section of the **BUSINESS AUTO COVERAGE FORM, MOTOR CARRIER COVERAGE FORM, CUSTOM CARGO COVERAGE FORM** and the **PREMIER CARGO COVERAGE FORM**, whichever forms are part of your policy and for which a Monthly Reporting Base is shown in the **MONTHLY REPORTING POLICIES ITEM** of the Declarations:

"Brokerage Gross Receipts" is the total amount to which you are entitled while acting as a broker for transportation of property by "motor carrier".

"Gross Receipts", for other than Public Autos:

1. Means the total amount to which you are entitled for shipping or transporting property during the policy period regardless of whether you or any other carrier originates the shipment or transportation; and

2. Includes the total amount received from renting equipment, with or without drivers, to any person or organization not engaged in the business of transporting property for hire by "auto" and 15% of the total amount received from renting any equipment to any "motor carrier", with or without drivers, to any person or organization engaged in the business of transporting property for hire by "auto"; and

3. Does not include:

   a. Amounts you pay to air, sea or rail carriers operating under their own permits.
   b. Advertising Revenue.
   c. Taxes which you collect as a separate item and remit directly to a governmental division.
   d. C.O.D. collections for cost of merchandise including collection fees.
   e. Warehouse storage fees.
   f. Fuel Surcharges.

"Gross Receipts" for Public Autos:

1. Means the total amount earned by the named insured for transporting passengers, mail and merchandise; and

2. Does not include:

   a. Amounts you pay to air, sea or land carriers operating under their own permits.
   b. Advertising Revenue.
   c. Taxes which you collect as a separate item and remit directly to a governmental division.
   d. C.O.D. collections for cost of mail or merchandise including collection fees.

"Mileage" means the total number of miles operated by all "autos", loaded or unloaded, during the policy period, whether shipment or transportation originates with you or any other carrier, and includes the total number of miles developed from the rental of your equipment to others, with or without drivers.

© 2020 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## IDENTITY THEFT EXPENSE REIMBURSEMENT COVERAGE

This endorsement modifies the insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
CUSTOM CARGO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
PREMIER CARGO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**PROVISIONS**

1. The following Section is added:

    **IDENTITY THEFT EXPENSE REIMBURSEMENT COVERAGE**

    **A. Coverage**

    We will reimburse an "insured person" up to $2,500 for "expenses" as the direct result of any one "identity theft" occurring anywhere in the world and which is first discovered during the policy period.

    All acts incidental to an "identity theft", any series of related "identity thefts", and all "identity thefts" arising from the same method of operation or a common scheme or plan, whether committed by one or more persons, will be deemed to be one "identity theft".

    No deductible applies to the identity theft expense reimbursement coverage provided by this endorsement.

    **B. Exclusions**

    Identity Theft Reimbursement Expense Coverage does not apply to:

    **1. Fraudulent, Dishonest Or Criminal Act**

    "Expenses" due to any fraudulent, dishonest or criminal act by an "insured person" or any person acting in concert with an "insured person", or by any authorized representative of an "insured person", whether acting alone or in collusion with others.

    **2. Loss Other Than Expenses**

    Loss other than "expenses".

    **3. When Individual Not An Insured Person**

    An "identity theft" that was discovered, or "expenses" incurred, when an individual was not an "insured person".

2. The following is added to the **CONDITIONS** Section:

    **Duties In The Event Of An Identity Theft**

    The following duties apply only with respect to Identity Theft Expense Reimbursement Coverage:

    **1.** Upon knowledge or discovery of a loss or an occurrence which may give rise to a claim under Identity Theft Expense Reimbursement Coverage, the "insured person" must give notice thereof as soon as practicable to us, and file a detailed proof of loss, duly sworn, within four (4) months after the discovery of loss or occurrence. The "insured person" must also notify the police.

 © 2016 The Travelers Indemnity Company. All rights reserved.

2. Upon our request, the "insured person" must submit to examination by us, subscribe the same, under oath if required, and produce for our examination all pertinent records, all at such reasonable times and places as we designate, and must cooperate with us in all matters pertaining to loss or claims with respect thereto.

3. The "insured person" must keep books, receipts, bills and other records in such manner that we can accurately determine there from the amount of any loss. At any time subsequent to the reporting thereof to us, we may examine and audit the "insured person's" books and records as they relate to a loss under this Identity Theft Expense Reimbursement Coverage.

**Two Or More Coverage Forms Or Policies Issued By Us**

If we have issued to you more than one Coverage Form to which this Identity Theft Expense Reimbursement Coverage applies, then this Identity Theft Expense Reimbursement Coverage will apply only once.

3. The following is added to the **DEFINITIONS** Section:

"Expenses" means:

1. Costs for notarizing fraud affidavits or similar documents for credit agencies, financial institutions, merchants or other credit grantors that have required that such affidavits be notarized.

2. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions, merchants or other credit grantors.

3. Lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies, financial institutions, merchants or legal counsel, to complete fraud affidavits or similar documents, or due to wrongful incarceration arising solely from someone else having committed a crime in the name of an "insured person", up to a maximum payment of $500 per week for a maximum period of four weeks. Lost wages shall not apply in the case of wrongful incarceration absent all charges being dropped or an acquittal of the "insured person".

4. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

5. Reasonable attorney fees incurred, with our prior consent, for:

   a. Defense of lawsuits brought against an "insured person" by financial institutions, merchants, other credit grantors or their collection agencies;

   b. The removal of any criminal or civil judgments wrongly entered against an "insured person";

   c. Challenging the accuracy or completeness of any information in a consumer credit report.

6. Charges incurred for long distance telephone calls to merchants, law enforcement agencies, credit agencies, financial institutions or other credit grantors to report or discuss an actual "identity theft".

7. Costs for daycare and eldercare incurred by an "insured person" solely as a direct result of any one "identity theft".

"Identity Theft" means the act of knowingly transferring or using, without lawful authority, a means of identification of an "insured person" with the intent to commit, aid or abet, any unlawful activity that constitutes a violation of Federal law or a felony under any applicable state or local law.

"Insured Person" means:

1. For sole proprietorships, the individual who is the sole proprietor of the Named Insured.

2. For partnerships, joint ventures or limited liability companies, each of the individual partners or members of the Named Insured.

3. For corporations, each of the individual shareholders of the Named Insured.

© 2016 The Travelers Indemnity Company. All rights reserved.

IL 02 46 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

**2. Cancellation Of Policies In Effect For Less Than 60 Days**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**3. Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

**b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

**c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

IL 02 46 09 07 Copyright, ISO Properties, Inc., 2006 Page 1 of 2

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**B.** The following are added and supersede any provisions to the contrary:

**1. Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

**2. Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

Copyright, ISO Properties, Inc., 2006

IL 02 46 09 07



**Northland Insurance Company**
St. Paul, MN 55102

# PENNSYLVANIA COMMERCIAL AUTO DECLARATIONS

This policy is a nonparticipating policy, meaning it does not pay dividends to Policyholders.

**Effective Date:** 06/01/2022    **Expiration Date:** 06/01/2023    **Policy No:** WF011456
12:01 A.M. Standard Time at Named "Insured's" mailing address

## ITEM ONE - NAMED INSURED

J A Trucking Inc

**Legal Entity:** Corporation

**Commodities hauled:**

General Freight, Paper Products

## ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Coverage Form next to the name of the coverage. THIS POLICY DOES NOT COVER COLLISION DAMAGE TO RENTAL VEHICLES UNLESS COVERAGE IS ADDED PER ENDORSEMENT.

### LIABILITY

| Covered "Autos" | Coverages | Limits of Liability | | Premium |
|---|---|---|---|---|
| 73,64,68,71 | COVERED AUTOS LIABILITY | $1,000,000   each "accident" | $ | 332,886.00 [1] |

### ADDITIONAL COVERAGES BY ENDORSEMENT

| Covered "Autos" | Coverages | Limits of Liability | | Premium |
|---|---|---|---|---|
| 73,64 | PERSONAL INJURY PROTECTION (or equivalent No-Fault Protection) | Separately Stated in ea. PIP endorsement | $ | 2,250.00 |
| 73,64 | UNINSURED MOTORISTS | Separately Stated in Endorsement(s) | $ | 880.00 [1] |
| 73,64 | UNDERINSURED MOTORISTS | Separately Stated in Endorsement(s) | $ | 1,584.00 [1] |

### PHYSICAL DAMAGE

| Covered "Autos" | Coverages | Limits of Liability | | Premium |
|---|---|---|---|---|
| 73 | COMPREHENSIVE | * | $ | 12,630.00 [1] |
| 73 | COLLISION | * | $ | 78,407.00 [1] |

* Stated Limit, Actual Cash Value or Cost of Repairs, whichever is less minus the deductible.

## ADDITIONAL PREMIUM PER ENDORSEMENT

| | | |
|---|---|---|
| **ESTIMATED TOTAL PREMIUM** | $ | 428,637.00 |

## FORMS AND ENDORSEMENTS

The schedule of coverage declarations, forms and endorsements shown on NL-2500 make up your policy as of the effective date shown above.

## ITEM THREE - SCHEDULE OF AUTOMOBILES

NOT APPLICABLE

## ITEM FOUR - HIRED AUTO LIABILITY INSURANCE

Cost of hire means the total cost you incur to lease, hire or borrow "autos" you don't own.

© 2020 The Travelers Indemnity Company. All rights reserved.

|  | ESTIMATED COST OF HIRE | RATE PER $100 COST OF HIRE | MINIMUM PREMIUM | ADVANCE PREMIUM (Incl. in ITEM TWO LIABILITY) |
|---|---|---|---|---|
|  | $ IF ANY | $ 7.7600 | $ 1,500.00 | $ 1,500.00 |

## ITEM FIVE - NAMED LESSEE(S)

NO COVERAGE

## ITEM SIX - ADDITIONAL SYMBOLS

NOT APPLICABLE

## ITEM SEVEN - SCHEDULE FOR NON-OWNERSHIP LIABILITY

| ESTIMATED # OF EMPLOYEES: 26 to 100 | ADVANCE PREMIUM (incl. in ITEM TWO - LIABILITY) | $ 250.00 [1] |
|---|---|---|

## ITEM EIGHT - SCHEDULE OF HIRED COVERED AUTO COVERAGE - Physical Damage Insurance
Stated Limit, Actual Cash Value or Cost of Repairs whichever is less, minus the deductible

NO COVERAGE

## ITEM NINE - TRAILER INTERCHANGE INSURANCE
Stated Limit, Actual Cash Value or Cost of Repairs whichever is less, minus the deductible

NO COVERAGE

## ITEM TEN - MONTHLY REPORTING POLICIES [1]

| GROUP | COVERAGE | REPORTING BASE | ESTIMATED EXPOSURE | RATE | MONTHLY RATE | ESTIMATED TERM PREMIUM |
|---|---|---|---|---|---|---|
| A | Covered Autos Liability Uninsured Motorist-CSL Underinsured Motorist-CSL Basic First Party Benefits Non-Owned Auto | Mileage Per 100 Miles | 2,800,000 | 11.8600 | 11.8600 | $ 332,173.00 |
|  |  |  |  |  |  | SUBJECT TO MINIMUM |
| B | Comprehensive Collision | Stated Limit Of Equipment Per $100 of Limit | 2,047,900 | 4.3400 | .3617 | $ 91,037.00 |
| C | Covered Autos Liability Uninsured Motorist-CSL Underinsured Motorist-CSL Basic First Party Benefits | Reported Autos Per Reported Auto | 3 | 1,309.0000 | 109.0000 | $ 3,927.00 |

|  |  |
|---|---|
| Estimated Total Premium | $ 427,137.00 |
| Term Minimum Premium | $ 298,956.00 |
| Monthly Minimum Premium | $ 24,913.00 |
| Deposit | $ 119,984.00 |

**Deductibles**

**Covered Autos Liability BI and PD**
$5,000

| **Comprehensive** | **Collision** |
|---|---|
| $5,000 | $5,000 |

## ITEM ELEVEN - MONTHLY PREMIUM PAYMENT

NOT APPLICABLE

© 2020 The Travelers Indemnity Company. All rights reserved.

# SCHEDULE OF AUTOMOBILES - MONTHLY REPORTING POLICY

**Policy No.** WF011456

**Issued to:** J A Trucking Inc

The "autos" listed on this Schedule are the covered "autos" at inception. Physical Damage Coverage applies only for the "autos" listed on this Schedule for which there is a Stated Limit shown and a Deductible shown for a Physical Damage Coverage.

| NO. | UNIT ID | YEAR, MAKE, VEHICLE TYPE | VIN NUMBER | STATED LIMIT | COMP DED | COLL DED |
|---|---|---|---|---|---|---|
| 1 | | 2012 FREIGHTLINER TRACTOR | 1FUJGLDR4CSBD2379 | 25,000 | 5,000 | 5,000 |
| 2 | | 2001 FREIGHTLINER TRACTOR | 1FUJBBCG11LJ06646 | 12,000 | 5,000 | 5,000 |
| 3 | | 2007 FREIGHTLINER TRACTOR | 1FUJA6CKX7LX28489 | 18,000 | 5,000 | 5,000 |
| 4 | | 2007 FREIGHTLINER TRACTOR | 1FUJA6CK17LX86474 | 17,000 | 5,000 | 5,000 |
| 6 | | 2011 INTERNATIONAL TRACTOR | 1FUJGLBG0BSAW4330 | 21,000 | 5,000 | 5,000 |
| 8 | | 2017 FREIGHTLINER TRACTOR | 3ALXA7CG5HDHX8396 | 70,000 | 5,000 | 5,000 |
| 10 | | 2017 FREIGHTLINER TRACTOR | 3ALXA7CG3HDHZ8646 | 76,000 | 5,000 | 5,000 |
| 13 | | 2011 FREIGHTLINER TRACTOR | 1FUJGLBG6BSAW4266 | 24,000 | 5,000 | 5,000 |
| 14 | | 2016 FREIGHTLINER TRACTOR | 3ALXA7CG3GDHK9485 | 60,000 | 5,000 | 5,000 |
| 15 | | 2005 FREIGHTLINER TRACTOR | 1FUJA6CK65LN95145 | 16,000 | 5,000 | 5,000 |
| 16 | | 2005 FREIGHTLINER TRACTOR | 1FUJA6CK95LV62916 | 16,000 | 5,000 | 5,000 |
| 18 | | 2009 INTERNATIONAL TRACTOR | 1FUJGLCK09LAD0889 | 17,000 | 5,000 | 5,000 |
| 21 | | 2000 FREIGHTLINER TRACTOR | 1FUPCSZB2YDA97708 | 18,000 | 5,000 | 5,000 |
| 22 | | 1998 WESTERN STAR TRACTOR | 2WKPDDXH7WK951357 | 12,000 | 5,000 | 5,000 |
| 23 | | 1999 FREIGHTLINER TRACTOR | 1FUYDZYB5XP976237 | 14,000 | 5,000 | 5,000 |
| 24 | | 2001 FREIGHTLINER TRACTOR | 1FUJAPCG21LH22116 | 25,000 | 5,000 | 5,000 |
| 27 | | 2011 INTERNATIONAL TRACTOR | 3HSCUAPRXBJ361574 | 22,000 | 5,000 | 5,000 |
| 28 | | 2011 FREIGHTLINER TRACTOR | 1FUJGBDV8BSAZ8392 | 23,000 | 5,000 | 5,000 |
| 29 | | 2010 INTERNATIONAL TRACTOR | 3HSCUAPR8AN168772 | 20,000 | 5,000 | 5,000 |
| 31 | | 2011 FREIGHTLINER TRACTOR | 1FUJGEDV5BSAY8467 | 23,000 | 5,000 | 5,000 |
| 32 | | 2011 FREIGHTLINER TRACTOR | 1FUJGEDVXBSAZ1073 | 23,000 | 5,000 | 5,000 |
| 33 | | 2012 FREIGHTLINER TRACTOR | 1FUJGLDR4CSBF1644 | 25,000 | 5,000 | 5,000 |
| 34 | | 2014 FREIGHTLINER TRACTOR | 3AKJGEDV1ESFJ5873 | 34,000 | 5,000 | 5,000 |
| 35 | | 2014 FREIGHTLINER TRACTOR | 3AKJGEDVXESFJ5886 | 34,000 | 5,000 | 5,000 |
| 36 | | 2012 FREIGHTLINER TRACTOR | 1FUJGEDV1CLBH5936 | 25,000 | 5,000 | 5,000 |
| 37 | | 2014 FREIGHTLINER TRACTOR | 1FUJGLDR5ELPK8323 | 29,000 | 5,000 | 5,000 |
| 38 | | 2016 FREIGHTLINER TRACTOR | 3AKJGLD53GSGM4852 | 46,000 | 5,000 | 5,000 |
| 39 | | 2016 FREIGHTLINER TRACTOR | 3AKJGLD57GSGT7306 | 46,000 | 5,000 | 5,000 |

 © 2012 The Travelers Indemnity Company. All rights reserved.

| NO. | UNIT ID | YEAR, MAKE, VEHICLE TYPE | VIN NUMBER | STATED LIMIT | COMP DED | COLL DED |
|---|---|---|---|---|---|---|
| 40 | | 2016 FREIGHTLINER TRACTOR | 3AKJGLD55GSGN4853 | 46,000 | 5,000 | 5,000 |
| 42 | | 1998 WABASH NATIONAL CORP TRAILER | 1JJV532W9WL506113 | 4,900 | 5,000 | 5,000 |
| 44 | | 2003 GREAT DANE TRAILERS TRAILER | 1GRAA06233D401331 | 5,900 | 5,000 | 5,000 |
| 45 | | 2017 WABASH NATIONAL CORP TRAILER | 1JJV532DXHL972473 | 23,000 | 5,000 | 5,000 |
| 46 | | 2017 WABASH NATIONAL CORP TRAILER | 1JJV532D9HL972478 | 23,000 | 5,000 | 5,000 |
| 47 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W23L846988 | 5,900 | 5,000 | 5,000 |
| 48 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W43L846989 | 5,900 | 5,000 | 5,000 |
| 49 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W03L846990 | 5,900 | 5,000 | 5,000 |
| 50 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W63L846993 | 5,900 | 5,000 | 5,000 |
| 51 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W63L847030 | 5,900 | 5,000 | 5,000 |
| 52 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W83L846994 | 5,900 | 5,000 | 5,000 |
| 53 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W83L847028 | 2,500 | 5,000 | 5,000 |
| 54 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532WX3L846995 | 5,900 | 5,000 | 5,000 |
| 55 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532WX3L847032 | 5,900 | 5,000 | 5,000 |
| 57 | | 1999 LUFKIN INDUSTRIES TRAILER | 1L01A532XW1134420 | 2,500 | 5,000 | 5,000 |
| 58 | | 1999 LUFKIN INDUSTRIES TRAILER | 1L01A5328X1140251 | 4,900 | 5,000 | 5,000 |
| 59 | | 2005 GREAT DANE TRAILERS TRAILER | 1GRAA062X5T512015 | 6,700 | 5,000 | 5,000 |
| 60 | | 2003 GREAT DANE TRAILERS TRAILER | 1GRAA06213D401330 | 5,900 | 5,000 | 5,000 |
| 62 | | 2003 GREAT DANE TRAILERS TRAILER | 1GRAA062930401334 | 2,500 | 5,000 | 5,000 |
| 65 | | 2007 WABASH NATIONAL CORP TRAILER | 1JJV532W77L084425 | 7,900 | 5,000 | 5,000 |
| 66 | | 2003 GREAT DANE TRAILERS TRAILER | 1GRAA06273D401333 | 5,900 | 5,000 | 5,000 |
| 67 | | 2003 GREAT DANE TRAILERS TRAILER | 1GRAA06243D401337 | 2,500 | 5,000 | 5,000 |
| 68 | | 2002 TRAILMOBILE TRAILER | 2MN01JAH921001340 | 5,400 | 5,000 | 5,000 |
| 69 | | 2007 WABASH NATIONAL CORP TRAILER | 1JJV532W27L084414 | 7,900 | 5,000 | 5,000 |
| 70 | | 2007 WABASH NATIONAL CORP TRAILER | 1JJV532W17L084470 | 7,900 | 5,000 | 5,000 |
| 72 | | 2017 WABASH NATIONAL CORP TRAILER | 1JJV532D8HL972472 | 23,000 | 5,000 | 5,000 |
| 74 | | 2007 WABASH NATIONAL CORP TRAILER | 1JJV532W07L084427 | 7,900 | 5,000 | 5,000 |
| 75 | | 2007 WABASH NATIONAL CORP TRAILER | 1JJV532WB7L084496 | 7,900 | 5,000 | 5,000 |
| 76 | | 2007 WABASH NATIONAL CORP TRAILER | 1JJV532W27L084445 | 2,500 | 5,000 | 5,000 |
| 77 | | 2007 WABASH NATIONAL CORP TRAILER | 1JJV532W17L084419 | 7,900 | 5,000 | 5,000 |
| 78 | | ANY NON-OWNED TRAILER WHILE ATTACHED TO A SCHEDULED POWER UNIT | TNO | 30,000 | 5,000 | 5,000 |
| 79 | | 2007 WABASH NATIONAL CORP TRAILER | 1JJ532D4DL751936 | 15,500 | 5,000 | 5,000 |
| 81 | | 2003 GREAT DANE TRAILERS TRAILER | 1GRAA06243D401340 | 2,500 | 5,000 | 5,000 |
| 82 | | 2003 GREAT DANE TRAILERS TRAILER | 1GRAA06283D401342 | 5,900 | 5,000 | 5,000 |
| 83 | | 2003 GREAT DANE TRAILERS TRAILER | 1GRAA062X3D401343 | 2,500 | 5,000 | 5,000 |

© 2012 The Travelers Indemnity Company. All rights reserved.

| NO. | UNIT ID | YEAR, MAKE, VEHICLE TYPE | VIN NUMBER | STATED LIMIT | COMP DED | COLL DED |
|-----|---------|--------------------------|------------|--------------|----------|----------|
| 85 | | 1995 WABASH NATIONAL CORP TRAILER | 1JJV532U6SL325995 | 2,500 | 5,000 | 5,000 |
| 86 | | 1995 WABASH NATIONAL CORP TRAILER | 1JJV532U48L325994 | 2,500 | 5,000 | 5,000 |
| 88 | | 2002 TRAILMOBILE TRAILER | 2MN01JAH721001336 | 5,400 | 5,000 | 5,000 |
| 89 | | 2002 TRAILMOBILE TRAILER | 2MN01JAH221001342 | 5,400 | 5,000 | 5,000 |
| 90 | | 2002 TRAILMOBILE TRAILER | 2MN01JAH221001356 | 5,400 | 5,000 | 5,000 |
| 91 | | 2002 TRAILMOBILE TRAILER | 2MN01JAH521001366 | 5,400 | 5,000 | 5,000 |
| 92 | | 2002 TRAILMOBILE TRAILER | 2MN01JAH921001371 | 5,400 | 5,000 | 5,000 |
| 93 | | 2017 WABASH NATIONAL CORP TRAILER | 1JJV532D6HL972471 | 23,000 | 5,000 | 5,000 |
| 94 | | 2000 WABASH NATIONAL CORP TRAILER | 1JJV281W3YL556807 | 2,500 | 5,000 | 5,000 |
| 95 | | 1995 TRAILMOBILE TRAILER | 1PT01JAH5S9000162 | 2,500 | 5,000 | 5,000 |
| 96 | | 1995 TRAILMOBILE TRAILER | 1PT01JAH0S9006418 | 2,500 | 5,000 | 5,000 |
| 97 | | 1995 TRAILMOBILE TRAILER | 1PT01JAH0S9006421 | 2,500 | 5,000 | 5,000 |
| 98 | | 2013 WABASH NATIONAL CORP TRAILER | 1JJ532D7DL751939 | 15,500 | 5,000 | 5,000 |
| 99 | | 2013 WABASH NATIONAL CORP TRAILER | 1JJ532D5DL751942 | 15,500 | 5,000 | 5,000 |
| 100 | | 2012 WABASH NATIONAL CORP TRAILER | 1JJ532000L580756 | 14,800 | 5,000 | 5,000 |
| 101 | | 2018 WABASH NATIONAL CORP TRAILER | 1JJV532D4JL046656 | 25,000 | 5,000 | 5,000 |
| 102 | | 2018 WABASH NATIONAL CORP TRAILER | 1JJV532DXJL046659 | 25,000 | 5,000 | 5,000 |
| 103 | | 2018 WABASH NATIONAL CORP TRAILER | 1JJV5320XJL046662 | 25,000 | 5,000 | 5,000 |
| 104 | | 2018 WABASH NATIONAL CORP TRAILER | 1AV532D3JL046664 | 25,000 | 5,000 | 5,000 |
| 105 | | 2018 WABASH NATIONAL CORP TRAILER | 1JJV532D1JL089125 | 25,000 | 5,000 | 5,000 |
| 106 | | 2000 WABASH NATIONAL CORP TRAILER | 1JJV281W5YL556808 | 2,500 | 5,000 | 5,000 |
| 107 | | 1995 STRICK TRAILERS TRAILER | 1S12E95318D392509 | 2,500 | 5,000 | 5,000 |
| 108 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W23L847025 | 5,900 | 5,000 | 5,000 |
| 110 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W43L847043 | 5,900 | 5,000 | 5,000 |
| 111 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W63L847027 | 5,900 | 5,000 | 5,000 |
| 112 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W83L847000 | 5,900 | 5,000 | 5,000 |
| 113 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W83L847031 | 5,900 | 5,000 | 5,000 |
| 114 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W13L846996 | 5,900 | 5,000 | 5,000 |
| 116 | | 1999 LUFKIN INDUSTRIES TRAILER | 1L0A15326X1140250 | 2,500 | 5,000 | 5,000 |
| 119 | | 2007 WABASH NATIONAL CORP TRAILER | 1JJV532W37L084423 | 7,900 | 5,000 | 5,000 |
| 120 | | 2013 WABASH NATIONAL CORP TRAILER | 1JJ532D4DL751929 | 15,500 | 5,000 | 5,000 |
| 121 | | 2013 WABASH NATIONAL CORP TRAILER | 1JJ532D5DL751938 | 15,500 | 5,000 | 5,000 |
| 122 | | 2013 WABASH NATIONAL CORP TRAILER | 1JJ532D5DL751941 | 15,500 | 5,000 | 5,000 |
| 123 | | 2013 WABASH NATIONAL CORP TRAILER | 1JJ532D4DL751932 | 15,500 | 5,000 | 5,000 |
| 124 | | 2012 WABASH NATIONAL CORP TRAILER | 1JJ532D2CL580757 | 14,800 | 5,000 | 5,000 |

© 2012 The Travelers Indemnity Company.  All rights reserved.

| NO. | UNIT ID | YEAR, MAKE, VEHICLE TYPE | VIN NUMBER | STATED LIMIT | COMP DED | COLL DED |
|-----|---------|--------------------------|------------|--------------|----------|----------|
| 125 | | 2018 WABASH NATIONAL CORP TRAILER | 1JJV532D6JL046657 | 25,000 | 5,000 | 5,000 |
| 126 | | 2018 WABASH NATIONAL CORP TRAILER | 1JJV532D8JL046661 | 25,000 | 5,000 | 5,000 |
| 127 | | 2018 WABASH NATIONAL CORP TRAILER | 1JJV532D1JL046663 | 25,000 | 5,000 | 5,000 |
| 128 | | 2018 WABASH NATIONAL CORP TRAILER | 1JJV532D8JL046658 | 25,000 | 5,000 | 5,000 |
| 129 | | 1995 TRAILMOBILE TRAILER | 1PT01JAH9S9006420 | 2,500 | 5,000 | 5,000 |
| 130 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV532W73L846999 | 5,900 | 5,000 | 5,000 |
| 131 | | 1995 TRAILMOBILE TRAILER | 1PT01JAH2S9006422 | 2,500 | 5,000 | 5,000 |
| 132 | | 1995 TRAILMOBILE TRAILER | 1PT01JAH9S9006417 | 2,500 | 5,000 | 5,000 |
| 133 | | 1996 STRICK TRAILERS TRAILER | 1SL2E9539TD406173 | 2,500 | 5,000 | 5,000 |
| 136 | | 1998 STRICK TRAILERS TRAILER | 1S12E9533WE426966 | 4,700 | 5,000 | 5,000 |
| 138 | | 1998 STRICK TRAILERS TRAILER | 1S12E9537WE426968 | 4,700 | 5,000 | 5,000 |
| 140 | | 1998 STRICK TRAILERS TRAILER | 1S12E9532WE430006 | 4,700 | 5,000 | 5,000 |
| 142 | | 1998 STRICK TRAILERS TRAILER | 1S12E9530WE430134 | 4,700 | 5,000 | 5,000 |
| 144 | | 1998 STRICK TRAILERS TRAILER | 1S12E9536WE430140 | 4,700 | 5,000 | 5,000 |
| 145 | | 1998 STRICK TRAILERS TRAILER | 1S12E9538WE430141 | 4,700 | 5,000 | 5,000 |
| 146 | | 2000 STRICK TRAILERS TRAILER | 1S12E9531YD450528 | 2,500 | 5,000 | 5,000 |
| 147 | | 2000 STOUGHTON TRAILERS INC TRAILER | 1S12E9538YD450532 | 5,000 | 5,000 | 5,000 |
| 149 | | 2000 STOUGHTON TRAILERS INC TRAILER | 1S12E9538YD450534 | 5,000 | 5,000 | 5,000 |
| 151 | | 2000 STRICK TRAILERS TRAILER | 1S12E9538YD450536 | 2,500 | 5,000 | 5,000 |
| 152 | | 2000 STRICK TRAILERS TRAILER | 1SL2E9538YD450539 | 5,000 | 5,000 | 5,000 |
| 153 | | 2000 STRICK TRAILERS TRAILER | 1S12E9538YD450542 | 2,500 | 5,000 | 5,000 |
| 155 | | 2000 STRICK TRAILERS TRAILER | 1S12E9538YD450545 | 5,000 | 5,000 | 5,000 |
| 156 | | 2000 STRICK TRAILERS TRAILER | 1S12E9538YD450546 | 2,500 | 5,000 | 5,000 |
| 157 | | 2000 STRICK TRAILERS TRAILER | 1S12E9538YD450547 | 2,500 | 5,000 | 5,000 |
| 158 | | 2000 STRICK TRAILERS TRAILER | 1S12E9537YD454018 | 2,500 | 5,000 | 5,000 |
| 161 | | 2000 STRICK TRAILERS TRAILER | 1S12E9537YD454021 | 2,500 | 5,000 | 5,000 |
| 162 | | 2000 STRICK TRAILERS TRAILER | 1S12E9537YD454022 | 2,500 | 5,000 | 5,000 |
| 163 | | 2000 STRICK TRAILERS TRAILER | 1SL2E9537YD454024 | 5,000 | 5,000 | 5,000 |
| 165 | | 2000 STRICK TRAILERS TRAILER | 1S12E9537YD454026 | 2,500 | 5,000 | 5,000 |
| 166 | | 2000 STOUGHTON TRAILERS INC TRAILER | 1S12E9537YD454027 | 5,000 | 5,000 | 5,000 |
| 167 | | 2001 STRICK TRAILERS TRAILER | 1S12E95331D455088 | 5,200 | 5,000 | 5,000 |
| 170 | | 2001 STRICK TRAILERS TRAILER | 1S12E95371D455093 | 5,200 | 5,000 | 5,000 |
| 171 | | 2001 STRICK TRAILERS TRAILER | 1S12E95391D455094 | 5,200 | 5,000 | 5,000 |
| 173 | | 1998 DORSEY TRAILERS TRAILER | 1DTV11526WA264627 | 2,500 | 5,000 | 5,000 |
| 174 | | 2003 GREAT DANE TRAILERS TRAILER | 1GRAA06243K247112 | 5,900 | 5,000 | 5,000 |

TL-018 (8/12)   © 2012 The Travelers Indemnity Company. All rights reserved.

| NO. | UNIT ID | YEAR, MAKE, VEHICLE TYPE | VIN NUMBER | STATED LIMIT | COMP DED | COLL DED |
|-----|---------|--------------------------|------------|--------------|----------|----------|
| 176 | | 2003 GREAT DANE TRAILERS TRAILER | 1GRAA06283K247114 | 5,900 | 5,000 | 5,000 |
| 178 | | 2003 GREAT DANE TRAILERS TRAILER | 1GRAA06233K247117 | 5,900 | 5,000 | 5,000 |
| 181 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJV53ZW03L847024 | 5,900 | 5,000 | 5,000 |
| 182 | | 2003 WABASH NATIONAL CORP TRAILER | 1JJVS32WX3L847029 | 5,900 | 5,000 | 5,000 |
| 183 | | 1999 ZIMMERMAN TRAILERS TRAILER | 1Z9FE18B1XN108790 | 10,000 | 5,000 | 5,000 |
| 184 | | 2009 FREIGHTLINER TRACTOR | 1FUJA6CK59LAG7004 | 21,000 | 5,000 | 5,000 |
| 185 | | 2011 FREIGHTLINER TRACTOR | 1FUJGLDV1BSAZ2309 | 23,000 | 5,000 | 5,000 |
| 186 | | 2014 FREIGHTLINER TRACTOR | 3AKJGEBG6ESFZ4316 | 32,000 | 5,000 | 5,000 |
| 188 | | 2016 FREIGHTLINER TRACTOR | 1FUJGBDV7GLHS1843 | 33,000 | 5,000 | 5,000 |
| 189 | | 2015 FREIGHTLINER TRACTOR | 3AKJGEDV2FSGB7311 | 30,000 | 5,000 | 5,000 |
| 190 | | 2013 FREIGHTLINER TRACTOR | 1FUJGEDV2DSBV1012 | 25,000 | 5,000 | 5,000 |
| 191 | | 2015 FREIGHTLINER TRACTOR | 3AKJGED51FSGN6282 | 30,000 | 5,000 | 5,000 |
| 192 | | 2013 FREIGHTLINER TRACTOR | 1FUJGEDV1DSBU6531 | 25,000 | 5,000 | 5,000 |
| 193 | | 2012 FREIGHTLINER TRACTOR | 1FUJGEDV6CS8D3719 | 21,000 | 5,000 | 5,000 |
| 194 | | 2011 FREIGHTLINER TRACTOR | 1FUJGEBG0BSAW0158 | 19,000 | 5,000 | 5,000 |
| 195 | | 2015 FREIGHTLINER TRACTOR | 3AKJGLD5XFSGR3187 | 40,000 | 5,000 | 5,000 |
| 196 | | 1996 SP CONST TRACTOR | SW144817PA | | | |
| 197 | | 2012 FREIGHTLINER TRACTOR | 1FUJGEDV9CSBH7262 | 25,000 | 5,000 | 5,000 |
| 198 | | 2007 FREIGHTLINER TRACTOR | 1FUJA6CG67LX57404 | 18,000 | 5,000 | 5,000 |
| 199 | | 2006 FREIGHTLINER TRACTOR | 1FUJAPAVX6DU25921 | 23,000 | 5,000 | 5,000 |
| 200 | | 1995 WABASH NATIONAL CORP TRAILER | 1JJV532U3SL326005 | 2,500 | 5,000 | 5,000 |
| 201 | | 2007 WABASH NATIONAL CORP TRAILER | 1JJV532W77L084556 | 7,900 | 5,000 | 5,000 |
| 202 | | 2007 WABASH NATIONAL CORP TRAILER | 1JJV532W97L084426 | 7,900 | 5,000 | 5,000 |
| 203 | | 2007 WABASH NATIONAL CORP TRAILER | 1JJV532WX7L084435 | 7,900 | 5,000 | 5,000 |

© 2012 The Travelers Indemnity Company.  All rights reserved.

COMMERCIAL AUTO
CA 00 20 10 13

# MOTOR CARRIER COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 61 | Any "Auto" | |
| 62 | Owned "Autos" Only | Only the "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 63 | Owned Private Passenger Type "Autos" Only | Only the "private passenger type" "autos" you own. This includes those "private passenger type" "autos" that you acquire ownership of after the policy begins. |
| 64 | Owned Commercial "Autos" Only | Only those trucks, tractors and "trailers" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks, tractors and "trailers" you acquire ownership of after the policy begins. |
| 65 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the no-fault law in the state where they are licensed or principally garaged. |
| 66 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 67 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 68 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "private passenger type" "auto" you lease, hire, rent or borrow from any member of your household, any of your "employees", partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their households. |
| 69 | "Trailers" In Your Possession Under A Written Trailer Or Equipment Interchange Agreement | Only those "trailers" you do not own while in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailers" while in your possession. |

Copyright, Insurance Services Office, Inc., 2011

| Symbol | | Description Of Covered Auto Designation Symbols |
|--------|--|------------------------------------------------|
| 70 | Your "Trailers" In The Possession Of Anyone Else Under A Written Trailer Interchange Agreement | Only those "trailers" you own or hire while in the possession of anyone else under a written "trailer" interchange agreement. When Symbol 70 is entered next to a Physical Damage Coverage in Item Two of the Declarations, the Physical Damage Coverage exclusion relating to "loss" to a "trailer" in the possession of anyone else does not apply to that coverage. |
| 71 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "private passenger type" "autos" owned by your "employees" or partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |
| 79 | "Mobile Equipment" Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

**B. Owned Autos You Acquire After the Policy Begins**

1. If Symbols **61, 62, 63, 64, 65, 66** or **79** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **67** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II - COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

Copyright, Insurance Services Office, Inc., 2011

CA 00 20 10 13

TRAVELERS DOC MGMT Page 38 of 171

We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

      (2) Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.

      (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

      (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) a lessee or borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".

      (5) A partner (if you are a partnership), or member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

   c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

   d. The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a "motor carrier" for hire.

   e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

   However, none of the following is an "insured":

      (1) Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":

         (a) If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

         (b) If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier" and used in his or her business.

      However, Paragraph (1) above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.

      (2) Any rail, water or air carrier or its "employees" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" or a "covered pollution cost or expense" occurs while the "trailer" is detached from a covered "auto" you are using and:

         (a) Is being transported by the carrier; or

         (b) Is being loaded on or unloaded from any unit of transportation by the carrier.

2. **Coverage Extensions**

   a. **Supplementary Payments**

      We will pay for the "insured":

      (1) All expenses we incur.

      (2) Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limit specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing "motor carriers" of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of "loss" because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

Copyright, Insurance Services Office, Inc., 2011

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

### 6. Care, Custody Or Control

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

### 7. Handling Of Property

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

### 8. Movement Of Property By Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

### 9. Operations

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

### 10. Completed Operations

"Bodily injury" or "property damage" arising out of "your work" after that work has been completed or abandoned.

In the exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed;

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

### 11. Pollution

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

   **(1)** The "pollutants" escape, seep, migrate, or are discharged, dispensed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

   **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C.** Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**SECTION III - TRAILER INTERCHANGE COVERAGE**

**A.** Coverage

   **1.** We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment under:

      **a.** Comprehensive Coverage

        From any cause except:

        **(1)** The "trailer's" collision with another object; or

        **(2)** The "trailer's" overturn.

      **b.** Specified Causes Of Loss Coverage

        Caused by:

        **(1)** Fire, lightning or explosion;

        **(2)** Theft;

        **(3)** Windstorm, hail or earthquake;

        **(4)** Flood;

        **(5)** Mischief or vandalism; or

        **(6)** The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

      **c.** Collision Coverage

        Caused by:

        **(1)** The "trailer's" collision with another object; or

        **(2)** The "trailer's" overturn.

Copyright, Insurance Services Office, Inc., 2011

CA 00 20 10 13

TRAVELERS DOC MGMT Page 42 of 171

2. We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

3. **Coverage Extensions**

The following apply as **Supplementary Payments**. We will pay for you:

a. All expenses we incur.

b. The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

c. All reasonable expenses incurred at our request, including actual loss of earnings up to $250 a day because of time off from work.

d. All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

e. All interest on the full amount of any judgment that accrues after entry of the judgment; but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

B. **Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

a. **Nuclear Hazard**

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

b. **War Or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for loss of use.

3. **Other Exclusions**

We will not pay for "loss" due and confined to:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

C. **Limits Of Insurance**

The most we will pay for "loss" to any one "trailer" is the least of the following amounts:

1. The actual cash value of the damaged or stolen property at the time of the "loss";

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality; or

3. The Limit Of Insurance shown in the Declarations.

D. **Deductible**

For each covered "trailer", our obligation to pay:

1. The actual cash value of the damaged or stolen property at the time of the "loss" will be reduced by the applicable deductible shown in the Declarations.

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality will be reduced by the applicable deductible shown in the Declarations.

3. The damages for "loss" that would otherwise be payable will be reduced by the applicable deductible shown in the Declarations prior to the application of the Limit Of Insurance shown in the Declarations.

**SECTION IV - PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage**

      From any cause except:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

   b. **Specified Causes Of Loss Coverage**

      Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage**

      Caused by:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

2. **Towing - Private Passenger Type Autos**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the "private passenger type" is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extension**

   a. **Transportation Expenses**

      We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the "private passenger type". We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   b. **Loss Of Use Expenses**

      For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

      (1) Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

      (2) Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

      (3) Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

      However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. **Nuclear Hazard**

      (1) The explosion of any weapon employing atomic fission or fusion; or

      (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

Copyright, Insurance Services Office, Inc., 2011

CA 00 20 10 13

**b. War Or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any of the following:

a. Any covered "auto" while in anyone else's possession under a written "trailer" interchange agreement. But this exclusion does not apply to a loss payee; however, if we pay the loss payee, you must reimburse us for our payment.

b. Any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

c. Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

d. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

e. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

f. Any accessories used with the electronic equipment described in Paragraph e. above.

3. Exclusions 2.e. and 2.f. do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

a. Permanently installed in or upon the covered "auto";

b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

c. An integral part of the same unit housing any electronic equipment described in Paragraphs a. and b. above; or

d. Necessary for the normal operation of the "auto" or the monitoring of the "auto's" operating system.

4. We will not pay for "loss" due and confined to:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

This exclusion does not apply to "loss" resulting from the total theft of a covered "auto".

5. We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limits Of Insurance**

1. The most we will pay for:

a. "Loss" to any one covered "auto" is the lesser of:

(1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

(2) The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

(1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

(2) Removable from a permanently installed housing unit as described in Paragraph b.(1) above; or

(3) An integral part of such equipment as described in Paragraphs b.(1) and b.(2) above.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION V - MOTOR CARRIER CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is a "loss" to a covered "auto" or its equipment, you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examination under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

Copyright, Insurance Services Office, Inc., 2011

CA 00 20 10 13

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligation under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance - Primary And Excess Insurance Provisions**

**a.** While any covered "auto" is hired or borrowed from you by another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

**(1)** Primary if a written agreement between you as the lessor and the other "motor carrier" as the lessee requires you to hold the lessee harmless.

**(2)** Excess over any other collectible insurance if a written agreement between you as the lessor and the other "motor carrier" as the lessee does not require you to hold the lessee harmless.

**b.** While any covered "auto" is hired or borrowed by you from another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

**(1)** Primary if a written agreement between the other "motor carrier" as the lessor and you as the lessee does not require the lessor to hold you harmless, and then only while the covered "auto" is used exclusively in your business as a "motor carrier" for hire.

**(2)** Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee requires the lessor to hold you harmless.

**c.** While a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Covered Autos Liability Coverage is:

**(1)** Provided on the same basis, either primary or excess, as the Covered Autos Liability Coverage provided for the power unit if the power unit is a covered "auto".

**(2)** Excess if the power unit is not a covered "auto".

**d.** Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

**e.** Except as provided in Paragraphs **a., b., c.** and **d.** above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

**f.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**g.** Regardless of the provisions of Paragraphs **a., b., c., d.** and **e.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

Copyright, Insurance Services Office, Inc., 2011

h. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

(1) The United States of America;

(2) The territories and possessions of the United States of America;

(3) Puerto Rico;

(4) Canada; and

(5) Anywhere in the world if a covered "auto" of the "private passenger type" is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION VI - DEFINITIONS**

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 2011

CA 00 20 10 13

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  **a.** That are, or that are contained in any property that is:

    **(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

    **(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

    **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

  **b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

  **c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

    **(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto", if:

    **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

  **E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

  **F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

  **G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

  **H.** "Insured contract" means:

    **1.** A lease of premises;

    **2.** A sidetrack agreement;

    **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

    **6.** That part of any contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

  **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" unless the covered "auto" is used in your business as a "motor carrier" for hire as in Section II, Paragraph **A.1.d.** of the Who Is An Insured provision.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers; or

**6.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above, maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Motor carrier" means a person or organization providing transportation by "auto" in the furtherance of a commercial enterprise.

**M.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**N.** "Private passenger type" means a private passenger or station wagon type "auto" and includes an "auto" of the pickup or van type if not used for business purposes.

**O.** "Property damage" means damage to or loss of use of tangible property.

**P.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

    **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" submits with our consent.

**Q.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**R.** "Trailer" includes a semitrailer or a dolly used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

FORM MCS-90

OMB No.: 2126-0008  Expiration: 5/31/2024

| USDOT Number: _____ | Date Received: _____ |

Please note, the expiration date as stated on this form relates to the process for renewing the Information Collection Request for this form with the Office of Management and Budget. This requirement to collect information as requested on this form does not expire. For questions, please contact the Office of Registration and Safety Information, Registration, Licensing, and Insurance Division.

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2126-0008. Public reporting for this collection of information is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are mandatory. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20590.

**United States Department of Transportation**
**Federal Motor Carrier Safety Administration**

Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980

# FORM MCS-90

Issued to  <u>J A Trucking Inc</u>
  *(Motor Carrier name)*
of  <u>Pennsylvania</u>
  *(Motor Carrier state or province)*

Dated at <u>Johnstown, PA</u> on this <u>15th</u> day of <u>June</u> , <u>2022</u>

Amending Policy Number: <u>WF011456</u>  Effective Date: <u>06/01/2022</u>

Name of Insurance Company: <u>Northland Insurance Company</u>

Countersigned by: 
  *(authorized company representative)*

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown (check only one):

[X]  *This insurance is primary and the company shall not be liable for amounts in excess of $* <u>1,000,000</u>  *for each accident.*

[ ]  *This insurance is excess and the company shall not be liable for amounts in excess of $* _____ *for each accident in excess of the underlying limit of $* _____ *for each accident.*

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: <u>814-255-7878</u> .

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under <u>49 U.S.C. 13901</u>, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, DC).

**Filings must be transmitted online via the Internet at http://www.fmcsa.dot.gov/urs.**

*(continued on next page)*

## DEFINITIONS AS USED IN THIS ENDORSEMENT

**Accident** includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**Motor Vehicle** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**Bodily Injury** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**Property Damage** means damage to or loss of use of tangible property.

**Environmental Restoration** means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

**Public Liability** means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company

from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

*(continued on next page)*

FORM MCS-90 Page 2 of 3

FORM MCS-90                                OMB No.: 2126-0008  Expiration: 5/31/2024

## SCHEDULE OF LIMITS - PUBLIC LIABILITY

| Type of carriage | Commodity transported | January 1, 1985 |
|---|---|---|
| **(1)** For-hire (in interstate or foreign commerce, with a gross vehicle weight rating of 10,001 or more pounds). | Property (nonhazardous) | $750,000 |
| **(2)** For-hire and Private (in interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,001 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| **(3)** For-hire and Private (in interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,001 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| **(4)** For-hire and Private (in interstate or foreign commerce, with a gross vehicle weight rating of less than 10,001 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

*The schedule of limits shown does not provide coverage.  The limits shown in the schedule are for information purposes only.

FORM MCS-90 Page 3 of 3

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PUNITIVE DAMAGES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

The following exclusion is added to Paragraph **B., Exclusions,** of **SECTION II - COVERED AUTOS LIABILITY COVERAGE:**

**Punitive Damages**

Any punitive or exemplary damages.

T-006 (9/16)          © 2016 The Travelers Indemnity Company.  All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

\*This endorsement is **EFFECTIVE** 06/01/2022          \*and is part of Policy Number: WF011456

\*issued to: J A Trucking Inc

\*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

**PROVISIONS**

The following is added to Paragraph **c.** in **A.1., Who Is An Insured,** of **SECTION II - COVERED AUTOS LIABILITY COVERAGE** in the **BUSINESS AUTO COVERAGE FORM** and Paragraph **e.** in **A.1., Who Is An Insured,** of **SECTION II - COVERED AUTOS LIABILITY COVERAGE** in the **MOTOR CARRIER COVERAGE FORM**, whichever Coverage Form is part of your policy:

This includes any person or organization designated in the Schedule Of Additional Insured Persons Or Organizations, but only for damages to which this insurance applies and only to the extent of that person's or organization's liability for the conduct of another "insured". This provision specifically identifies such person or organization, but does not alter coverage provided in the Coverage Form.

**SCHEDULE OF ADDITIONAL INSURED PERSONS OR ORGANIZATIONS**

**Name and Address of Person or Organization:**

Westrock Company
1000 Abernathy Road NE
Atlanta, GA 30328

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

TL-164 (9/16)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

*This endorsement is **EFFECTIVE** 06/01/2022          *and is part of Policy Number: WF011456

*issued to: J A Trucking Inc

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

**PROVISIONS**

The following is added to Paragraph **c.** in **A.1., Who Is An Insured**, of **SECTION II - COVERED AUTOS LIABILITY COVERAGE** in the **BUSINESS AUTO COVERAGE FORM** and Paragraph **e.** in **A.1., Who Is An Insured**, of **SECTION II - COVERED AUTOS LIABILITY COVERAGE** in the **MOTOR CARRIER COVERAGE FORM**, whichever Coverage Form is part of your policy:

This includes any person or organization designated in the Schedule Of Additional Insured Persons Or Organizations, but only for damages to which this insurance applies and only to the extent of that person's or organization's liability for the conduct of another "insured".  This provision specifically identifies such person or organization, but does not alter coverage provided in the Coverage Form.

**SCHEDULE OF ADDITIONAL INSURED PERSONS OR ORGANIZATIONS**

**Name and Address of Person or Organization:**

PCA Packing Corporation Of America
499 Nixon Road
Cheswick, PA 15024

© 2016 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

TL-164 (9/16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

\*This endorsement is **EFFECTIVE** 06/01/2022          \*and is part of Policy Number: WF011456

\*issued to: J A Trucking Inc

\*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

**PROVISIONS**

The following is added to Paragraph **c.** in **A.1., Who Is An Insured,** of **SECTION II - COVERED AUTOS LIABILITY COVERAGE** in the **BUSINESS AUTO COVERAGE FORM** and Paragraph **e.** in **A.1., Who Is An Insured,** of **SECTION II - COVERED AUTOS LIABILITY COVERAGE** in the **MOTOR CARRIER COVERAGE FORM,** whichever Coverage Form is part of your policy:

This includes any person or organization designated in the Schedule Of Additional Insured Persons Or Organizations, but only for damages to which this insurance applies and only to the extent of that person's or organization's liability for the conduct of another "insured". This provision specifically identifies such person or organization, but does not alter coverage provided in the Coverage Form.

**SCHEDULE OF ADDITIONAL INSURED PERSONS OR ORGANIZATIONS**

**Name and Address of Person or Organization:**

ES3 LLC
4875 Susquehanna Trail
York, PA 17406

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

TL-164 (9/16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

*This endorsement is **EFFECTIVE** 06/01/2022          *and is part of Policy Number: WF011456

*Issued to: J A Trucking Inc

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

**PROVISIONS**

The following is added to Paragraph **c.** in **A.1.**, **Who Is An Insured**, of **SECTION II - COVERED AUTOS LIABILITY COVERAGE** in the **BUSINESS AUTO COVERAGE FORM** and Paragraph **e.** in **A.1.**, **Who Is An Insured**, of **SECTION II - COVERED AUTOS LIABILITY COVERAGE** in the **MOTOR CARRIER COVERAGE FORM**, whichever Coverage Form is part of your policy:

This includes any person or organization designated in the Schedule Of Additional Insured Persons Or Organizations, but only for damages to which this insurance applies and only to the extent of that person's or organization's liability for the conduct of another "insured". This provision specifically identifies such person or organization, but does not alter coverage provided in the Coverage Form.

**SCHEDULE OF ADDITIONAL INSURED PERSONS OR ORGANIZATIONS**

**Name and Address of Person or Organization:**

International Paper Company
6400 Poplar ave
Memphis, TN 38197

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

TL-164 (9/16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

*This endorsement is **EFFECTIVE** 06/01/2022          *and is part of Policy Number: WF011456

*Issued to: J A Trucking Inc

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

**PROVISIONS**

The following is added to Paragraph **c.** in **A.1., Who Is An Insured**, of **SECTION II - COVERED AUTOS LIABILITY COVERAGE** in the **BUSINESS AUTO COVERAGE FORM** and Paragraph **e.** in **A.1., Who Is An Insured**, of **SECTION II - COVERED AUTOS LIABILITY COVERAGE** in the **MOTOR CARRIER COVERAGE FORM**, whichever Coverage Form is part of your policy:

This includes any person or organization designated in the Schedule Of Additional Insured Persons Or Organizations, but only for damages to which this insurance applies and only to the extent of that person's or organization's liability for the conduct of another "insured". This provision specifically identifies such person or organization, but does not alter coverage provided in the Coverage Form.

**SCHEDULE OF ADDITIONAL INSURED PERSONS OR ORGANIZATIONS**

**Name and Address of Person or Organization:**

JB Hunt Transport
Po Box 1745
Lowell, AR 72745

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

TL-164 (9/16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

*This endorsement is **EFFECTIVE** 06/01/2022        *and is part of Policy Number: WF011456

*Issued to: J A Trucking Inc

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

**PROVISIONS**

The following is added to Paragraph **c.** in **A.1., Who Is An Insured**, of **SECTION II - COVERED AUTOS LIABILITY COVERAGE** in the **BUSINESS AUTO COVERAGE FORM** and Paragraph **e.** in **A.1., Who Is An Insured**, of **SECTION II - COVERED AUTOS LIABILITY COVERAGE** in the **MOTOR CARRIER COVERAGE FORM**, whichever Coverage Form is part of your policy:

This includes any person or organization designated in the Schedule Of Additional Insured Persons Or Organizations, but only for damages to which this insurance applies and only to the extent of that person's or organization's liability for the conduct of another "insured". This provision specifically identifies such person or organization, but does not alter coverage provided in the Coverage Form.

**SCHEDULE OF ADDITIONAL INSURED PERSONS OR ORGANIZATIONS**

**Name and Address of Person or Organization:**

Menasha Packing Company LLC
1645 Bergstrom Road
Neenah, WI 54956

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

TL-164 (9/16)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL CONDITIONS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

The following is added to Paragraph **B., General Conditions**, of the **CONDITIONS** Section:

**Inspection**

At our option, we may inspect your property and operations at any time.  These inspections are for our benefit only. By our right to inspect or by our making any inspection, we make no representation that your property or operations are safe, not harmful to health or comply with any law, rule, or regulation.

**Conformity To Statute**

Terms of your policy which are in conflict with the statutes of the state in which this policy is issued are hereby amended to conform to such statutes.

**Death Of The Individual Named Insured**

If you are an individual and you die:

a.   Your surviving spouse, if a resident of the same household at the time of your death, will continue as the Named Insured until the end of the policy; or

b.   Your legal representative will be the Named Insured, but only while acting within the scope of his or her duties as such.

**Transfer Of Your Interest In This Policy**

Your rights and duties under this policy may not be assigned without our written consent.

**No Abandonment**

You may not abandon any covered "auto" or damaged property to us.

T-217 (9/16)        © 2016 The Travelers Indemnity Company.  All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PHYSICAL DAMAGE COVERAGE CHANGES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

This endorsement provides only those coverages where a premium is shown in the Declarations. Each of these coverages applies only to the vehicles shown as covered "autos".

**PROVISIONS**

1. The following is added to Paragraph **A.4., Coverage Extensions**, of **SECTION III - PHYSICAL DAMAGE COVERAGE** of the BUSINESS AUTO COVERAGE FORM, and **SECTION IV - PHYSICAL DAMAGE COVERAGE** of the MOTOR CARRIER COVERAGE FORM:

   **Towing Expenses**

   We will also pay the reasonable cost to recover a covered "auto" as a result of a covered "loss", and tow it to the nearest facility capable of making the necessary repairs.

2. The following replaces Paragraph **B.3.** of **SECTION III - PHYSICAL DAMAGE COVERAGE** of the BUSINESS AUTO COVERAGE FORM:

   3. We will not pay for "loss" due and confined to:

      a. Wear and tear, freezing, mechanical or electrical breakdown, or structural failure.

      b. Blowouts, punctures or other road damage to tires.

      This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

3. The following replaces Paragraph **B.4.** of **SECTION IV - PHYSICAL DAMAGE COVERAGE** of the MOTOR CARRIER COVERAGE FORM:

   4. We will not pay for "loss" due and confined to:

      a. Wear and tear, freezing, mechanical or electrical breakdown, or structural failure.

      b. Blowouts, punctures or other road damage to tires.

      This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

4. The following is added to Paragraph **B., Exclusions**, of **SECTION III - PHYSICAL DAMAGE COVERAGE** of the BUSINESS AUTO COVERAGE FORM, and **SECTION IV - PHYSICAL DAMAGE COVERAGE** of the MOTOR CARRIER COVERAGE FORM:

   We will not pay for "loss" by theft which is caused by conversion, embezzlement or secretion by any person in possession of a covered "auto" under a bailment, lease, conditional sale, purchase agreement, mortgage or other encumbrance.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

5. The following replaces Paragraphs **C.1.** and **C.2.**, **Limit Of Insurance**, of **SECTION III - PHYSICAL DAMAGE COVERAGE** of the BUSINESS AUTO COVERAGE FORM, and **SECTION IV - PHYSICAL DAMAGE COVERAGE** of the MOTOR CARRIER COVERAGE FORM:

1. We will pay for "loss" as follows:

   a. **Finance Value**

   Subject to the stated limit shown in the Schedule of Autos or Monthly Report, the most we will pay for a total loss where a "finance agreement" exists and the stated value is equal to or greater than the outstanding financial obligation is the greater of:

   (1) The outstanding financial obligation under a "finance agreement" for a covered "auto" at the time of loss; or

   (2) The actual cash value of the covered "auto" at the time of the loss;

   However, we will not pay you for any of the following:

   (a) Overdue "finance agreement" payments including any type of late fees or penalties;

   (b) Financial penalties imposed under a "finance agreement" for excessive use, abnormal wear and tear or high mileage;

   (c) Security deposits not normally refunded by the lessor or lender;

   (d) Cost of "finance agreement" related products such as, Life Insurance, Health, Accident or Disability insurance purchased by you;

   (e) Carry-over balances from previous "finance agreements" or other amounts not associated with the covered "auto"; or

   (f) Unpaid principal included in the outstanding "finance agreement" balance that was not used by you to purchase the covered "auto".

   In addition, we will endeavor to send you payment within 60 days of a "loss" due to theft and within 30 days for any other "loss". If we do not, subject to the LIMIT OF INSURANCE, we shall also pay for additional payments your "finance agreement" generates, for the covered "auto" only, after the 60th day or 30th day, whichever applies.

   b. **Other Loss**

   The most we will pay for any other "loss" to any one covered "auto" shown in the Schedule of Autos or Monthly Report is the lesser of:

   (1) The amount shown as the stated limit in the Schedule of Autos or Monthly Report;

   (2) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   (3) The cost of repairing or replacing the damaged or stolen property with other of like kind and quality.

   With respect to a covered "auto" not shown in the Schedule of Autos or Monthly Report, the most we will pay for "loss" is the smaller of **(2)** or **(3)** above, reduced by the largest deductible applied to an "auto" of the same type that is shown in the Schedule of Autos or Monthly Report.

2. The stated limit in the Schedule of Autos or Monthly Report is the most we will pay for "loss" to any one covered "auto" to all electronic equipment that reproduces, receives or transmits audio, visual or data signals which, at the time of "loss", is:

   a. Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

    **b.**  Removable from a permanently installed housing unit as described in Paragraph **2.a.** above; or

    **c.**  An integral part of such equipment as described in Paragraph **2.a.** and **2.b.** above.

**6.** The following is added to Paragraph **C., Limits Of Insurance,** of **SECTION III - PHYSICAL DAMAGE COVERAGE** of the BUSINESS AUTO COVERAGE FORM, and **SECTION IV - PHYSICAL DAMAGE COVERAGE** of the MOTOR CARRIER COVERAGE FORM:

We will include the reasonable cost of protecting the damaged property as part of a covered "loss".

**7.** The following is added to Paragraph **D., Deductible,** of **SECTION III - PHYSICAL DAMAGE COVERAGE** of the BUSINESS AUTO COVERAGE FORM, and **SECTION IV - PHYSICAL DAMAGE COVERAGE** of the MOTOR CARRIER COVERAGE FORM:

No Comprehensive deductible for a covered "auto" will apply to glass damage if the glass is repaired rather than replaced.

**8.** The following is added to Paragraph **A., Loss Conditions,** of **SECTION IV - BUSINESS AUTO CONDITIONS** of the BUSINESS AUTO COVERAGE FORM, and **SECTION V - MOTOR CARRIER CONDITIONS** of the MOTOR CARRIER COVERAGE FORM:

**Salvage**

If we pay you the stated amount (less any deductibles) because of "loss" covered by PHYSICAL DAMAGE COVERAGE, we will be entitled to take title and possession of the damaged property for salvage.

**9.** The following is added to the **DEFINITIONS** section of the BUSINESS AUTO COVERAGE FORM and the MOTOR CARRIER COVERAGE FORM:

"Finance agreement" means a written lease or loan contract, entered into, as a part of your business, pertaining to the lease or purchase by you of a covered "auto", and subject to a valid promissory note or written payment obligation contained in a lease, and security agreement or other written agreement establishing a security interest, executed concurrently with the purchase or lease of the covered "auto".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## COVERED AUTO SYMBOLS - REPORTED AUTOS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

### PROVISIONS

1. The following is added to Paragraph **A., Description Of Covered Auto Designation Symbols,** of **SECTION I - COVERED AUTOS** in the Business Auto Coverage Form:

    **Symbol 11** = Reported "Autos"

    Only those "autos" reported at policy inception, and any additional "autos" added during the month preceding the submission of the monthly report that are reported on the first monthly report following the acquisition of the "auto" and reported by the monthly report due date of the 15th day of the month. An additional "auto" will not be a covered "auto" until the date it is reported to us unless it is reported on the first monthly report following its acquisition.

2. The following is added to Paragraph **A., Description Of Covered Auto Designation Symbols,** of **SECTION I - COVERED AUTOS** in the Motor Carrier Coverage Form:

    **Symbol 73** = Reported "Autos"

    Only those "autos" reported at policy inception, and any additional "autos" added during the month preceding the submission of the monthly report that are reported on the first monthly report following the acquisition of the "auto" and reported by the monthly report due date of the 15th day of the month. An additional "auto" will not be a covered "auto" until the date it is reported to us unless it is reported on the first monthly report following its acquisition.

© 2020 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

TL-237 (1/20)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMENDMENT OF COVERED AUTO DESIGNATION SYMBOLS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**PROVISIONS**

1. The following replaces Symbols **8** and **9** in Paragraph **A.**, **Description Of Covered Auto Designation Symbols**, of **SECTION I - COVERED AUTOS**, in the Business Auto Coverage Form if that form is part of your policy:

   Symbol **8** =   Only those "autos" you lease, hire, rent or borrow.  This does not include any "auto" used to transport the property of others by another carrier for which you have acted as a broker, freight forwarder or intermediary, or have otherwise arranged, such transport.  This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

   Symbol **9** =   Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business.  This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. This does not include any "auto" used to transport the property of others by another carrier for which you have acted as a broker, freight forwarder or intermediary, or have otherwise arranged, such transport.

2. The following replaces Symbols **68** and **71** in Paragraph **A.**, **Description Of Covered Auto Designation Symbols**, of **SECTION I - COVERED AUTOS**, in the Motor Carrier Coverage Form if that form is part of your policy:

   Symbol **68** =   Only those "autos" you lease, hire, rent or borrow.  This does not include any "auto" used to transport the property of others by another "motor carrier" for which you have acted as a broker, freight forwarder or intermediary, or have otherwise arranged, such transport.  This does not include any "private passenger type" "auto" you lease, hire, rent or borrow from any member of your household, any of your "employees", partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their households.

   Symbol **71** =   Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business.  This includes "private passenger type" "autos" owned by your "employees" or partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. This does not include any "auto" used to transport the property of others by another "motor carrier" for which you have acted as a broker, freight forwarder or intermediary, or have otherwise arranged, such transport.

© 2014 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

T-538 (6/14)

COMMERCIAL AUTO

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - WHO IS AN INSURED - USERS OF TRAILERS

This endorsement modifies insurance provided under the following:

MOTOR CARRIER COVERAGE FORM

The following exclusion is added to Paragraph **A.1.b., Who Is An Insured,** of **SECTION II - COVERED AUTOS LIABILITY COVERAGE:**

Anyone using a covered "auto" that is a "trailer" in a business other than yours, unless that use is under a written agreement to hire or borrow such "trailer" and in which you are required to hold the user harmless.

© 2018 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**CA T6 26 02 19**                                                                                         Page 1 of 1

COMMERCIAL AUTO

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE REDEFINED FOR EMPLOYMENT EXCLUSIONS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

The following is added to the definition of "employee" in Paragraph **F.** in the **DEFINITIONS** Section:

For purposes of the Employee Indemnification And Employer's Liability exclusion and the Fellow Employee exclusion, "employee" includes any person providing services for you or on your behalf as a driver of a commercial motor vehicle whether operating, loading, unloading, occupying or maintaining the commercial motor vehicle.

COMMERCIAL AUTO
CA 01 80 03 21

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

The following is added to Paragraph **2.a. Supplementary Payments:**

Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

**B. Changes In Conditions**

1. Paragraph **2.b.(5)** of the **Duties In The Event Of An Accident, Claim, Suit Or Loss** Condition is replaced by the following:

   **(5)** Submit to an independent medical examination when required by a court order issued in accordance with PA. CONS. STAT. § 1796.

2. The following is added to Paragraph **5. Transfer Of Rights Of Recovery Against Others To Us** Condition:

   If we make any payment due to an "accident" and the "insured" recovers from another party in a separate claim or "suit", the insured shall hold the proceeds in trust for us and pay us back the amount we have paid less reasonable attorneys' fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

3. The following paragraph is added to the **Other Insurance** Condition:

   If you are a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, then:

   **a.** For any "auto" you own, which is loaned to a customer as a temporary substitute for an "auto" insured under a "customer's private passenger automobile insurance policy" which is out of use because it is being transported, serviced, repaired or inspected, Covered Autos Liability, but only with respect to damages because of "bodily injury" and Physical Damage Coverage provided by this Coverage Form shall be excess in the event of an "accident" or "loss".

   **b.** For any "auto" insured under your "customer's private passenger automobile insurance policy", while it is being transported, serviced, repaired or inspected by you or your "employee":

   **(1)** Covered Autos Liability, but only with respect to damages because of "bodily injury";

   **(2)** Comprehensive Coverage;

   **(3)** Specified Cause Of Loss Coverage; and/or

 Copyright, Insurance Services Office, Inc., 2020

**(4)** Collision Coverage;

provided by this Coverage Form shall be primary in the event of an "accident" or "loss".

4. The following is added to Paragraph **B. General Conditions:**

a. **Constitutionality Clause**

The premium for, and the coverages of, this Coverage Form have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event of a court, from which there is no appeal, declares or enters a judgment, the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we shall have the right to recompute the premium payable for the Coverage Form and void or amend the provisions of the Coverage Form, subject to the approval of the Insurance Commissioner.

b. **Conformity Clause**

If you are a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, then whenever an "auto" insured under your "customer's private passenger automobile insurance policy" is being transported, serviced, repaired or inspected by you or your "employee":

**(1)** The provisions of the:

**(a)** Covered Autos Liability, but only with respect to damages because of "bodily injury";

**(b)** Comprehensive Coverage;

**(c)** Specified Cause Of Loss Coverage; and/or

**(d)** Collision Coverage;

provided by this Coverage Form are hereby amended to conform to 40 Pa. Stat. Ann. § 991.2007a; and

**(2)** Pursuant to 40 Pa. Stat. Ann. § 991.2007a, the Limits Of Insurance provided in the Schedule or in the Declarations are hereby increased as needed to an amount equal to the:

**(a)** Applicable limit(s);

**(b)** Actual cash value; and/or

**(c)** Amount necessary to repair or replace the property with other property of like kind and quality;

set forth in the "customer's private passenger automobile insurance policy".

C. **Changes In Definitions**

For motor vehicle dealers as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, the following definition is added:

"Customer's private passenger automobile insurance policy" means a private passenger automobile insurance policy that:

1. Is currently in effect; and

2. Lists an "auto" owned by your customer or a "customer's auto" in the Declarations.

POLICY NUMBER: WF011456

COMMERCIAL AUTO
CA 03 02 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

> **Named Insured:**
> J A Trucking Inc
> **Endorsement Effective Date:** 06/01/2022

## SCHEDULE

Covered Autos Liability Coverage and Paragraph **A.** Bodily Injury And Property Damage Liability of Section **II** - General Liability Coverages in the Auto Dealers Coverage Form are subject to one of the following two deductibles shown below:

| | | |
|---|---|---|
| Liability Deductible: | $ 5,000.00 | Per "Accident" |
| | OR | |
| "Property Damage" Only Liability Deductible: | $ | Per "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**A. Liability Deductible**

If a Liability Deductible, and not a "Property Damage" Only Liability Deductible, is shown in the Schedule, the damages resulting from any one "accident" that are otherwise payable will be reduced by the Liability Deductible shown in the Schedule prior to the application of the Limit of Insurance provision.

**B. Property Damage Only Liability Deductible**

If a "Property Damage" Only Liability Deductible, and not a Liability Deductible, is shown in the Schedule, the damages resulting from any one "accident" that are otherwise payable for "property damage" will be reduced by the "Property Damage" Only Liability Deductible shown in the Schedule prior to the application of the Limit of Insurance provision.

**C. Our Right To Reimbursement**

To settle any claim or "suit", we may pay all or any part of any deductible shown in the Schedule. You must reimburse us for the deductible or the part of the deductible we paid.

CA 03 02 10 13

Copyright, Insurance Services Office, Inc., 2011

Page 1 of 1

POLICY NUMBER: WF011456

COMMERCIAL AUTO<br>CA 21 92 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA UNINSURED MOTORISTS COVERAGE - NONSTACKED

For a covered "motor vehicle" licensed or principally garaged in, or "auto dealer operations" conducted in, Pennsylvania, this endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| J A Trucking Inc |
| **Endorsement Effective Date:** 06/01/2022 |

### SCHEDULE

| Limit Of Insurance: $35,000 | Each "Accident" |
|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle".

2. No judgment for damages arising out of a "suit" brought against the owner or operator of an "uninsured motor vehicle" is binding on us unless we:

    a. Received reasonable notice of the pendency of the "suit" resulting in the judgment; and

    b. Had a reasonable opportunity to protect our interests in the "suit".

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

    a. The Named Insured and any "family members".

    b. Anyone else "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

CA 21 92 10 13            Copyright, Insurance Services Office, Inc., 2012            Page 1 of 4

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

    a. Anyone "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent. However, this exclusion does not apply if such settlement does not adversely affect our rights of recovery under this coverage.

2. The direct or indirect benefit of any insurer or self-insurer under any disability benefits or similar law, except workers' compensation law.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

4. Punitive or exemplary damages.

5. "Bodily injury" sustained by:

    a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

    b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

    c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

6. "Bodily injury" arising directly or indirectly out of:

    a. War, including undeclared or civil war;

    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "motor vehicles", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

2. Any amount payable for damages under this coverage shall be reduced by all sums paid by or for anyone who is legally responsible. This includes all sums paid for the same damages under this Coverage Form's Covered Autos Liability Coverage. This also includes all sums paid for an "insured's" attorney either directly or as part of the amount paid to the "insured".

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form, Medical Payments Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any disability benefits or similar law, except workers' compensation law.

## E. Changes In Conditions

The Conditions are changed for Pennsylvania Uninsured Motorists Coverage - Nonstacked as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

    a. Promptly notify the police if a hit-and-run driver is involved; and

    b. Promptly send us copies of the legal papers if a "suit" is brought.

TRAVELERS DOC MGMT Page 74 of 171

2. **Legal Action Against Us** is replaced by the following:

**Legal Action Against Us**

a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

b. Any legal action against us under this Coverage Form must be brought within four years after the date on which the "insured" knows of the uninsured status of the owner or driver of the "uninsured motor vehicle". However, this Paragraph **b.** does not apply to an "insured" if, within four years after the date on which the "insured" knows of the uninsured status of the owner or driver of the "uninsured motor vehicle", we or the "insured" has made a written demand for arbitration in accordance with the provisions of this endorsement.

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment due to an "accident" involving an "uninsured motor vehicle" and the "insured" recovers from another party in a separate claim or "suit", the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid, less reasonable attorneys' fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

4. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

a. If there is other applicable similar insurance available under more than one Coverage Form or policy, the following priorities of recovery apply:

| First | The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
|---|---|
| Second | The Coverage Form or policy affording Uninsured Motorists Coverage to the "insured" as an individual Named Insured or "family member". |

b. Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

c. Where there is applicable insurance available under the first priority:

(1) The Limit of Insurance applicable to the vehicle the "insured" was "occupying" under the Coverage Form or policy in the first priority shall first be exhausted; and

(2) The maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

d. If two or more Coverage Forms or policies have equal priority:

(1) The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority;

(2) The insurer thereafter is entitled to recover pro rata contribution from any other insurer on the same level of priority for the benefits paid and the costs of processing the claim.

5. The following condition is added:

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   **a.** For which no liability bond or policy applies at the time of an "accident".

   **b.** For which an insuring or bonding company:

      **(1)** Denies coverage;

      **(2)** Is or becomes insolvent; or

      **(3)** Is or becomes involved in insolvency proceedings.

**c.** For which neither the driver nor owner can be identified. The vehicle or "trailer" must:

   **(1)** Hit an "insured", a covered "motor vehicle" or a vehicle an "insured" is "occupying"; or

   **(2)** Cause an "accident" resulting in "bodily injury" to an "insured" without hitting an "insured", a covered "motor vehicle" or a vehicle an "insured" is "occupying".

If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be proved.

However, an "uninsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or who becomes insolvent and cannot provide the amounts required by that motor vehicle law; or

**b.** Designed for use mainly off public roads while not on public roads.

**4.** "Motor vehicle" means a vehicle which is self-propelled, except one which is propelled solely by human power or by electric power obtained from overhead trolley wires, but does not mean a vehicle operated upon rails.

POLICY NUMBER:  WF011456

COMMERCIAL AUTO<br>CA 21 93 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE - NONSTACKED

For a covered "motor vehicle" licensed or principally garaged in, or "auto dealer operations" conducted in, Pennsylvania, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:**<br>J A Trucking Inc<br>**Endorsement Effective Date:**  06/01/2022 |

**SCHEDULE**

| |
|---|
| **Limit Of Insurance:** $ 35,000                Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "underinsured motor vehicle".

2. We will pay under this coverage only if Paragraph **a.** or **b.** below applies:

   **a.** The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   **b.** A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

      **(1)** Have been given prompt written notice of such tentative settlement; and

      **(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. No judgment for damages arising out of a "suit" brought against the owner or operator of an "underinsured motor vehicle" is binding on us unless we:

   **a.** Received reasonable notice of the pendency of the "suit" resulting in the judgment; and

   **b.** Had a reasonable opportunity to protect our interests in the "suit".

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   **a.** The Named Insured and any "family members".

b. Anyone else "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

a. Anyone "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to any of the following:

1. The direct or indirect benefit of any insurer or self-insurer under any disability benefits or similar law, except workers' compensation law.

2. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

3. Punitive or exemplary damages.

4. "Bodily injury" sustained by:

a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form;

b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form; or

c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

5. "Bodily injury" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of covered "motor vehicles", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Underinsured Motorists Coverage shown in the Schedule or Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form, Medical Payments Coverage endorsement or Uninsured Motorists Coverage endorsement attached to this Coverage Part.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any disability benefits or similar law, except workers' compensation law.

**E. Changes In Conditions**

The Conditions are changed for Pennsylvania Underinsured Motorists Coverage - Nonstacked as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

a. Promptly send us copies of the legal papers if a "suit" is brought.

b. A person seeking Underinsured Motorists Coverage must also promptly notify us, in writing, of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to the "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

**2. Legal Action Against Us** is replaced by the following:

**Legal Action Against Us**

**a.** No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

**b.** Any legal action against us under this Coverage Form must be brought within four years after the date on which the "insured" either settles with, or receives a judgment against, the owner or driver of the "underinsured motor vehicle".

**c.** Paragraph **2.b.** above of this condition does not apply if, within four years after the date on which the "insured" either settles with, or receives a judgment against, the owner or driver of the "underinsured motor vehicle":

**(1)** We or the "insured" have made a written demand for arbitration in accordance with the provisions of this endorsement; or

**(2)** The "insured" has filed an action for "bodily injury" against the owner or operator of the "underinsured motor vehicle" and such action is:

**(a)** Filed in a court of competent jurisdiction; and

**(b)** Not barred by the applicable state statute of limitations.

In the event that the four-year time limitation identified in this condition does not apply, the applicable state statute of limitations will govern legal action against us under this Coverage Form.

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment due to an "accident" involving an "underinsured motor vehicle" and the "insured" recovers from another party in a separate claim or "suit", the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid, less reasonable attorneys' fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

Our rights do not apply under this provision with respect to Underinsured Motorists Coverage if we:

**a.** Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

**b.** We also have a right to recover the advanced payment.

**4. Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

**a.** If there is other applicable similar insurance available under more than one Coverage Form or policy, the following priorities of recovery apply:

| First | The Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
|--------|---|
| Second | The Coverage Form or policy affording Underinsured Motorists Coverage to the "insured" as an individual Named Insured or "family member". |

**b.** Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

Copyright, Insurance Services Office, Inc., 2012

c. Where there is applicable insurance available under the first priority:

(1) The Limit of Insurance applicable to the vehicle the "insured" was "occupying" under the Coverage Form or policy in the first priority shall first be exhausted; and

(2) The maximum recovery under all Coverage Forms or policies in the second priority may equal but not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy affording coverage to an individual Named Insured or "family member".

d. If two or more Coverage Forms or policies have equal priority:

(1) The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority;

(2) The insurer thereafter is entitled to recover pro rata contribution from any other insurer for the benefits paid and the costs of processing the claim.

5. The following condition is added:

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Underinsured motor vehicle" means a vehicle for which the sum of all liability bonds or policies that apply at the time of an "accident" do not provide at least the amount an "insured" is legally entitled to recover as damages.

However, an "underinsured motor vehicle" does not include any vehicle designed for use mainly off public roads while not on public roads.

4. "Motor vehicle" means a vehicle which is self-propelled, except one which is propelled solely by human power or by electric power obtained from overhead trolley wires, but does not mean a vehicle operated upon rails.

POLICY NUMBER:  WF011456

COMMERCIAL  AUTO
CA 22 37 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA BASIC FIRST-PARTY BENEFIT

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Pennsylvania, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: |
| J A Trucking Inc |
| Endorsement Effective Date: 06/01/2022 |

## SCHEDULE

| Benefits | Limit Of Insurance |
|---|---|
| **Medical Expense Benefits** | Up to $5,000 per insured |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

We will pay the Basic First-party Benefit in accordance with the "Act" to or for an "insured" who sustains "bodily injury" caused by an "accident" arising out of the maintenance or use of an "auto".

**BENEFITS**

Subject to the limit shown in the Schedule or Declarations, the Basic First-party Benefit consists of Medical Expense Benefits. These benefits consist of reasonable and necessary medical expenses incurred for an "insured's":

1. Care;

2. Recovery; or

3. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the "accident" causing "bodily injury". If within 18 months from the date of the "accident" causing "bodily injury" it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the "bodily injury", medical expenses will be paid without limitation as to the time such further expenses are incurred.

**B. Who Is An Insured**

1. You.

2. If you are an individual, any "family member".

3. Any person while "occupying" a covered "auto".

4. Any person while not "occupying" an "auto" if injured as a result of an "accident" in Pennsylvania involving a covered "auto".

If a covered "auto" is parked and unoccupied, it is not an "auto" involved in an "accident" unless it was parked in a manner as to create an unreasonable risk of injury.

Copyright, Insurance Services Office, Inc., 2012

## C. Exclusions

We will not pay First-party Benefits for "bodily injury":

1. Sustained by any person injured while intentionally causing or attempting to cause injury to himself or herself or any other person.

2. Sustained by any person while committing a felony.

3. Sustained by any person while seeking to elude lawful apprehension or arrest by a law enforcement official.

4. Sustained by any person while maintaining or using an "auto" knowingly converted by that person. However, this exclusion does not apply to:

   a. You; or

   b. Any "family member".

5. Sustained by any person who, at the time of the "accident":

   a. Is the owner of one or more currently registered "autos" and none of those "autos" is covered by the financial responsibility required by the "Act"; or

   b. Is "occupying" an "auto" owned by that person for which the financial responsibility required by the "Act" is not in effect.

6. Sustained by any person maintaining or using an "auto" while located for use as a residence or premises.

7. Sustained by a pedestrian if the "accident" occurs outside of Pennsylvania. This exclusion does not apply to:

   a. You; or

   b. Any "family member".

8. Sustained by any person while "occupying":

   a. A recreational vehicle designed for use off public roads; or

   b. A motorcycle, moped or similar type vehicle.

9. Arising directly or indirectly out of:

   a. A discharge of a nuclear weapon (even if accidental);

   b. War, including undeclared or civil war;

   c. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   d. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. Nuclear reaction;

    b. Radiation; or

    c. Radioactive contamination.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", premiums paid, claims made, "autos" involved in the "accident" or insurers providing First-party Benefits, the most we will pay to or for an "insured" as a result of any one "accident" is the limit shown in the Schedule or in the Declarations.

2. Any amount payable under First-party Benefits shall be excess over any sums paid, payable or required to be provided under any workers' compensation law or similar law.

## E. Changes In Conditions

The Conditions are changed for First-party Benefits as follows:

1. **Transfer Of Rights Of Recovery Against Others To Us** does not apply.

2. The following conditions are added:

   **Nonduplication Of Benefits**

   No person may recover duplicate benefits for the same expenses or loss under this or any other similar automobile coverage including self-insurance.

### Priorities Of Policies

We will pay First-party Benefits in accordance with the order of priority set forth by the "Act". We will not pay if there is another insurer at a higher level of priority. The "First" category listed below is the highest level of priority and the "Fourth" category listed below is the lowest level of priority. The priority order is:

| First | The insurer providing benefits to the "insured" as a named insured. |
|-------|---------------------------------------------------------------------|
| Second | The insurer providing benefits to the "insured" as a "family member" who is not a named insured under another policy providing coverage under the "Act". |
| Third | The insurer of the "auto" which the "insured" is "occupying" at the time of the "accident". |
| Fourth | The insurer providing benefits to any "auto" involved in the "accident" if the "insured" is: |

    **a.** Not "occupying" an "auto"; and

    **b.** Not provided First-party Benefits under any other policy.

If two or more policies have equal priority, within the highest applicable number in the priority order:

**1.** The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible;

**2.** If we are the insurer against whom the claim is first made, our payment to or for an "insured" will not exceed the applicable limit shown in the Schedule or Declarations;

**3.** The insurer thereafter is entitled to recover pro rata contribution from any other insurer for the benefits paid and the costs of processing the claim. If contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles; and

**4.** The maximum recovery under all policies shall not exceed the amount payable under the policy with the highest dollar limits of benefits.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Auto" means a self-propelled motor vehicle or trailer required to be registered, operated or designed for use on public roads. However, "auto" does not include a vehicle operated:

    **a.** By muscular power; or

    **b.** On rails or tracks.

**2.** The "Act" means the Pennsylvania Motor Vehicle Financial Responsibility Law.

**3.** "Family member" means a resident of your household who is:

    **a.** Related to you by blood, marriage or adoption; or

    **b.** A minor in your custody or in the custody of any other "family member".

**4.** "Occupying" means in, upon, getting in, on, out or off.

COMMERCIAL AUTO
CA 99 48 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLLUTION LIABILITY - BROADENED COVERAGE FOR COVERED AUTOS - BUSINESS AUTO AND MOTOR CARRIER COVERAGE FORMS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Covered Autos Liability Coverage** is changed as follows:

1. Paragraph **a.** of the **Pollution** Exclusion applies only to liability assumed under a contract or agreement.

2. With respect to the coverage afforded by Paragraph **A.1.** above, Exclusion **B.6. Care, Custody Or Control** does not apply.

**B. Changes In Definitions**

For the purposes of this endorsement, Paragraph **D.** of the **Definitions** Section is replaced by the following:

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraphs **a.** and **b.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

Copyright, Insurance Services Office, Inc., 2011



**Northland Insurance Company**
St. Paul, MN 55102

**COMMERCIAL GENERAL LIABILITY DECLARATIONS**

**Effective Date:** 06/01/2022     **Expiration Date:** 06/01/2023     **Policy No:** WF011456
12:01 A.M. Standard Time at Named "Insured's" mailing address

**Named Insured:**
J A Trucking Inc

---

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| Each Occurrence Limit | $ 1,000,000 | |
|     Damage To Premises Rented To You Limit | $ 100,000 | Any One Premises |
|     Medical Expense Limit | $ 5,000 | Any One Person |
| Personal and Advertising Injury Limit | $ 1,000,000 | Any One Person or Organization |
| General Aggregate Limit | $ 2,000,000 | |
| Products/Completed Operations Aggregate Limit | $ 2,000,000 | |

---

## BUSINESS INFORMATION

Form of Business: Corporation

Loc. #    Address of All Premises That You Own, Rent or Occupy

001     212 Country Ln        West Newton        PA   15089

## CLASSIFICATION AND PREMIUM

| Loc. # | Classification | Code No. | Premium Base | Rate Pr/CO | Rate All Other | Advance Premium Pr/CO | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| ALL | Truckers. - Products-completed operations are subject to General Aggregate Limit. | 99793 | 25,200.00 | N/A | 23.3550 | $   N/A | $ 2,000.00 |
| | | | | | Subline Premiums | $   N/A | $ 2,000.00 |
| | | | | | Total Advance Premium | $ 2,000.00 | |

---

## FORMS AND ENDORSEMENTS

The schedule of coverage declarations, forms and endorsements shown on NL-2500 make up your policy as of the effective date shown above.

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS, COMPLETE THE ABOVE NUMBERED POLICY.

© 2012 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

TDL-25 (8/12)                                              Page 1 of 2

When used as a premium base:

**"Area"** (premium basis symbol a) means:

The total number of square feet of floor space at the insured premises, computed as follows:
1. For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:
   **a.** Courts and mezzanine types of floor openings.
   **b.** Portions of basements or floors where 50% or more of the area is used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment.
2. For tenants, determine the area they occupy in the same manner as for the entire buildings.
3. The rates apply per 1,000 square feet of area.

**"Total Cost"** (premium basis symbol c) means:

The total cost of all work let or sublet in connection with each specific project including:
1. The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work, however, do not include the cost of finished equipment installed but not furnished by the subcontractor if the subcontractor does no other work on or in connection with such equipment; and
2. All fees, bonuses or commissions made, paid or due.
3. The rates apply per $1,000 of total cost.

**"Admissions"** (premium basis symbol m) means:

The total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

The rates apply per 1,000 admissions.

**"Payroll"** (premium basis symbol p) means:
1. Commissions;
2. Bonuses;
3. Extra pay for overtime work, in accordance with the manuals in use by us;
4. Pay for holidays, vacations or periods of sickness;
5. Payment by an employer of amounts otherwise required by law to be paid by employees to statutory insurance or pension plans, such as the Federal Social Security Act;
6. Payment to employees on any basis other than time worked, such as piecework, profit sharing or incentive plans;
7. Payment or allowance for hand tools or power tools used by hand provided by employees and used in their work or operations to the insured;
8. The rental value of an apartment or a house provided for an employee based on comparable accommodations;
9. The value of lodging, other than an apartment or house, received by employees as part of their pay, to the extent shown on the insureds records;
10. The value of meals received by employees as part of their pay to the extent shown in the insured's records;
11. The value of store certificates, merchandise, credits or any other substitute for money received by employees as part of their pay;
12. The payroll of mobile equipment operators and their helpers, whether or not the operators are designated or licensed to operate automobiles. If the operators and their helpers are provided to the insured along with equipment hired under contract and their actual payroll is not known, use 1/3 of the total amount paid out by the insured for the hire of the equipment;
13. The payroll of executive officers of a corporation and individual insureds and co-partners. For the purposes of payroll determination, managers of limited liability companies shall be considered executive officers and members of limited liability companies shall be considered co-partners.

    The executive officers of a corporation are those persons holding any of the officer positions created by the named insured's charter, constitution or by-laws or any other similar governing document.

    The payroll of all executive officers of a corporation and individual insureds or co-partners engaged principally in clerical operations or as salespersons, and officers and co-partners who are inactive for the entire policy period, shall not be included for premium purposes.

    For part-time or seasonal businesses the payroll amounts may be reduced by 2 percent for each full calendar week in excess of twelve during which the risk performs no operations.
14. The payroll of leased workers furnished to the named insured by a labor leasing firm. Premium on such payroll shall be based on the classifications and rates which would have applied if the leased workers had been the direct employees of the named insured. If payroll is unavailable, use 100% of the total cost of the contract for leased workers as the payroll of leased workers. The premium shall be charged on that amount as payroll.

    If investigation of a specific employee leasing contract discloses that a definite amount of the contract price represents payroll, such amount shall be considered payroll for premium computation purposes.
15. Fees paid to employment agencies for temporary personnel provided to the insured.

Payroll does not include:
1. Tips and other gratuities received by employees;
2. Payments by an employer to group insurance or group pension plans for employees in accordance with the manuals in use by us;

3. The value of special rewards for individual invention or discovery;
4. Dismissal or severance payments except for time worked or accrued vacation;
5. The payroll of clerical office employees. Clerical office employees are those employees who work in an area which is physically separated by walls, floors or partitions from all other work areas of the insured and whose duties are strictly limited to keeping the insured's books or records or conducting correspondence, including any other employees engaged in clerical work in the same area;
6. The payroll of salesmen, collectors or messengers who work principally away from the insured's premises.
   Salesmen, collectors or messengers are those employees engaged principally in any such duties away from the premises of the employer;
   **Exception:** This term does not apply to any employee whose duties include the delivery of any merchandise handled, treated or sold.
7. The payroll of drivers and their helpers if their principal duties are to work on or in connection with automobiles.
8. The payroll of aircraft pilots or co-pilots if their principal duties are to work on or in connection with aircraft in either capacity.
9. The payroll of draftsmen, if their duties are limited to office work only, and who are engaged strictly as draftsmen in such a manner that they are not exposed to the operative hazards of the business.

The rates apply per $1,000 of payroll.

**"Overtime"**
1. Definition

   Overtime means those hours worked for which there is an increase in the rate of pay:
   **a.** For work in any day or in any week in excess of the number of hours normally worked; or
   **b.** For hours worked in excess of 8 hours in any day or 40 hours in any week; or
   **c.** For work on Saturdays, Sundays or holidays.

   In the case of guaranteed wage agreements, overtime means only those hours worked in excess of the number specified in such agreement.
2. Exclusion Of Overtime Payroll

   The extra pay for overtime shall be excluded from the payroll on which premium is computed as indicated in **(1)** or **(2)**, provided the insured's books and records are maintained to show overtime pay separately by employee and in summary by classification.
   **a.** If the records show separately the extra pay earned for overtime, the entire extra pay shall be excluded.
   **b.** If the records show the total pay earned for overtime (regular pay plus overtime pay) in one combined amount, 1/3 of this total pay shall be excluded. If double time is paid for overtime and the total pay for such overtime is recorded separately, 1/2 of the total pay for double time shall be excluded.

   Exclusion of overtime pay does not apply to payroll assigned to the "Stevedoring" classifications.

**"Gross Sales"** (premium basis symbol s) means:
1. The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:
   **(a)** All goods or products, sold or distributed;
   **(b)** Operations performed during the policy period;
   **(c)** Rentals; and
   **(d)** Dues and fees.
2. Inclusions

   The following items shall not be deducted from gross sales:
   **(a)** Foreign exchange discounts;
   **(b)** Freight allowance to customers;
   **(c)** Total sales of consigned goods and warehouse receipts;
   **(d)** Trade or cash discounts;
   **(e)** Bad debts; and
   **(f)** Repossession of items sold on installments (amount actually collected).
3. Exclusions

   The following items shall be deducted from gross sales:
   **(a)** Sales or excise taxes which are collected and submitted to a government division;
   **(b)** Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;
   **(c)** Finance charges for items sold on installments;
   **(d)** Freight charges on sales if freight is charged as a separate item on customer's invoice;
   **(e)** Royalty income from patent rights or copyrights which are not product sales; and
   **(f)** Rental receipts from products liability coverage only.

The rates apply per $1,000 of gross sales.

**"Units"** (premium basis symbol u) means:

A single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone. The rates apply per each unit.

**"Each"** (premium basis symbol t) means:

Each unit of exposure as defined in the classification footnotes.

© 2012 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 07

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Copyright, ISO Properties, Inc., 2006

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

Copyright, ISO Properties, Inc., 2006

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for;

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate rate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting an your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Copyright, ISO Properties, Inc., 2006

TRAVELERS DOC MGMT Page 90 of 171

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed to the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of the oral or written publication of material whose first publication took place before the beginning of the policy period.

Copyright, ISO Properties, Inc., 2006

TRAVELERS DOC MGMT Page 91 of 171

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of any insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Copyright, ISO Properties, Inc., 2006

p. **Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## COVERAGE C MEDICAL PAYMENTS

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

   (3) Because of your operations;

   provided that:

   (a) The accident takes place in the "coverage territory" and during the policy period;

   (b) The expenses are incurred and reported to us within one year of the date of the accident; and

   (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

   To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazards**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I - Coverage A - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

Copyright, ISO Properties, Inc., 2006

CG 00 01 12 07

TRAVELERS DOC MGMT Page 94 of 171

2. Each of the following is also an insured:

    **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

        **(1)** "Bodily injury" or "personal and advertising injury";

            **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

            **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

            **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

            **(d)** Arising out of his or her providing or failing to provide professional health care services.

        **(2)** "Property damage" to property:

            **(a)** Owned, occupied or used by,

            **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

            you, any of your "employees", "volunteer workers," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

    **c.** Any person or organization having proper temporary custody of your property if you die, but only:

        **(1)** With respect to liability arising out of the maintenance or use of that property; and

        **(2)** Until your legal representative has been appointed.

    **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    **b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    **c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

    **a.** Medical expenses under Coverage C;

    **b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    **c.** Damages under Coverage B.

Copyright, ISO Properties, Inc., 2006

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Copyright, ISO Properties, Inc., 2006

CG 00 01 12 07

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** - Coverage A - Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date of the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

 Copyright, ISO Properties, Inc., 2006

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this Insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purposes of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Copyright, ISO Properties, Inc., 2006

CG 00 01 12 07

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

Copyright, ISO Properties, Inc., 2006

f. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

Copyright, ISO Properties, Inc., 2006

CG 00 01 12 07

TRAVELERS DOC MGMT Page 100 of 171

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, factors or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

Copyright, ISO Properties, Inc., 2006

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TOTAL POLLUTION EXCLUSION WITH EXCEPTIONS FOR BUILDING HEATING, COOLING, DEHUMIDIFYING AND PERSONAL HOT WATER HEATING EQUIPMENT AND HOSTILE FIRE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following replaces Exclusion **f., Pollution,** in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

   **f. Pollution**

   **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".

   This paragraph does not apply to:

   **(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or produced by or originating from equipment that is used to heat water for personal use by the building's occupants or their guests; or

   **(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

      **(i)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

      **(ii)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are or were at any time performing operations to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

   **(2)** Any loss, cost or expense arising out of any:

   **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **(b)** Claim or "suit" by or on behalf of a government authority or others because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

2. The following replaces the last paragraph of Paragraph **2., Exclusions,** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

   Exclusions **c.** through **e.** and **g.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in **SECTION III - LIMITS OF INSURANCE.**

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

S42-CG (2/16)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Punitive Or Exemplary Damages**

Any claim for punitive or exemplary damages, fines, penalties or multiplied damages.

S43-CG (1/14)               © 2014 The Travelers Indemnity Company.  All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMBINATION ENDORSEMENT

# BODILY INJURY AND PROPERTY DAMAGE LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**A. AMENDMENT OF EXCLUSIONS**

**1. EXCLUSION - ELECTRONIC DATA**

The following replaces Exclusion **p., Electronic Data,** in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**2. EXCLUSION - UNSOLICITED COMMUNICATION**

The following replaces Exclusion **q., Distribution Of Material In Violation Of Statutes,** in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**q. Unsolicited Communication**

"Bodily injury" or "property damage" arising out of any actual or alleged violation of any law that restricts or prohibits the sending, transmitting or distributing of "unsolicited communication".

**3. EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION**

The following exclusion is added to Paragraph **2., Exclusions,** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

"Bodily injury" or "property damage" arising out of access to or disclosure of any person's or organization's confidential or personal information.

**4. EXCLUSION - AIRCRAFT PRODUCTS AND GROUNDING**

The following exclusion is added to Paragraph **2., Exclusions,** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Aircraft Products and Grounding**

"Bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of any "aircraft product" or the "grounding" of any aircraft.

**5. EXCLUSION - ASBESTOS**

The following exclusion is added to Paragraph **2., Exclusions,** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Asbestos**

**(1)** "Bodily injury" or "property damage" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the "bodily injury" or "property damage" is caused or contributed to by the hazardous properties of asbestos.

**(2)** "Bodily injury" or "property damage" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste, and that are part of any claim or "suit" which also alleges any "bodily injury" or "property damage" described in Paragraph **(1)** above.

**(3)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, asbestos, asbestos fibers or products containing asbestos; or

**(b)** Claim or suit by or on behalf of any governmental authority or any other person or organization because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, asbestos, asbestos fibers or products containing asbestos.

## 6. EXCLUSION - DISCRIMINATION

The following exclusion is added to Paragraph **2., Exclusions,** of SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

**Discrimination**

"Bodily injury" arising out of discrimination based upon a person's sex, sexual orientation, marital status, pregnancy, race, color, creed, religion, national origin, citizenship, veteran status, age, genetic information or physical or mental disability, or any other characteristic, attribute, trait, condition, or status that qualifies a person for protection against discrimination under federal, state or local law.

## 7. EXCLUSION - EMPLOYMENT-RELATED PRACTICES

The following exclusion is added to Paragraph **2., Exclusions,** of SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

**Employment-Related Practices**

"Bodily injury" to:

**(1)** A person, other than an "independent contractor", arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment or "temporary worker" status; or

**(c)** Employment-related practice, policy, act or omission related to that person's employment or "temporary worker" status, such as coercion, demotion, evaluation, reassignment, discipline, failure to promote or advance, harassment, humiliation, discrimination, libel, slander, violation of the person's right of privacy, malicious prosecution or false arrest, detention or imprisonment, regardless of whether such practice, policy, act or omission occurs, is applied or is committed before, during or after the time of that person's employment or "temporary worker" status; or

**(2)** The spouse, child, parent, brother, sister, domestic partner or member of the household of that person as a consequence of "bodily injury" described in Paragraph **(1)** above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "bodily injury".

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

S267-CG (2/22)      Page 2 of 8

8. **EXCLUSION - FUNGI OR BACTERIA**

The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Fungi or Bacteria**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the "bodily injury" or "property damage".

**(2)** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

9. **EXCLUSION - LEAD**

The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Lead**

**(1)** "Bodily injury" or "property damage" arising out of the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead compounds or lead which is or was contained or incorporated into any material or substance.

**(2)** Any loss, cost or expense arising out of any request, order or requirement to abate, mitigate, remediate, contain, remove or dispose of lead, lead compounds or materials or substances containing lead.

10. **EXCLUSION - VIOLATION OF CONSUMER FINANCIAL PROTECTION LAWS**

The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Violation of Consumer Financial Protection Laws**

"Bodily injury" or "property damage" arising out of any actual or alleged violation of a "consumer financial protection law", or any other "bodily injury" or "property damage" alleged in any claim or "suit" that also alleges any such violation.

11. **EXCLUSION - SILICA OR SILICA-RELATED DUST**

The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Silica Or Silica-Related Dust**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of "silica" or "silica-related dust".  This includes, but is not limited to:

**(1)** Any supervision, instructions, recommendations, warnings or advise given or which should have been given in connection with the above; and

**(2)** Any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury" or "property damage".

© 2022 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**B. AMENDMENT OF LIMITS OF INSURANCE - NONCUMULATION OF EACH OCCURRENCE LIMIT**

The following replaces Paragraph **5.** of **SECTION III - LIMITS OF INSURANCE:**

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all:

    **a.** Damages under Coverage **A** because of all "bodily injury" and "property damage"; and

    **b.** Medical expenses under Coverage **C** because of all "bodily injury";

arising out of any one "occurrence".

**Noncumulation Of Each Occurrence Limit**

If any one "occurrence" causes:

    **a.** "Bodily injury" or "property damage" to which this insurance applies; and

    **b.** "Bodily injury" or "property damage" to which commercial general liability coverage included in one or more prior or future policies issued to you by us, or any of our affiliated insurance companies, applies;

this policy's Each Occurrence Limit applicable to that "occurrence" also will be reduced by the amount of each payment made because of the "bodily injury" or "property damage" described in Paragraph **b.** above by us or any of our affiliated insurance companies under, and within the applicable limit of insurance of, each other applicable policy.

**C. AMENDMENT OF CONDITIONS - OTHER INSURANCE**

**1.** The following replaces the part of the first paragraph of Paragraph **4., Other Insurance**, of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** that precedes Paragraph **a.:**

If valid and collectible other insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as described in Paragraphs **a.** and **b.** below.

As used anywhere in this Coverage Part, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

    **(i)** Another insurance company;

    **(ii)** Us or any of our affiliated insurance companies, except when the Noncumulation of Each Occurrence Limit provision of Paragraph **5.** of Section III - Limits Of Insurance applies or when the Noncumulation of Personal and Advertising Injury Limit provision of Paragraph **4.** of Section III - Limits of Insurance applies if that provision is part of this policy;

    **(iii)** Any risk retention group;

    **(iv)** Any self-insurance method or program, including any failure to buy insurance, or decision to not buy insurance, for any reason, in which case the insured will be deemed to be the provider of other insurance; or

    **(v)** Any similar risk transfer or risk management method.

Other insurance does not include umbrella insurance, or excess insurance, that you bought specifically to apply in excess of the Limits of Insurance shown in the Declarations for this Coverage Part.

**2.** The following replaces Paragraph **4.b., Excess Insurance**, of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:**

    **b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

    **(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work";

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(3)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

**(4)** If the loss arises out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft to the extent not subject to Exclusion **g.** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability; or

**(5)** That is available to the insured when the insured has been added as an additional insured by attachment of an endorsement under any other insurance or is any other insured that is not a named insured under such insurance.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any provider of other insurance has a duty to defend the insured against that "suit". If no provider of other insurance defends, we will undertake to do so, but we will be entitled to the insured's rights against all those providers of other insurance.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all such other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision.

**D. AMENDMENT OF DEFINITIONS**

**1. COVERAGE TERRITORY**

The following replaces the definition of "coverage territory" in the **DEFINITIONS** Section:

"Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place; or

**(2)** The "personal and advertising injury" is caused by an offense committed;

in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided that the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above, or in a settlement we agree to.

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

2.  **LEASED WORKER**

The following replaces the definition of "leased worker" in the **DEFINITIONS** Section:

"Leased worker" means a person leased to you by a labor leasing firm under an agreement between the hirer and labor leasing firm to perform duties related to the conduct of your business.  "Leased worker" does not include a "temporary worker".

3.  **LOADING OR UNLOADING**

The following replaces the definition of "loading or unloading" in the **DEFINITIONS** Section:

"Loading or unloading" means the handling of any person or property:

a.  After it is moved from the place where the person or property is accepted for movement into or onto an aircraft, watercraft or "auto";

b.  While it is in or on an aircraft, watercraft or "auto"; or

c.  While it is being moved from an aircraft, watercraft or "auto" to the place where the person or property is finally delivered.

However, "loading or unloading" does not include the movement of any person or property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

4.  **PROPERTY DAMAGE**

The following replaces the definition of "property damage" in the **DEFINITIONS** Section:

"Property damage" means:

a.  Physical damage to tangible property of others, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical damage that caused it; or

b.  Loss of use of tangible property of others that is not physically damaged.  All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

5.  **TEMPORARY WORKER**

The following replaces the definition of "temporary worker" in the **DEFINITIONS** Section:

"Temporary worker" means a person who is hired to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

6.  **AIRCRAFT PRODUCT**

The following is added to the **DEFINITIONS** Section:

"Aircraft product" means:

a.  Aircraft, including missile or spacecraft, and any ground support or control equipment used with any aircraft, missile or spacecraft;

b.  Any of "your products" manufactured for, used in connection with, or incorporated into aircraft, aircraft parts, aircraft equipment or aircraft accessories, including ground handling tools and equipment;

c.  Any of "your products" used for the purpose of guidance, navigation or direction of aircraft, whether an aircraft is in flight or on the ground; or

d.  Training aids, navigation charts, navigation aids, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft or products.

© 2022 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

7. **CONSUMER FINANCIAL IDENTITY INFORMATION**

The following is added to the **DEFINITIONS** Section:

"Consumer financial identity information" means any of the following information for a person that is used or collected for the purpose of serving as a factor in establishing such person's eligibility for personal credit, insurance or employment, or for the purpose of conducting a business transaction:

   **a.** Part or all of the account number, the expiration date or the balance of any credit, debit, bank or other financial account;

   **b.** Information bearing on a person's credit worthiness, credit standing or credit capacity;

   **c.** Social security number;

   **d.** Driver's license number; or

   **e.** Birth date.

8. **CONSUMER FINANCIAL PROTECTION LAW**

The following is added to the **DEFINITIONS** Section:

"Consumer financial protection law" means:

   **a.** The Fair Credit Reporting Act (FCRA) and any of its amendments, including the Fair and Accurate Credit Transactions Act (FACTA);

   **b.** California's Song-Beverly Credit Card Act and any of its amendments; or

   **c.** Any other law or regulation that restricts or prohibits the collection, dissemination, transmission, distribution or use of "consumer financial identity information".

9. **ELECTRONIC DATA**

The following is added to the **DEFINITIONS** Section:

"Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

10. **FUNGI**

The following is added to the **DEFINITIONS** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

11. **GROUNDING**

The following is added to the **DEFINITIONS** Section:

"Grounding" means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the actual, alleged or suspected existence of any defect, fault or condition in such aircraft or any part thereof:

   **a.** Sold, handled or distributed by the insured; or

   **b.** Manufactured, assembled or processed by any other person or organization:

      **(1)** According to specifications, plans, suggestions, orders, or drawings of the insured; or

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** With tools, machinery or other equipment furnished to such persons or organizations by the insured;

whether such aircraft so withdrawn or restricted are owned or operated by the same or different persons or organizations.

**12. INDEPENDENT CONTRACTOR**

The following is added to the **DEFINITIONS** Section:

"Independent contractor" means any person who is not the insured's "employee", "temporary worker" or "volunteer worker", but who performs duties related to the conduct of the insured's business because of a contract or agreement between the insured and that person for specified services.

**13. SILICA**

The following is added to the **DEFINITIONS** Section:

"Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**14. SILICA-RELATED DUST**

The following is added to the **DEFINITIONS** Section:

"Silica-related dust" means a mixture or combination of "silica" and other dust particles.

**15. UNSOLICITED COMMUNICATION**

The following is added to the **DEFINITIONS** Section:

"Unsolicited communication" means any communication, in any form, that the recipient of such communication did not specifically request to receive.

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION - AIRCRAFT, AUTO OR WATERCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**1.** The following replaces Exclusion **g.**, **Aircraft, Auto or Watercraft**, of SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured, an agent of any insured, or an independent contractor providing services for or on behalf of any insured.  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured, an agent of any insured, or an independent contractor providing services for or on behalf of any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry any person or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided that the "auto" is not owned by or rented or loaned to you, any insured, any employee of the insured, any of your "volunteer workers" or any "volunteer workers" of the insured.

**(4)** Liability assumed by you under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft, provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement;

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of any "supplementary machinery or equipment" that is attached to, or part of, a land vehicle that would qualify as "mobile equipment" under the definition of "mobile equipment" if such land vehicle were not:

        **(i)** Subject to a compulsory or financial responsibility law, or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

        **(ii)** Designated as a covered "auto" under your automobile liability insurance; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment"; or

**(6)** An aircraft chartered with a pilot to any insured.  This exception does not apply if:

    **(a)** The aircraft is owned by any insured; or

    **(b)** Any insured is using the aircraft to carry any person or property for a charge.

© 2013 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

2. The following is added to the **DEFINITIONS** Section:

"Supplementary machinery or equipment" means machinery or equipment designed for work, other than the transportation of any person or property on a public road. However, "supplementary machinery or equipment" does not include:

a. Any communication device, such as a radio or telephone; or

b. Any machinery or equipment that is designed to perform any function normal to the operation of the land vehicle during travel on public roads, such as a steering mechanism.

© 2013 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE

This endorsement applies to the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
CYBERFIRST ESSENTIALS GENERAL PROVISIONS FORM
CYBERFIRST GENERAL PROVISIONS FORM
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY[+] WITH IDENTITY FRAUD EXPENSE REIMBURSEMENT
    COVERAGE PART
ENVIRONMENTAL HAZARD POLICY
EXCESS FOLLOW-FORM AND UMBRELLA LIABILITY INSURANCE
EXCESS (FOLLOWING FORM) LIABILITY INSURANCE
LAW ENFORCEMENT LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MANUFACTURERS ERRORS AND OMISSIONS LIABILITY COVERAGE PART
MEDFIRST PRODUCTS/COMPLETED OPERATIONS, ERRORS AND OMISSIONS, AND
    INFORMATION SECURITY LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK DEPARTMENT OF
    TRANSPORTATION
TRIBAL BUSINESS MANAGEMENT LIABILITY COVERAGE PART
Any other Commercial Liability coverage included in this policy that is subject to the federal Terrorism
    Risk Insurance Act of 2002 as amended

**PROVISIONS**

The federal Terrorism Risk Insurance Act of 2002 as amended ("TRIA") establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in TRIA) caused by "Acts Of Terrorism" (as defined in TRIA). Act Of Terrorism is defined in Section 102(1) of TRIA to mean any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Federal Government's share of compensation for such Insured Losses is 80% of the amount of such Insured Losses in excess of each Insurer's "Insurer Deductible" (as defined in TRIA), subject to the "Program Trigger" (as defined in TRIA).

In no event, however, will the Federal Government be required to pay any portion of the amount of such Insured Losses occurring in a calendar year that in the aggregate exceeds $100 billion, nor will any Insurer be required to pay any portion of such amount provided that such Insurer has met its Insurer Deductible. Therefore, if such Insured Losses occurring in a calendar year exceed $100 billion in the aggregate, the amount of any payments by the Federal Government and any coverage provided by this policy for losses caused by Acts Of Terrorism may be reduced.

For each coverage provided by this policy that applies to such Insured Losses, the charge for such Insured Losses is included in the premium for such coverage. The charge for such Insured Losses that has been included for each such coverage is the percentage of the premium for such coverage indicated below, and does not include any charge for the portion of such Insured Losses covered by the Federal Government under TRIA:

**1%**.

© 2020 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

IL T3 68 01 21                                                                                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## COMBINATION ENDORSEMENT

## PERSONAL AND ADVERTISING INJURY LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**A. AMENDMENT OF EXCLUSIONS**

**1. EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION**

The following exclusion is added to Paragraph **2., Exclusions,** of SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**2. EXCLUSION - KNOWING VIOLATION OF RIGHTS OF ANOTHER**

The following replaces Exclusion **a., Knowing Violation Of Rights Of Another,** in Paragraph **2.** of SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

This exclusion does not apply to "personal and advertising injury" caused by malicious prosecution.

**3. EXCLUSION - MATERIAL PUBLISHED WITH KNOWLEDGE OF FALSITY**

The following replaces Exclusion **b., Material Published With Knowledge Of Falsity,** in Paragraph **2.** of SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, including publication by electronic means, of material, if done by or at the direction of the insured with knowledge of its falsity.

**4. EXCLUSION - MATERIAL PUBLISHED OR USED PRIOR TO POLICY PERIOD**

The following replaces Exclusion **c., Material Published Prior To Policy Period,** in Paragraph **2.** of SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

**c. Material Published Or Used Prior To Policy Period**

"Personal and advertising injury" arising out of:

**(1)** Oral or written publication, including publication by electronic means, of material whose first publication took place prior to the policy period; or

**(2)** Infringement of copyright, "title" or "slogan" in your "advertisement" whose first infringement in your "advertisement" was committed prior to the policy period.

© 2021 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, with its permission.

S2623-CG (8/21)    Page 1 of 9

5. **EXCLUSION - BREACH OF CONTRACT**

The following replaces Exclusion **f., Breach Of Contract,** in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**f.   Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract.

6. **EXCLUSION - INTELLECTUAL PROPERTY**

The following replaces Exclusion **i., Infringement Of Copyright, Patent, Trademark Or Trade Secret,** in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**i.   Intellectual Property**

"Personal and advertising injury" arising out of any actual or alleged infringement or violation of any of the following rights or laws, or any other "personal  and advertising injury" alleged in any claim or suit that also alleges any such infringement or violation:

**(1)** Copyright;

**(2)** Patent;

**(3)** Trade dress;

**(4)** Trade name;

**(5)** Trademark;

**(6)** Trade secret; or

**(7)** Other intellectual property rights or laws.

This exclusion applies regardless of whether the allegation of infringement or violation of any of these rights or laws is made by any person or organization making the claim or bringing the suit, by any insured or any other party to the claim or suit.

This exclusion does not apply to:

**(1)** "Personal and advertising injury" arising out of any actual or alleged infringement or violation of another's copyright, "title" or "slogan" in your "advertisement"; or

**(2)** Any other "personal and advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation of another's copyright, "title" or "slogan" in your "advertisement".

7. **EXCLUSION - INSUREDS IN MEDIA AND INTERNET TYPE BUSINESSES**

The following replaces Exclusion **j., Insureds In Media And Internet Type Businesses,** in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**j.   Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" arising out of an offense committed by an insured whose business is:

**(1)** Advertising, "broadcasting" or publishing;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

© 2021 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, with its permission.

This exclusion does not apply to Paragraphs **a.(1)**, **(2)** and **(3)** of the definition of "personal and advertising injury".

For the purposes of this exclusion:

**(1)** Creating and producing correspondence written in the conduct of your business, bulletins, financial or annual reports, or newsletters about your goods, products or services will not be considered the business of publishing; and

**(2)** The placing of frames, borders or links, or advertising, for you or others anywhere on the Internet will not, by itself, be considered the business of advertising, "broadcasting" or publishing.

8. **EXCLUSION - POLLUTION-RELATED**

The following replaces Paragraph **(2)** of Exclusion **n.**, **Pollution-Related**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**(2)** Claim or suit by or on behalf of any governmental authority or any other person or organization because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

9. **EXCLUSION - WAR**

The following replaces Exclusion **o.**, **War**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**o. War**

"Personal and advertising injury" arising out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

10. **EXCLUSION - UNSOLICITED COMMUNICATION**

The following exclusion replaces Exclusion **p.**, **Distribution Of Material In Violation Of Statutes**, in Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**p. Unsolicited Communication**

"Personal and advertising injury" arising out of any actual or alleged violation of any law that restricts or prohibits the sending, transmitting or distributing of "unsolicited communication".

11. **EXCLUSION - ASBESTOS**

The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**Asbestos**

**(1)** "Personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the "personal and advertising injury" is caused or contributed to by the hazardous properties of asbestos.

**(2)** "Personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste, and that are part of any claim or "suit" which also alleges any "personal and advertising injury" described in Paragraph **(1)** above.

© 2021 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, with its permission.

**(3)** Any loss, cost or expense arising out of any:

    **(a)** Request,demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, asbestos, asbestos fibers or products containing asbestos; or

    **(b)** Claim or suit by or on behalf of any governmental authority or any other person or organization because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, asbestos, asbestos fibers or products containing asbestos.

## 12. EXCLUSION - DISCRIMINATION

The following exclusion is added to Paragraph **2., Exclusions**, of SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

**Discrimination**

"Personal and advertising injury" arising out of discrimination based upon a person's sex, sexual orientation, marital status, pregnancy, race, color, creed, religion, national origin, citizenship, veteran status, age, genetic information or physical or mental disability, or any other characteristic, attribute, trait, condition, or status that qualifies a person for protection against discrimination under federal, state or local law.

## 13. EXCLUSION - EMPLOYMENT-RELATED PRACTICES

The following exclusion is added to Paragraph **2., Exclusions**, of SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

**Employment-Related Practices**

"Personal and advertising injury" to:

**(1)** A person, other than an "independent contractor", arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment or "temporary worker" status; or

    **(c)** Employment-related practice, policy, act or omission related to that person's employment or "temporary worker" status, such as coercion, demotion, evaluation, reassignment, discipline, failure to promote or advance, harassment, humiliation, discrimination, libel, slander, violation of the person's right of privacy, malicious prosecution or false arrest, detention or imprisonment, regardless of whether such practice, policy, act or omission occurs, is applied or is committed before, during or after the time of that person's employment or "temporary worker" status; or

**(2)** The spouse, child, parent, brother, sister, domestic partner or member of the household of that person as a consequence of "personal and advertising injury" described in Paragraph **(1)** above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "personal and advertising injury".

## 14. EXCLUSION - FUNGI OR BACTERIA

The following exclusion is added to Paragraph **2., Exclusions**, of SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

**Fungi or Bacteria**

**(1)** "Personal and advertising injury" arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the "personal and advertising injury".

© 2021 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, with its permission.

**(2)** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**15. EXCLUSION - LEAD**

The following exclusion is added to Paragraph **2.**, **Exclusions**, of SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

**Lead**

**(1)** "Personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead compounds or lead which is or was contained or incorporated into any material or substance.

**(2)** Any loss, cost or expense arising out of any request, order or requirement to abate, mitigate, remediate, contain, remove or dispose of lead, lead compounds or materials or substances containing lead.

**16. EXCLUSION - VIOLATION OF CONSUMER FINANCIAL PROTECTION LAWS**

The following exclusion is added to Paragraph **2.**, **Exclusions**, of SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

**Violation of Consumer Financial Protection Laws**

"Personal and advertising injury" arising out of any actual or alleged violation of a "consumer financial protection law", or any other "personal and advertising injury" alleged in any claim or "suit" that also alleges any such violation.

**17. EXCLUSION - SILICA OR SILICA-RELATED DUST**

The following exclusion is added to Paragraph **2.**, **Exclusions**, of SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

**Silica Or Silica-Related Dust**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of "silica" or "silica-related dust". This includes, but is not limited to:

**(1)** Any supervision, instructions, recommendations, warnings or advise given or which should have been given in connection with the above; and

**(2)** Any obligation to share damages with or repay someone else who must pay damages because of such "personal and advertising injury".

**B. AMENDMENT OF CONTRACTUAL LIABILITY EXCLUSION - EXCEPTION FOR PERSONAL AND ADVERTISING INJURY ASSUMED IN AN INSURED CONTRACT**

**1.** The following is added to Exclusion **e.**, **Contractual Liability**, in Paragraph **2.** of SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

This exclusion also does not apply to liability for damages because of "personal and advertising injury" assumed by you in a contract or agreement that is an "insured contract", provided that the "personal and advertising injury" is caused by an offense committed subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed by you in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured will be deemed to be damages because of "personal and advertising injury", provided that:

**(1)** Liability to such party for, or for the cost of, that party's defense has also been assumed by you in the same "insured contract"; and

**(2)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**2.** The following replaces Paragraph **2.d.** of **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B** of **SECTION I - COVERAGES:**

**d.** The allegations in the "suit" and the information we know about the "occurrence" or offense are such that no conflict appears to exist between your interests and the interests of the indemnitee;

**3.** The following replaces the third sentence of Paragraph **2.** of **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B:**

Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability, or the provisions of Paragraph **2.e.** of Section I - Coverage **B** - Personal and Advertising Injury Liability, such payments will not be deemed to be damages because of "bodily injury", "property damage" or "personal and advertising injury", and will not reduce the limits of insurance.

**4.** The following replaces the first paragraph of Paragraph **f.** of the definition of "insured contract" in the **DEFINITIONS** Section:

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**C.** **AMENDMENT OF LIMITS OF INSURANCE - NONCUMULATION OF PERSONAL AND ADVERTISING LIABILITY LIMIT**

The following is added to Paragraph **4.** of **SECTION III - LIMITS OF INSURANCE:**

**Noncumulation Of Personal And Advertising Injury Limit**

If any one person or organization sustains damages because of:

**a.** "Personal and advertising injury" to which this insurance applies; and

**b.** "Personal and advertising injury" coverage included in one or more prior or future policies issued to you by us, or any of our affiliated insurance companies, applies;

this policy's Personal and Advertising Injury Limit applicable to that person or organization also will be reduced by the amount of each payment made for damages because of the "personal and advertising injury" described in Paragraph **b.** above by us or any of our affiliated insurance companies under, and within the applicable limit of insurance of, each other applicable policy.

**D.** **AMENDMENT OF DEFINITIONS**

**1.** **PERSONAL AND ADVERTISING INJURY**

The following replaces the definition of "personal and advertising injury" in the **DEFINITIONS** Section:

"Personal and advertising injury":

**a.** Means injury caused by one or more of the following offenses committed by or on behalf of the insured:

**(1)** False arrest, detention or imprisonment, provided that the claim is made or the "suit" is brought by a person who claims to have been falsely arrested, detained or imprisoned;

**(2)** Malicious prosecution, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been maliciously prosecuted;

**(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

**(4)** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

**(5)** Oral or written publication, including publication by electronic means, of material that:

    **(a)** Appropriates a person's name, voice, photograph or likeness; or

    **(b)** Unreasonably places a person in a false light; or

**(6)** Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

**2. BROADCASTING**

The following is added to the **DEFINITIONS** Section:

"Broadcasting" means transmitting any audio or visual material for any purpose:

**a.** By radio or television; or

**b.** In, by or with any other electronic means of communication, such as the Internet, if that material is part of:

    **(1)** Radio or television programming being transmitted;

    **(2)** Other entertainment, educational, instructional, music or news programming being transmitted; or

    **(3)** Advertising transmitted with any of such programming.

**3. CONSUMER FINANCIAL IDENTITY INFORMATION**

The following is added to the **DEFINITIONS** Section:

"Consumer financial identity information" means any of the following information for a person that is used or collected for the purpose of serving as a factor in establishing such person's eligibility for personal credit, insurance or employment, or for the purpose of conducting a business transaction:

**a.** Part or all of the account number, the expiration date or the balance of any credit, debit, bank or other financial account;

**b.** Information bearing on a person's credit worthiness, credit standing or credit capacity;

**c.** Social security number;

**d.** Driver's license number; or

**e.** Birth date.

4. **CONSUMER FINANCIAL PROTECTION LAW**

   The following is added to the **DEFINITIONS** Section:

   "Consumer financial protection law" means:

   a. The Fair Credit Reporting Act (FCRA) and any of its amendments, including the Fair and Accurate Credit Transactions Act (FACTA);

   b. California's Song-Beverly Credit Card Act and any of its amendments; or

   c. Any other law or regulation that restricts or prohibits the collection, dissemination, transmission, distribution or use of "consumer financial identity information".

5. **FUNGI**

   The following is added to the **DEFINITIONS** Section:

   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

6. **INDEPENDENT CONTRACTOR**

   The following is added to the **DEFINITIONS** Section:

   "Independent contractor" means any person who is not the insured's "employee", "temporary worker" or "volunteer worker", but who performs duties related to the conduct of the insured's business because of a contract or agreement between the insured and that person for specified services.

7. **SILICA**

   The following is added to the **DEFINITIONS** Section:

   "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

8. **SILICA-RELATED DUST**

   The following is added to the **DEFINITIONS** Section:

   "Silica-related dust" means a mixture or combination of "silica" and other dust particles.

9. **SLOGAN**

   The following is added to the **DEFINITIONS** Section:

   "Slogan":

   a. Means a phrase that others use for the purpose of attracting attention in their advertising.

   b. Does not include a phrase used as, or in, the name of:

      (1) Any person or organization, other than you; or

      (2) Any business, or any of the premises, goods, products, services or work, of any person or organization, other than you.

© 2021 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, with its permission.

**10. TITLE**

The following is added to the **DEFINITIONS** Section:

"Title" means a name of a literary or artistic work.

**11. UNSOLICITED COMMUNICATION**

The following is added to the **DEFINITIONS** Section:

"Unsolicited communication" means any communication, in any form, that the recipient of such communication did not specifically request to receive.

© 2021 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, with its permission.

POLICY NUMBER: WF011456

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Name Of Additional Insured Person(s) Or Organization(s)**

Westrock Company
1000 Abernathy Road NE
Atlanta, GA 30328

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

A. In the performance of your ongoing operations; or

B. In connection with your premises owned by or rented to you.

CG 20 26 07 04

Copyright, ISO Properties, Inc., 2004

Page 1 of 1

POLICY NUMBER: WF011456          COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name Of Additional Insured Person(s) Or Organization(s)**

PCA Packing Corporation Of America
499 Nixon Road
Cheswick, PA 15024

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

CG 20 26 07 04          Copyright, ISO Properties, Inc., 2004          Page 1 of 1

POLICY NUMBER: WF011456

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name Of Additional Insured Person(s) Or Organization(s)**

ES3 LLC
4875 Susquehanna Trail
York, PA 17406

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

CG 20 26 07 04

Copyright, ISO Properties, Inc., 2004

Page 1 of 1

POLICY NUMBER: WF011456

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Name Of Additional Insured Person(s) Or Organization(s)**

International Paper Company
6400 Poplar Ave
Memphis, TN 38197

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

CG 20 26 07 04      Copyright, ISO Properties, Inc., 2004      Page 1 of 1

POLICY NUMBER: WF011456

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Name Of Additional Insured Person(s) Or Organization(s)**

JB Hunt Transport
Po Box 1745
Lowell, AR 72745

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

CG 20 26 07 04

Copyright, ISO Properties, Inc., 2004

Page 1 of 1

POLICY NUMBER:  WF011456

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Name Of Additional Insured Person(s) Or Organization(s)**

Menasha Packing Company LLC
1645 Bergstrom Road
Neenah, WI 54956

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

CG 20 26 07 04

Copyright, ISO Properties, Inc., 2004

Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 21 32 05 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section I - Coverage A - Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section I - Coverage B - Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

Copyright, Insurance Services Office, Inc., 2008

POLICY NUMBER: WF011456

**COMMERCIAL GENERAL LIABILITY**
CG 24 26 07 04

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

9. "Insured contract" means:

   **a.** A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

CG 24 26 07 04

Copyright, ISO Properties, Inc., 2004

Page 1 of 1



**PENNSYLVANIA**
**FINANCIAL RESPONSIBILITY**
**IDENTIFICATION**
**CARD**

P. O. Box 64816
St. Paul, Minnesota 55164-0816
(800) 328-5972

The coverage provided by this policy meets the minimum liability insurance requirements as prescribed by law.

Policy Number: WF011456    NAIC #: 24015

Company: Northland Insurance Company

Effective: From 06/01/2022 To 06/01/2023
(Not valid more than one year from effective date)

Insured:
J A Trucking Inc

212 Country Ln
West Newton, PA 15089
Description of Vehicle(s)

Year/Make/Model:
All Owned Vehicles

VIN Number:

If more than four vehicles, indicate "Fleet"/"All Owned Vehicles".

TFL-087 PA (1/07)                    239000002

---

**PENNSYLVANIA**
**FINANCIAL RESPONSIBILITY**
**IDENTIFICATION**
**CARD**

P. O. Box 64816
St. Paul, Minnesota 55164-0816
(800) 328-5972

The coverage provided by this policy meets the minimum liability insurance requirements as prescribed by law.

Policy Number: WF011456    NAIC #: 24015

Company: Northland Insurance Company

Effective: From 06/01/2022 To 06/01/2023
(Not valid more than one year from effective date)

Insured:
J A Trucking Inc

212 Country Ln
West Newton, PA 15089
Description of Vehicle(s)

Year/Make/Model:
All Owned Vehicles

VIN Number:

If more than four vehicles, indicate "Fleet"/"All Owned Vehicles".

TFL-087 PA (1/07)                    239000002

---



**PENNSYLVANIA**
**FINANCIAL RESPONSIBILITY**
**IDENTIFICATION**
**CARD**

P. O. Box 64816
St. Paul, Minnesota 55164-0816
(800) 328-5972

The coverage provided by this policy meets the minimum liability insurance requirements as prescribed by law.

Policy Number: WF011456    NAIC #: 24015

Company: Northland Insurance Company

Effective: From 06/01/2022 To 06/01/2023
(Not valid more than one year from effective date)

Insured:
J A Trucking Inc

212 Country Ln
West Newton, PA 15089
Description of Vehicle(s)

Year/Make/Model:
All Owned Vehicles

VIN Number:

If more than four vehicles, indicate "Fleet"/"All Owned Vehicles".

TFL-087 PA (1/07)                    239000002

---



**PENNSYLVANIA**
**FINANCIAL RESPONSIBILITY**
**IDENTIFICATION**
**CARD**

P. O. Box 64816
St. Paul, Minnesota 55164-0816
(800) 328-5972

The coverage provided by this policy meets the minimum liability insurance requirements as prescribed by law.

Policy Number: WF011456    NAIC #: 24015

Company: Northland Insurance Company

Effective: From 06/01/2022 To 06/01/2023
(Not valid more than one year from effective date)

Insured:
J A Trucking Inc

212 Country Ln
West Newton, PA 15089
Description of Vehicle(s)

Year/Make/Model:
All Owned Vehicles

VIN Number:

If more than four vehicles, indicate "Fleet"/"All Owned Vehicles".

TFL-087 PA (1/07)                    239000002

This card must be carried for production upon demand.
It is suggested that you carry this card in the insured vehicle.

**IF YOU HAVE AN ACCIDENT**

- Do not discuss the accident with anyone except a properly identified, authorized representative of The Northland Insurance Companies or with police authorities.

- Secure the names and addresses of:
  - Owners and drivers of the cars involved (also, license plate numbers);
  - Other drivers' insurance companies;
  - All witnesses, (include license plate numbers).

- Write down all details of the accident.
- Call the Claims Department: 1-800-328-5972

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**
1) You are involved in an auto accident.
2) You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3) You are stopped for violating any provision of 75 Pa.C.S. and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which has been previously suspended or revoked.

---

This card must be carried for production upon demand.
It is suggested that you carry this card in the insured vehicle.

**IF YOU HAVE AN ACCIDENT**

- Do not discuss the accident with anyone except a properly identified, authorized representative of The Northland Insurance Companies or with police authorities.

- Secure the names and addresses of:
  - Owners and drivers of the cars involved (also, license plate numbers);
  - Other drivers' insurance companies;
  - All witnesses, (include license plate numbers).

- Write down all details of the accident.
- Call the Claims Department: 1-800-328-5972

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**
1) You are involved in an auto accident.
2) You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3) You are stopped for violating any provision of 75 Pa.C.S. and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which has been previously suspended or revoked.

---

This card must be carried for production upon demand.
It is suggested that you carry this card in the insured vehicle.

**IF YOU HAVE AN ACCIDENT**

- Do not discuss the accident with anyone except a properly identified, authorized representative of The Northland Insurance Companies or with police authorities.

- Secure the names and addresses of:
  - Owners and drivers of the cars involved (also, license plate numbers);
  - Other drivers' insurance companies;
  - All witnesses, (include license plate numbers).

- Write down all details of the accident.
- Call the Claims Department: 1-800-328-5972

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**
1) You are involved in an auto accident.
2) You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3) You are stopped for violating any provision of 75 Pa.C.S. and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which has been previously suspended or revoked.

---

This card must be carried for production upon demand.
It is suggested that you carry this card in the insured vehicle.

**IF YOU HAVE AN ACCIDENT**

- Do not discuss the accident with anyone except a properly identified, authorized representative of The Northland Insurance Companies or with police authorities.

- Secure the names and addresses of:
  - Owners and drivers of the cars involved (also, license plate numbers);
  - Other drivers' insurance companies;
  - All witnesses, (include license plate numbers).

- Write down all details of the accident.
- Call the Claims Department: 1-800-328-5972

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this State without the required financial responsibility may have his registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**
1) You are involved in an auto accident.
2) You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3) You are stopped for violating any provision of 75 Pa.C.S. and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which has been previously suspended or revoked.

**POLICY CHANGES**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Endorsement Number:** 1

This endorsement changes Policy Number: WF011456    Effective: 06/20/2022 (12:01 A.M. Std. Time)

Issued to: J A Trucking Inc

In consideration of no change in premium, it is hereby understood and agreed that a second location has been added - 1528 New Stanton Ruffsdale Road, Ruffs Dale, PA 15679.

**The following Garaging Location is ADDED:**

Location Number: 002

1528 Stanton Ruffsdale Road   Ruffs Dale, PA 15679

**The following REVISED form(s) are ATTACHED:**

CA 00 20 (10/13)      Motor Carrier Coverage Form

CG 00 01 (12/07)      Commercial General Liability Coverage Form

ENDORSEMENT PREMIUM:          $   No Change
NEW TOTAL POLICY TERM PREMIUM: $   430,637.00
PRO RATE FACTOR:  .948

**All other terms and conditions of this policy remain unchanged.**

Date: 06/21/2022 AM _____    _____

Producer's Signature

TL-064 (1/08) WF011456  J A Trucking Inc                                06/21/2022 Page 1 of 1

COMMERCIAL AUTO
CA 00 20 10 13

# MOTOR CARRIER COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI - Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

### A. Description Of Covered Auto Designation Symbols

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 61 | Any "Auto" | |
| 62 | Owned "Autos" Only | Only the "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 63 | Owned Private Passenger Type "Autos" Only | Only the "private passenger type" "autos" you own. This includes those "private passenger type" "autos" that you acquire ownership of after the policy begins. |
| 64 | Owned Commercial "Autos" Only | Only those trucks, tractors and "trailers" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks, tractors and "trailers" you acquire ownership of after the policy begins. |
| 65 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the no-fault law in the state where they are licensed or principally garaged. |
| 66 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 67 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 68 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "private passenger type" "auto" you lease, hire, rent or borrow from any member of your household, any of your "employees", partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their households. |
| 69 | "Trailers" In Your Possession Under A Written Trailer Or Equipment Interchange Agreement | Only those "trailers" you do not own while in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailers" while in your possession. |

Copyright, Insurance Services Office, Inc., 2011

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 70 | Your "Trailers" In The Possession Of Anyone Else Under A Written Trailer Interchange Agreement | Only those "trailers" you own or hire while in the possession of anyone else under a written "trailer" interchange agreement. When Symbol **70** is entered next to a Physical Damage Coverage in Item Two of the Declarations, the Physical Damage Coverage exclusion relating to "loss" to a "trailer" in the possession of anyone else does not apply to that coverage. |
| 71 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "private passenger type" "autos" owned by your "employees" or partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |
| 79 | "Mobile Equipment" Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

**B. Owned Autos You Acquire After the Policy Begins**

1. If Symbols **61, 62, 63, 64, 65, 66** or **79** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **67** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II - COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

Copyright, Insurance Services Office, Inc., 2011

CA 00 20 10 13

We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

    (1) The owner or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

    (2) Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.

    (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

    (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) a lessee or borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".

    (5) A partner (if you are a partnership), or member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

d. The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a "motor carrier" for hire.

e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

    (1) Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":

        (a) If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

        (b) If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier" and used in his or her business.

    However, Paragraph (1) above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.

    (2) Any rail, water or air carrier or its "employees" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" or a "covered pollution cost or expense" occurs while the "trailer" is detached from a covered "auto" you are using and:

        (a) Is being transported by the carrier; or

        (b) Is being loaded on or unloaded from any unit of transportation by the carrier.

2. **Coverage Extensions**

a. **Supplementary Payments**

We will pay for the "insured":

    (1) All expenses we incur.

    (2) Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limit specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing "motor carriers" of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of "loss" because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

   **b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

   **a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

   **b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

   **a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

   **b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of "your work" after that work has been completed or abandoned.

In the exclusion, your work means:

   **a.** Work or operations performed by you or on your behalf; and

   **b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

   **(1)** When all of the work called for in your contract has been completed;

   **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

   **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   **a.** That are, or that are contained in any property that is:

      **(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

      **(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

      **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

   **b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   **c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispensed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**SECTION III - TRAILER INTERCHANGE COVERAGE**

**A. Coverage**

**1.** We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The "trailer's" collision with another object; or

**(2)** The "trailer's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

**c. Collision Coverage**

Caused by:

**(1)** The "trailer's" collision with another object; or

**(2)** The "trailer's" overturn.

Copyright, Insurance Services Office, Inc., 2011

CA 00 20 10 13

2. We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

3. **Coverage Extensions**

The following apply as **Supplementary Payments.** We will pay for you:

a. All expenses we incur.

b. The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

c. All reasonable expenses incurred at our request, including actual loss of earnings up to $250 a day because of time off from work.

d. All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

e. All interest on the full amount of any judgment that accrues after entry of the judgment; but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**B. Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

a. **Nuclear Hazard**

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

b. **War Or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for loss of use.

3. **Other Exclusions**

We will not pay for "loss" due and confined to:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**C. Limits Of Insurance**

The most we will pay for "loss" to any one "trailer" is the least of the following amounts:

1. The actual cash value of the damaged or stolen property at the time of the "loss";

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality; or

3. The Limit Of Insurance shown in the Declarations.

**D. Deductible**

For each covered "trailer", our obligation to pay:

1. The actual cash value of the damaged or stolen property at the time of the "loss" will be reduced by the applicable deductible shown in the Declarations.

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality will be reduced by the applicable deductible shown in the Declarations.

3. The damages for "loss" that would otherwise be payable will be reduced by the applicable deductible shown in the Declarations prior to the application of the Limit Of Insurance shown in the Declarations.

Copyright, Insurance Services Office, Inc., 2011

TRAVELERS DOC MGMT Page 141 of 171

## SECTION IV - PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   **(1)** Fire, lightning or explosion;

   **(2)** Theft;

   **(3)** Windstorm, hail or earthquake;

   **(4)** Flood;

   **(5)** Mischief or vandalism; or

   **(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

2. **Towing - Private Passenger Type Autos**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the "private passenger type" is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extension**

   **a. Transportation Expenses**

   We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the "private passenger type". We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   **b. Loss Of Use Expenses**

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   **(1)** Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

   **(2)** Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

   **(3)** Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

   However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

### B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   **(1)** The explosion of any weapon employing atomic fission or fusion; or

   **(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

Copyright, Insurance Services Office, Inc., 2011

CA 00 20 10 13

**b. War Or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any of the following:

a. Any covered "auto" while in anyone else's possession under a written "trailer" interchange agreement. But this exclusion does not apply to a loss payee; however, if we pay the loss payee, you must reimburse us for our payment.

b. Any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

c. Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

d. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

e. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

f. Any accessories used with the electronic equipment described in Paragraph **e.** above.

**3.** Exclusions **2.e.** and **2.f.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

a. Permanently installed in or upon the covered "auto";

b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

d. Necessary for the normal operation of the "auto" or the monitoring of the "auto's" operating system.

**4.** We will not pay for "loss" due and confined to:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

This exclusion does not apply to "loss" resulting from the total theft of a covered "auto".

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limits Of Insurance**

**1.** The most we will pay for:

a. "Loss" to any one covered "auto" is the lesser of:

(1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

(2) The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

(1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

(2) Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

(3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION V - MOTOR CARRIER CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

   **1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

   **2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

   **a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

     **(1)** How, when and where the "accident" or "loss" occurred;

     **(2)** The "insured's" name and address; and

     **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

   **b.** Additionally, you and any other involved "insured" must:

     **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

     **(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

     **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

     **(4)** Authorize us to obtain medical records or other pertinent information.

     **(5)** Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

   **c.** If there is a "loss" to a covered "auto" or its equipment, you must also do the following:

     **(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

     **(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

     **(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

     **(4)** Agree to examination under oath at our request and give us a signed statement of your answers.

   **3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

   **a.** There has been full compliance with all the terms of this Coverage Form; and

   **b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

   **4. Loss Payment - Physical Damage Coverages**

At our option, we may:

   **a.** Pay for, repair or replace damaged or stolen property;

   **b.** Return the stolen property at our expense. We will pay for any damage that results to the "auto" from the theft; or

   **c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

Copyright, Insurance Services Office, Inc., 2011

CA 00 20 10 13

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligation under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance - Primary And Excess Insurance Provisions**

**a.** While any covered "auto" is hired or borrowed from you by another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

**(1)** Primary if a written agreement between you as the lessor and the other "motor carrier" as the lessee requires you to hold the lessee harmless.

**(2)** Excess over any other collectible insurance if a written agreement between you as the lessor and the other "motor carrier" as the lessee does not require you to hold the lessee harmless.

**b.** While any covered "auto" is hired or borrowed by you from another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

**(1)** Primary if a written agreement between the other "motor carrier" as the lessor and you as the lessee does not require the lessor to hold you harmless, and then only while the covered "auto" is used exclusively in your business as a "motor carrier" for hire.

**(2)** Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee requires the lessor to hold you harmless.

**c.** While a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Covered Autos Liability Coverage is:

**(1)** Provided on the same basis, either primary or excess, as the Covered Autos Liability Coverage provided for the power unit if the power unit is a covered "auto".

**(2)** Excess if the power unit is not a covered "auto".

**d.** Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

**e.** Except as provided in Paragraphs **a.**, **b.**, **c.** and **d.** above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

**f.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**g.** Regardless of the provisions of Paragraphs **a.**, **b.**, **c.**, **d.** and **e.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

Copyright, Insurance Services Office, Inc., 2011

h. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

(1) The United States of America;

(2) The territories and possessions of the United States of America;

(3) Puerto Rico;

(4) Canada; and

(5) Anywhere in the world if a covered "auto" of the "private passenger type" is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION VI - DEFINITIONS**

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 2011

CA 00 20 10 13

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  **a.** That are, or that are contained in any property that is:

    **(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

    **(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

    **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

  **b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

  **c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

    **(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto", if:

    **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

  **1.** A lease of premises;

  **2.** A sidetrack agreement;

  **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

  **6.** That part of any contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

  **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

    **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" unless the covered "auto" is used in your business as a "motor carrier" for hire as in Section II, Paragraph **A.1.d.** of the Who Is An Insured provision.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **2.** Vehicles maintained for use solely on or next to premises you own or rent;

    **3.** Vehicles that travel on crawler treads;

    **4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **a.** Power cranes, shovels, loaders, diggers or drills; or

        **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **5.** Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

        **b.** Cherry pickers and similar devices used to raise or lower workers; or

    **6.** Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above, maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        **a.** Equipment designed primarily for:

            **(1)** Snow removal;

            **(2)** Road maintenance, but not construction or resurfacing; or

            **(3)** Street cleaning;

        **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Motor carrier" means a person or organization providing transportation by "auto" in the furtherance of a commercial enterprise.

**M.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**N.** "Private passenger type" means a private passenger or station wagon type "auto" and includes an "auto" of the pickup or van type if not used for business purposes.

**O.** "Property damage" means damage to or loss of use of tangible property.

**P.** "Suit" means a civil proceeding in which:

    **1.** Damages because of "bodily injury" or "property damage"; or

Copyright, Insurance Services Office, Inc., 2011

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

    **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" submits with our consent.

**Q.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**R.** "Trailer" includes a semitrailer or a dolly used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Copyright, ISO Properties, Inc., 2006

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

Copyright, ISO Properties, Inc., 2006

TRAVELERS DOC MGMT Page 151 of 171

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for;

  **(i)** Any insured; or

  **(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

  **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

  **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

  **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, de-toxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 26 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate rate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Copyright, ISO Properties, Inc., 2006

CG 00 01 12 07

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of the oral or written publication of material whose first publication took place before the beginning of the policy period.

Copyright, ISO Properties, Inc., 2006

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of any insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Copyright, ISO Properties, Inc., 2006

CG 00 01 12 07

p. **Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## COVERAGE C MEDICAL PAYMENTS

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

   (3) Because of your operations;

   provided that:

   (a) The accident takes place in the "coverage territory" and during the policy period;

   (b) The expenses are incurred and reported to us within one year of the date of the accident; and

   (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

   To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazards**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

Copyright, ISO Properties, Inc., 2006

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 Copyright, ISO Properties, Inc., 2006 CG 00 01 12 07

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforce-ment of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Copyright, ISO Properties, Inc., 2006
CG 00 01 12 07

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I - Coverage A - Bodily Injury And Property Damage Liability.**

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date of the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

 Copyright, ISO Properties, Inc., 2006

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purposes of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Copyright, ISO Properties, Inc., 2006

9. "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

Copyright, ISO Properties, Inc., 2006

f. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

Copyright, ISO Properties, Inc., 2006

CG 00 01 12 07

**17.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, factors or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

   **a.** Means:

     **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       **(a)** You;

       **(b)** Others trading under your name; or

       **(c)** A person or organization whose business or assets you have acquired; and

     **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

     **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

   **a.** Means:

     **(1)** Work or operations performed by you or on your behalf; and

     **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

     **(2)** The providing of or failure to provide warnings or instructions.

# MONTHLY REPORT

**Named Insured:**                                                                    **Policy No:** WF011456
J A Trucking Inc
212 Country Ln

For the Period Beginning: *June 1, 2022*   And Ending: *June 30, 2022*

## MONTHLY REPORTING PREMIUM

| GRP | COVERAGE | REPORTING BASE | EXPOSURE FOR THE PERIOD | X MONTHLY RATE | = PREMIUM |
|---|---|---|---|---|---|
| A | Covered Autos Liability<br>Uninsured Motorist-CSL<br>Underinsured Motorist-CSL<br>Basic First Party Benefits<br>Non-Owned Auto | Mileage<br>Per 100 Miles | *195891.1* | 11.8600 | *23230.38* |

|  |  |  | Total Reporting | $ *23230.38* |
|---|---|---|---|---|
|  |  |  | *Monthly Reporting Minimum | $ 24,913.00 |

| GRP | COVERAGE | REPORTING BASE | EXPOSURE FOR THE PERIOD | X MONTHLY RATE | = PREMIUM |
|---|---|---|---|---|---|
| B | Comprehensive<br>Collision | Stated Limit Of Equipment<br>Per $100 of Limit | *1898600* | .3617 | *6794.89* |
| C | Covered Autos Liability<br>Uninsured Motorist-CSL<br>Underinsured Motorist-CSL<br>Basic First Party Benefits | Reported Autos<br>Per Reported Auto |  | 109.0000 |  |

|  |  |  | Total Reporting | $ *6794.89* |
|---|---|---|---|---|
|  |  |  | *Monthly Reporting Minimum | $ N/A |

**Total Monthly Reporting Premium Due** $ *31707.89*

*Use the Monthly Reporting Minimum in calculating amount due if greater than the Total Reporting amount above.
**Total Monthly Reporting Premiums must reflect minimums where applicable.

### Vehicles Added, Deleted or Amended during the Reporting Period must be reported
on the MONTHLY REPORT - VEHICLE CHANGES form.

### FAILURE TO PAY TOTAL PREMIUM DUE GIVES US THE RIGHT TO CANCEL THE POLICY.

I hereby attest that the above report and reported vehicle changes are true and correct and acknowledge MONTHLY REPORT is part of the policy. I understand that to the extent there are vehicles that I fail to report, any unreported "autos" will not be covered "autos" as Symbol 73 Reported "Autos" or Symbol 11 Reported "Autos".

Named Insured *Jodi Phelps*                                    Date *7-31-22*

TI-035A (1/20)                    © 2020 The Travelers Indemnity Company. All rights reserved.                    Page 1   of 1

# MONTHLY REPORT - VEHICLE CHANGES

Named Insured:                                                          Policy No: WF011456
J A Trucking Inc

For the Period Beginning: _*June 1, 2022*_  And Ending: _*June 30, 2022*_

Physical Damage Coverage applies only for "autos" Added or Amended below for which there is a Stated Limit shown.

Action*        =    (1) Add, (2) Amend, (3) Delete
Vehicle Type** =    Truck, Tractor, Trailer, etc.
Ownership***   =    (1) Owned, (2) Employee Owned, (3) Leased Without Driver, (4) Leased With Driver Including
                    Non-Trucking, (5) Leased With Driver Excluding Non-Trucking

| Action* | Unit No. | Unit ID | Year | Make | Vehicle Type** | 17 Digit VIN | Stated Limit | Ownership*** |
|---------|----------|---------|------|------|----------------|--------------|--------------|--------------|
|         |          |         |      |      |                |              |              |              |
|         |          |         |      |      |                |              |              |              |
|         |          |         |      | *See attached* |        |              |              |              |
|         |          |         |      |      |                |              |              |              |
|         |          |         |      |      |                |              |              |              |

ADDITIONAL INTERESTS:
Action*   =    (1) Add, (2) Amend, (3) Delete
AI Type** =    AI=Additional Insured, AL=Lessor-Additional Insured and Loss Payee, LP=Loss Payee,
               LI=Leased With Driver Including Non-Trucking, LX=Leased With Driver Excluding Non-Trucking

| Action* | Unit No. | Unit ID | AI Type** | Name/Address/City/State/ZIP |
|---------|----------|---------|-----------|------------------------------|
|         |          |         |           |                              |
|         |          |         |           |                              |
|         |          |         |           |                              |
|         |          |         |           |                              |

I hereby attest that the above reported vehicle changes are true and correct and acknowledge MONTHLY REPORT - VEHICLE CHANGES is part of the policy. I understand that to the extent there are vehicles that I fail to report, any unreported "autos" will not be covered "autos" as Symbol 73 Reported "Autos" or Symbol 11 Reported "Autos".

Named Insured _____  Date _7-31-22_

TL-035B (1/20)          © 2020 The Travelers Indemnity Company. All rights reserved.

**J.A. TRUCKING, INC.**
**212 COUNTRY LANE**
**WEST NEWTON PA 15089**

| UNIT # | YEAR | UNIT_MAKE | UNIT_VIN | Start Date | |
|--------|------|-----------|----------|------------|---|
| 90 | 2000 | FREIGHTLINER-CLASSIC | 1FUPCSZB2YDA97708 | 6/1/21 | $18,000 |
| 100 | 1998 | WESTERN STAR | 2WKPDDXH7WK951357 | 6/1/21 | $12,000 |
| 111 | 2007 | FREIGHTLINER | 1FUJA6CK17LX86474 | 6/1/21 | $17,000 |
| 118 | 2010 | INTERNATIONAL | 3HSCUAPR8AN168772 | 6/1/21 | $20,000 |
| 120 | 2007 | FREIGHTLINER | 1FUJA6CKX7LX28489 | 6/1/21 | $18,000 |
| 123 | 2016 | FREIGHTLINER | 3ALXA7CG3GDHK9485 | 6/1/21 | $60,000 |
| 125 | 2005 | FREIGHTLINER | 1FUJA6CK6SLN95145 | 6/1/21 | $16,000 |
| 127 | 2005 | FREIGHTLINER | 1FUJA6CK95LV62916 | 6/1/21 | $16,000 |
| 128 | 2017 | FREIGHTLINER | 3ALXA7CG5HDHX8396 | 6/1/21 | $70,000 |
| 132 | 2017 | FREIGHTLINER | 3ALXA7CG3HDHZ8646 | 6/1/21 | $76,000 |
| 137 | 2009 | FREIGHTLINER | 1FUJA6CK59LAG7004 | 6/1/21 | $21,000 |
| 138 | 2011 | FREIGHTLINER | 1FUJGBDV8BSA28392 | 6/1/21 | $23,000 |
| 139 | 2009 | INTERNATIONAL | 1FUJGLCK09LAD0889 | 6/1/21 | $17,000 |
| 143 | 2007 | FREIGHTLINER | 1FUJA6CG67LX57404 | 6/1/21 | $18,000 |
| 145 | 2012 | FREIGHTLINER | 1FUJGLDR4CSBD2379 | 6/1/21 | $25,000 |
| 146 | 2011 | INTERNATIONAL | 3HSCUAPRXBJ361574 | 6/1/21 | $22,000 |
| 151 | 2011 | FREIGHTLINER | 1FUJGLBG00SAW4330 | 6/1/21 | $21,000 |
| 153 | 2011 | FREIGHTLINER | 1FUJGEDVX8SAZ1073 | 6/1/21 | $23,000 |
| 154 | 2011 | FREIGHTLINER | 1FUJGEDV5B5AY8467 | 6/1/21 | $23,000 |
| 155 | 2011 | FREIGHTLINER | 1FUJGLDV1BSAZ2309 | 2/1/22 | $23,000 |
| 156 | 2011 | FREIGHTLINER | 1FUJGLBG6BSAW4266 | 6/1/21 | $24,000 |
| 158 | 2012 | FREIGHTLINER | 1FUJGLDR4CSBF1644 | 6/1/21 | $25,000 |
| 159 | 2014 | FREIGHTLINER | 3AKJGEDV1FSFJ5873 | 6/1/21 | $34,000 |
| 160 | 2014 | FREIGHTLINER | 3AKJGEDVXESFJ5886 | 6/1/21 | $34,000 |
| 161 | 2012 | FREIGHTLINER | 1FUJGEDV1CLBH5936 | 6/1/21 | $25,000 |
| 163 | 2014 | FREIGHTLINER | 3AKJGEBG6FSFZ4316 | 9/1/21 | $32,000 |
| 164 | 2014 | FREIGHTLINER | 1FUJGLDR5ELFK8323 | 6/1/21 | $29,000 |
| 166 | 2016 | FREIGHTLINER | 3AKJGLD55GSGM4853 | 6/1/21 | $46,000 |
| 167 | 2016 | FREIGHTLINER | 3AKJGLD57GSGT7306 | 6/1/21 | $46,000 |
| 169 | 2012 | FREIGHTLINER | 1FUJGEDV9CSBH7262 | 6/1/21 | $25,000 |
| 170 | 2016 | FREIGHTLINER | 1FUJGBDV7GLHS1843 | 6/1/21 | $33,000 |
| 171 | 2015 | FREIGHTLINER | 3AKJGEDV2FSGB7311 | 6/1/21 | $30,000 |
| 172 | 2013 | FREIGHTLINER | 1FUJGEDV2DSBV1012 | 6/1/21 | $25,000 |
| 173 | 2015 | FREIGHTLINER | 3AKHGED51FSGN6282 | 6/1/21 | $30,000 |
| 174 | 2013 | FREIGHTLINER | 1FUJGEDV1DSBU6531 | 6/1/21 | $25,000 |
| 175 | 2012 | FREIGHTLINER | 1FUJGEDV6CS8D3719 | 9/1/21 | $21,000 |
| 176 | 2011 | FREIGHTLINER | 1FUJGEBG0BSAW0158 | 10/1/21 | $19,000 |
| 177 | 2015 | FREIGHTLINER | 3AKJGLD5XFSGR3187 | 3/1/22 | $40,000 |
| 5221 | 1996 | SP CONST | SW144817PA | 2/1/22 | LIAB ONLY |
| 203 | 2000 | WABASH | 1JJV281W3YL556807 | 6/1/21 | $2,500 |
| 204 | 2000 | WABASH | 1JJV281W5YL556808 | 6/1/21 | $2,500 |
| 413 | 1995 | STRICK | 1S12E9531SD392509 | 6/1/21 | $2,500 |
| 414 | 1995 | TRAILMOBILE | 1PT01JAH0S9006418 | 6/1/21 | $2,500 |
| 417 | 1995 | TRAILMOBILE | 1PT01JAH0S9006421 | 6/1/21 | $2,500 |
| 418 | 1995 | TRAILMOBILE | 1PT01JAH2S9006422 | 6/1/21 | $2,500 |
| 423 | 1995 | TRAILMOBILE | 1PT01JAH9S9006417 | 6/1/21 | $2,500 |
| 424 | 1996 | STRICK | 1S12E9539TD406173 | 6/1/21 | $2,500 |
| 614 | 1998 | STRICK | 1S12E9533WE426966 | 6/1/21 | $4,700 |
| 616 | 1998 | STRICK | 1S12E9537WE426968 | 6/1/21 | $4,700 |
| 649 | 2000 | STRICK | 1S12E9538YD450539 | 6/1/21 | $5,000 |
| 652 | 2000 | STRICK | 1S12E9538YD450542 | 6/1/21 | $2,500 |

| 658 | 2000 | STRICK | 1S12E9537YD454018 | 6/1/21 | $2,500 |
|-----|------|--------|-------------------|--------|--------|
| 662 | 2000 | STRICK | 1S12E9537YD454022 | 6/1/21 | $2,500 |
| 666 | 2000 | STRICK | 1S12E9537YD454026 | 6/1/21 | $2,500 |
| 667 | 2000 | STRICK | 1S12E9537YD454027 | 6/1/21 | $5,000 |
| 668 | 2001 | STRICK | 1S12E95331D455088 | 6/1/21 | $5,200 |
| 673 | 2001 | STRICK | 1S12E95371D455093 | 6/1/21 | $5,200 |
| 674 | 2001 | STRICK | 1S12E95391D455094 | 6/1/21 | $5,200 |
| 678 | 1998 | DORSEY | 1DTV11526WA264627 | 6/1/21 | $2,500 |
| 689 | 2003 | WABASH | 1JJV532W03L847024 | 6/1/21 | $5,900 |
| 691 | 2003 | WABASH | 1JJV532WX3L847029 | 6/1/21 | $5,900 |
| 692 | 2003 | WABASH | 1JJV532W23L846988 | 6/1/21 | $5,900 |
| 693 | 2003 | WABASH | 1JJV532W23L847025 | 6/1/21 | $5,900 |
| 696 | 2003 | WABASH | 1JJV532W03L846990 | 6/1/21 | $5,900 |
| 698 | 2003 | WABASH | 1JJV532W63L846993 | 6/1/21 | $5,900 |
| 699 | 2003 | WABASH | 1JJV532W63L847027 | 6/1/21 | $5,900 |
| 700 | 2003 | WABASH | 1JJV532W63L847030 | 6/1/21 | $5,900 |
| 701 | 2003 | WABASH | 1JJV532W73L846999 | 6/1/21 | $5,900 |
| 703 | 2003 | WABASH | 1JJV532W83L847000 | 6/1/21 | $5,900 |
| 704 | 2003 | WABASH | 1JJV532W83L847028 | 6/1/21 | $2,500 |
| 705 | 2003 | WABASH | 1JJV532W83L847031 | 6/1/21 | $5,900 |
| 706 | 2003 | WABASH | 1JJV532WX3L846995 | 6/1/21 | $5,900 |
| 707 | 2003 | WABASH | 1JJV532W13L846996 | 6/1/21 | $5,900 |
| 708 | 2003 | WABASH | 1JJV532WX3L847032 | 6/1/21 | $5,900 |
| 717 | 1999 | LUFKIN | 1L0A15326X1140250 | 6/3/21 | $2,500 |
| 718 | 1999 | LUFKIN | 1L01A532XXW1134420 | 6/1/21 | $2,500 |
| 725 | 1998 | WABASH | 1JJV532W9WL506113 | 6/1/21 | $4,900 |
| 727 | 2005 | GREAT DANE | 1GRAA062X5T512015 | 6/1/21 | $6,700 |
| 729 | 2003 | GREAT DANE | 1GRAA06213D401330 | 6/1/21 | $5,900 |
| 738 | 2003 | GREAT DANE | 1GRAA06243D401340 | 6/1/21 | $2,500 |
| 741 | 2003 | GREAT DANE | 1GRAA062X3D401343 | 6/1/21 | $2,500 |
| 811 | 1995 | WABASH | 1JJV532U6SL325995 | 6/1/21 | $2,500 |
| 812 | 1995 | WABASH | 1JJV532U4SL325994 | 6/1/21 | $2,500 |
| 814 | 1995 | WABASH | 1JJV532U3SL326005 | 6/1/21 | $2,500 |
| 816 | 2002 | TRAILMOBILE | 2MN01JAH721001336 | 6/1/21 | $5,400 |
| 817 | 2002 | TRAILMOBILE | 2MN01JAH92100134D | 6/1/21 | $5,400 |
| 818 | 2002 | TRAILMOBILE | 2MN01JAH221001342 | 6/1/21 | $5,400 |
| 820 | 2002 | TRAILMOBILE | 2MN01JAH221001356 | 6/1/21 | $5,400 |
| 821 | 2002 | TRAILMOBILE | 2MN01JAH521001366 | 6/1/21 | $5,400 |
| 822 | 2002 | TRAILMOBILE | 2MN01JAH921001371 | 6/1/21 | $5,400 |
| 900 | 2017 | WABASH | 1JJV532DGHL972471 | 6/1/21 | $23,000 |
| 901 | 2017 | WABASH | 1JJV532D8HL972472 | 6/1/21 | $23,000 |
| 902 | 2017 | WABASH | 1JJV532DXIHL972473 | 6/1/21 | $23,000 |
| 903 | 2017 | WABASH | 1JJV532D9HL972478 | 6/1/21 | $23,000 |
| 904 | 2007 | WABASH | 1JJV532W77L084556 | 6/1/21 | $7,900 |
| 905 | 2007 | WABASH | 1JJV532W37L084423 | 6/1/21 | $7,900 |
| 906 | 2007 | WABASH | 1JJV532W97L084426 | 6/1/21 | $7,900 |
| 907 | 2007 | WABASH | 1JJV532W77L084425 | 6/3/21 | $7,900 |
| 908 | 2007 | WABASH | 1JJV532W07L084427 | 6/1/21 | $7,900 |
| 909 | 2007 | WABASH | 1JJV532W27L084414 | 6/1/21 | $7,900 |
| 910 | 2007 | WABASH | 1JJV532W87L084496 | 6/1/21 | $7,900 |
| 911 | 2007 | WABASH | 1JJV532W17L084470 | 6/1/21 | $7,900 |
| 912 | 2007 | WABASH | 1JJV532W27L084445 | 6/1/21 | $2,500 |
| 913 | 2007 | WABASH | 1JJV532WX7L084435 | 6/1/21 | $7,900 |
| 914 | 2007 | WABASH | 1JJV532W17L084419 | 6/1/21 | $7,900 |
| 915 | 2013 | WABASH | 1JJS32D4DL751929 | 6/1/21 | $15,500 |
| 916 | 2013 | WABASH | 1JJS32D4DL751936 | 6/1/21 | $15,500 |
| 917 | 2013 | WABASH | 1JJS32D5DL751938 | 6/1/21 | $15,500 |
| 918 | 2013 | WABASH | 1JJS32D7DL751939 | 6/1/21 | $15,500 |

| 919 | 2013 | WABASH | | 1JJS32D5DL751941 | 6/1/21 | $15,500 |
|---|---|---|---|---|---|---|
| 920 | 2013 | WABASH | | 1JJS32D5DL751942 | 6/1/21 | $15,500 |
| 921 | 2013 | WABASH | | 1JJS32D4DL751932 | 6/1/21 | $15,500 |
| 922 | 2012 | WABASH | | 1JJS32D0CL580756 | 6/1/21 | $14,800 |
| 923 | 2012 | WABASH | | 1JJS32D2CL580757 | 6/1/21 | $14,800 |
| 924 | 2018 | WABASH | | 1JJV532D4JL046656 | 6/1/21 | $25,000 |
| 925 | 2018 | WABASH | | 1JJV532D6JL046657 | 6/1/21 | $25,000 |
| 926 | 2018 | WABASH | | 1JJV532DXJL046659 | 6/1/21 | $25,000 |
| 927 | 2018 | WABASH | | 1JJV532D8JL046661 | 6/1/21 | $25,000 |
| 928 | 2018 | WABASH | | 1JJV532DXJL046662 | 6/1/21 | $25,000 |
| 929 | 2018 | WABASH | | 1JJV532D1JL046663 | 6/1/21 | $25,000 |
| 930 | 2018 | WABASH | | 1JJV532D3JL046664 | 6/1/21 | $25,000 |
| 931 | 2018 | WABASH | | 1JJV532D8JL046658 | 6/1/21 | $25,000 |
| 932 | 2018 | WABASH | | 1JJV532D1JL089125 | 6/1/21 | $25,000 |
| | 1999 | ZIMMERMAN | | 1Z9FE18B1XN108790 | 11/1/21 | $10,000 |
| | | | | | | |
| | | JA Total Physical Damage all Equipment Values: | | | | $1,848,600 |
| | | NON OWNED | | | | $30,000 |
| | | Total Physical Damage all Equipment Values: | | | | $1,878,600 |

DELETIONS

| TRAILERS | | | | | |
|---|---|---|---|---|---|
| 655 | 2000 | STRICK | 1S12E9538YD450545 | 6/1/21 | $5,000 |
| 664 | 2000 | STRICK | 1S12E9537YD454024 | 6/1/21 | $5,000 |
| 702 | 2003 | WABASH | 1JJV532W83L846994 | 6/1/21 | $5,900 |
| 740 | 2003 | GREAT DAN | 1GRAA06283D401342 | 6/1/21 | $5,900 |
| | | | | | |

J.A. Trucking Inc.
1105 Plummer School Road
West Newton, Pa. 15089

Driver Listing as of 07/21/2022

| Dr# | Drivers Name | B Date | Hired | SSN | License |
|---|---|---|---|---|---|
| | | / / | / / | - - | |
| 194 | WILLIAM M DAY | 08/14/1966 | 03/16/2012 | 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 | PA 21 060 883/CDL |
| 276 | ANTON L STEFL | 05/16/1967 | 06/19/2006 | 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 | PA 21 279 465/CDL |
| 331 | RAYMOND L BARKLEY | 09/29/1961 | 07/08/2010 | 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 | PA 19 713 377/CDL |
| 340 | JOHN R POPROSKY | 11/27/1956 | 02/03/2022 | 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 | PA 17 628 251/CDL |
| 415 | RAYMOND MCWILLIAMS | 11/25/1963 | 09/16/2016 | 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 | PA 21 444 839/CDL |
| 418 | GREGORY BERBERICK | 03/08/1984 | 03/16/2022 | 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 | PA 26 706 338/CDL |
| 435 | TIMOTHY P. DYE | 07/16/1960 | 09/26/2017 | 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 | PA 19 881 771/CDL |
| 437 | KEVIN P GOUKER | 01/28/1970 | 10/25/2017 | 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 | PA 22 070 928/CDL |
| 446 | LARRY HENRY | 06/12/1951 | 06/12/2018 | 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 | PA 16 023 757/CDL |
| 459 | TY DANIELS | 04/02/1974 | 05/05/2022 | 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 | PA 243 94 442/CDL |
| 468 | JAMES A. COLBERT | 03/31/1977 | 08/02/2021 | 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 | PA 25 309 845/CDL |
| 475 | KEITH P BOCK | 02/26/1968 | 10/02/2019 | 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 | PA 22 776 570/CDL |
| 476 | SCOTT TOGNARINI | 12/11/1968 | 09/17/2021 | 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 | PA 21 854 579/CDL |
| 478 | JASON M ZACKS | 05/22/1976 | 11/26/2019 | 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 | PA 23 905 818/CDL |
| 498 | NICHOLAS J CROWLEY | 05/26/1980 | 01/21/2021 | 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 | PA 26 623 300/CDL |
| 502 | SCOTT E BORNTRAGER | 10/01/1994 | 04/20/2021 | 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 | PA 33 664 475/CDL |
| 504 | JOHN J ELLIS | 10/04/1989 | 07/12/2021 | 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 | PA 28 962 306/CDL |
| 511 | JOSEPH M SCHOOL | 11/17/1985 | 10/05/2021 | 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 | PA 27 553 043/CDL |
| 513 | BRANDON CORDERO | 09/03/1984 | 10/13/2021 | 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 | PA 27 840 709/CDL |
| 518 | WILLIAM J SHANK | 02/28/1984 | 12/06/2021 | 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 | PA 267 05 587/CDL |
| 520 | KEVIN BRESNAHAN | 01/18/1962 | 02/14/2022 | 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 | PA 60 004 061/CDL |
| 522 | DAVID SHAFFER | 05/16/1970 | 02/28/2022 | 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 | PA 22 095 194/CDL |
| 525 | JAYMZ J BOSACK | 08/04/1993 | 06/27/2022 | 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 | PA 30 134 755/CDL |
| 526 | KRISHNAKUMAR KANDASAMY | 11/28/1987 | 07/05/2022 | 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 | PA 31 852 853/CDL |
| 997 | JEFFREY A. FRANCIA | 12/28/1954 | 06/08/1984 | 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 | PA 15 196 953/CDL |
| 5056 | TIMOTHY J BIGLEY | 04/19/1969 | 05/23/2016 | 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 | PA 22 173 777/CDL |
| 5192 | DAVID YUVAN | 08/12/1966 | 08/18/2017 | 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 | PA 21 057 612/CDL |
| 5194 | MICHAEL ALLSBROOKS | 11/05/1969 | 01/31/2018 | 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 | PA 26 971 266/CDL |
| 5223 | TRACY JACKSON | 07/13/1988 | 10/25/2021 | 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 | PA 29 076 600/CDL |
| 5224 | SCOTT SMITH | 08/17/1968 | 05/10/2022 | 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 | PA 30 269 324/PA |
| 5225 | LUCAS M SIVY | 06/18/1982 | 06/23/2022 | 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 | PA 26 497 379/CDL |

# **EXHIBIT B**

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

STEVEN PLAZIO, as ADMINISTRATOR
of the ESTATE OF SAMUEL R. PLAZIO,

                         Plaintiff,

                vs.

PACKAGING CORPORATION OF AMERICA,
a DELAWARE CORPORATION, WILLIAM DAY,
and J A TRUCKING INC.,
a PENNSYLVANIA CORPORATION;

                     Defendants.

CIVIL DIVISION

GD NO. 22-12158

---

### COMPLAINT IN CIVIL ACTION

        AND NOW comes the Plaintiff, Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, and files the following Complaint in Civil Action against the Defendants, Packaging Corporation of America, a Delaware Corporation, William Day, and J A Trucking, Inc., averring in support as follows:

        1.      The Plaintiff, Steven Plazio, is an adult individual who resides at 303 Marengo Lane, Pennsylvania Furnace, Centre County, Pennsylvania 16865. Steven Plazio was sworn in as the Administrator of the Estate of Samuel R. Plazio on June 23, 2022.

        2.      The Defendant, Packaging Corporation of America ("PCA"), is a Delaware Corporation with a local address at 499 Nixon Road, Cheswick, Allegheny County, Pennsylvania 15024.

        3.      The Defendant, William Day ("Day"), is an adult individual with a last known address at 137 McCune Road, Ruffsdale, Westmoreland County, Pennsylvania 15679.

4.     The Defendant, J A Trucking Inc. ("J A"), is a Pennsylvania Corporation with an address at 212 Country Lane, West Newton, Westmoreland County, Pennsylvania 15089.

5.     The incident giving rise to this lawsuit, which ultimately resulted in the tragic death of Plaintiff's decedent, Samuel Plazio, occurred on June 6, 2022, in Cheswick, Allegheny County, Pennsylvania, on the property owned and operated by Defendant PCA.

6.     At all times relevant hereto, Plaintiff believes and therefore avers that Defendant PCA conducted business producing and distributing packaging materials throughout the United States, and specifically at their warehouse and manufacturing facility at 499 Nixon Road, Cheswick, Allegheny County, Pennsylvania.

7.     Defendant PCA's Nixon Road facility consists of a narrow thoroughfare for the ingress and egress of tractor trailers continuously arriving and leaving the facility.

8.     This thoroughfare runs parallel to an area with twenty-seven (27) loading docks located on the northwest side of the facility.

9.     The thoroughfare is also lined with unhitched trailers, on the side opposite the loading docks, that are staged there to be moved and loaded and/or are loaded and waiting to be hauled from the facility, further narrowing and congesting the thoroughfare for the ingress and egress of tractor trailers.

10.     At all times relevant hereto, Plaintiff believes and therefore avers that Defendant J A conducted business as a trucking company and provided various trucking and hauling services throughout the Commonwealth of Pennsylvania and, specifically, at Defendant PCA's Nixon Road facility.

11.     Plaintiff believes and therefore avers that at all times relevant, Defendant J A contracted with Defendant PCA to provide trucking services at the Nixon Road facility and specifically to provide drivers, known as "lot jockeys", at the facility to move and jockey trailers to and from the loading docks from various spots along the thoroughfare.

12.     Plaintiff believes and therefore avers that at all times relevant, Defendant William Day was employed by Defendant J A as a driver and assigned to Defendant PCA's Nixon Road facility, whose duties included, but were not limited to, utilizing a tractor to hitch on to trailers from various spots in the thoroughfare and move them to and from the various loading docks.

**FACTS OF THE UNSAFE NATURE OF THE CONGESTION AND TRAFFIC CAUSED BY TRUCKS AND TRAILERS AT DEFENDANT PCA'S NIXON ROAD FACILITY**

13.     Defendant PCA's Nixon Road facility, and specifically the area of the thoroughfare providing access to trucks and trailers to the loading docks, is oriented in such a way and congested with stationary trailers and idling trucks, that causes traffic to be constrained from safely maneuvering around the facility.

14.     In addition, during regular business hours, it is customary at Defendant PCA's Nixon Road facility for multiple pedestrians to be wandering about the lot of the facility, including, but not limited to, employees of Defendant PCA and/or drivers making deliveries to the facility, in the areas of the thoroughfare, the parked trailers, and/or the loading docks, bays, stalls, and pedestrian aisleways.

15.     During regular business hours, it is customary at Defendant PCA's Nixon Road facility for multiple trucks, with or without trailers, and whether they be arriving or departing the facility, or jockeying trailers around the lot, to be moving around the cramped facility, and specifically within the thoroughfare adjacent to the loading docks, creating congested and constrained traffic conditions.

16.     Due to the layout and orientation of the building, much of the maneuvering of trucks and trailers, including, but not limited those operated by Defendant Day, on the date of the incident described in this Complaint, as well as previously, must be done in reverse and in switchback and T-moves, considerably restricting a driver's vision, sight lines, and ability to see and discover pedestrians or other hazards which may be obstructing their travel.

17.     The areas around the loading dock bays and stalls of Defendant PCA's Nixon Road facility, and specifically near loading dock 25 where the subject accident took place, are quite narrow, allowing for only a narrow aisleway for pedestrians, such as Plaintiff's decedent, providing no safe refuge for such pedestrians other than those narrow aisleways.

18.     Due to the configuration of the bays, stalls, and pedestrian aisleways of Defendant PCA's Nixon Road facility, drivers, including, but not limited to Defendant Day, operating a full-length tractor-trailer in reverse must carefully "thread a needle," causing their attention to be carefully focused on the movement of the tractor trailer as it backs towards the dock door, and not on any potential pedestrian or other obstacle or hazard, such as Plaintiff's decedent.

19.     Due to the configuration of the bays, stalls, and pedestrian aisleways of Defendant PCA's Nixon Road facility, drivers, including, but not limited to Defendant Day, operating a full-length tractor-trailer in reverse, have a severely restricted rearview of anything or anyone near the loading dock door or near the loading dock itself.

20.     During regular business hours, it is customary at Defendant PCA's Nixon Road facility for multiple backing alarm of tractor-trailers blaring at the same time, making it impossible for pedestrians to be alerted to any particular trailer moving in reverse.

**FACTS OF PLAINTIFFS DECEDENT SAMUEL R. PLAZIO'S TRAGIC DEATH**

21.     On June 6, 2022, Plaintiff's decedent was employed by Shanahan Transportation as a truck driver operating a box truck, and in the course and scope of his employment, he arrived at Defendant PCA's Nixon Road facility to make a delivery operating a box truck.

22.     Because the Nixon Road facility has no security gate or exterior office for directing incoming trucks as to where to go, Plaintiff's decedent was forced to park his box truck in the thoroughfare near the middle of the facility and exit his truck in order to locate an employee of Defendant PCA who could direct him where to go.

23.     After receiving instructions to proceed to Bay 26, Plaintiff's decedent returned to his truck and drove to Bay 26 to complete his delivery.

24.     After arriving at Bay 26, Plaintiff's decedent backed his truck to the loading dock so that his delivery could be completed.

25.     After backing up his truck to the loading dock, Plaintiff's decedent exited the truck, and due to the configuration of the loading dock bays and stalls, his exit placed him within a close proximity of the pathway of a tractor trailer that would be backing up to reach the loading dock of Bay 25, such as Defendant Day.

26.     At some time after Plaintiff's decedent exited his truck, Defendant Day hooked onto a trailer with a tractor and drove to the area of the lot near Bay 25.

27.     Due to the congested nature of the lot, included numerous parked trailers, as well as the configuration of the lot and thoroughfare, Defendant Day had to utilize switchbacks, T-moves and reverse driving in order to position his tractor trailer to be able to back up to the loading dock of Bay 25.

28.     Due to the need of Defendant Day to utilize these maneuvers to back into Bay 25, his sight lines to the loading dock were blocked by other trailers already parked by the load dock bays adjacent to Bay 25.

29.     Prior to initiating his switchbacks, T-moves, and reverse driving, Defendant Day failed to look for pedestrians or other hazards, including, but not limited to the presence of Plaintiff's decedent, within the path of his trailer as he proceeded to back into Bay 25.

30.     Additionally, prior to initiating his switchbacks, T-moves, and reverse driving, Defendant Day failed to take any steps to provide a warning to any pedestrians who may have been in his trailer's path to Bay 25, such as Plaintiff's decedent.

31.     Defendant Day began backing his tractor trailer toward the loading dock of Bay 25 and failed to notice Plaintiff's decedent standing directly in his trailer's path.

32.     As Defendant Day continued backing toward the loading dock of Bay 25, Defendant Day's trailer struck Plaintiff's decedent in the back and/or buttocks and pinned his body at approximately abdomen level between the rear of Defendant Day's trailer and the loading dock of Bay 25.

33.     After Defendant Day backed his truck to loading dock 25, he unhitched his trailer and drove his tractor away from loading dock 25 without exiting his tractor to visibly inspect the connection between the loading dock and his trailer to determine whether there was anything obstructing this attachment, such as Plaintiff's decedent.

34.     Plaintiff's decedent's body was pinned between the trailer and the loading dock, causing him to be unable to breath and offering him no opportunity to retreat or free himself from being pinned between the trailer and the loading dock.

35.     Plaintiff's decedent was not discovered until an employee of Defendant PCA opened the loading dock door of Bay 25 and shockingly found Plaintiff's decedent blue in the face and bleeding from his ears.

36.     As he was slowly crushed to death, Plaintiff's decedent was still alive for such a time period that he would have been cognizant of the excruciating pain and fully aware of his impending death.

37.     After unknowingly pinning Plaintiff's decedent, Defendant Day drove his tractor to the opposite side of the Nixon Road facility before he was informed that he pinned Plaintiff's decedent between the trailer and loading dock of Bay 25.

38.     At this point, he contacted a fellow lot jockey to move the trailer pinning Plaintiff's decedent, and slowly crushing him to death, to give emergency personnel an opportunity to administer potential lifesaving treatment.

39.     The responding emergency personnels' efforts were futile, and Plaintiff's decedent was pronounced dead at the scene, with the ultimate cause of death ruled as blunt force trauma to the torso.

**COUNT I – SURVIVAL ACTION**

**Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, deceased**

**v. Packaging Corporation of America**

40.     Plaintiff incorporates Paragraphs 1 through 39 of this Complaint as if the same were set forth herein at length.

41.     All of the resultant losses, damages, and injuries sustained by Plaintiff's decedent were the direct and proximate result of the negligent and careless conduct of Defendant PCA, as follows:

a.    In operating, maintaining, and providing for use to an unsafe facility for delivery drivers, generally, and Plaintiff's decedent, specifically;

b.    In operating, maintaining, and providing for use to employees, contractors, business invitees, and authorized personnel an unsafe facility for anyone operating any vehicle on the property such that they are forced to endure constrained maneuvering in the traffic ways of the facility;

c.    In operating, maintaining, and providing for use to employees, contractors, business invitees, and authorized personnel an unsafe facility for anyone operating a vehicle on the property, or pedestrians, such as Plaintiff's decedent, by allowing various trucks, tractors, and/or trailers to be positioned in such a way that makes ingress and egress unreasonably dangerous;

d.    In operating, maintaining, and providing for use to employees, contractors, business invitees, and authorized personnel an unsafe facility for pedestrians, such as Plaintiff's decedent, near the loading dock by providing unreasonably narrow bays, stalls, and/or pedestrians aisleways;

e.    In operating, maintaining, and providing for use to employees, contractors, business invitees, and authorized personnel an unsafe facility which includes a layout and design which requires trucks backing trailers to the loading dock, such as Defendant Day, to have to utilize switchbacks, T-moves, and reverse driving at odd angles to access the loading dock, constituting an unreasonable risk of harm to others, such as Plaintiff's decedent;

f.    In operating, maintaining, and providing for use to employees, contractors, business invitees, and authorized personnel an unsafe facility which included a layout and design which required trucks backing trailers to the loading dock, such as Defendant Day, to have severely restricted rearview sightlines;

g.    In failing to require any drivers backing trailers into the loading docks of their facility, including, but not limited to Defendant Day, to ensure their path to the loading dock

is free from obstructions and/or hazards, such as Plaintiff's decedent, prior to backing into a bay;

h. In failing to design the layout and arrangement of their lot adjacent to the loading dock of their facility in such a way that would be safe for pedestrians, such as Plaintiff's decedent;

42. As a direct result of the negligent and careless conduct of Defendant PCA, Plaintiff claims the following on behalf of the Estate of Samuel Plazio:

a. Pain, suffering, mental anguish, and inconvenience sustain by Plaintiff's decedent;

b. Decedent's future earning power;

c. Decedent's loss of retirement benefits and social security income; and

d. Expenses for the administration of the Estate.

WHEREFORE, the Plaintiff, Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, respectfully requests judgment in his favor and against Defendants, Packaging Corporation of America, William Day, and J A Trucking Inc., in an amount in excess of the arbitration limits of this Court, plus costs of suit as sustained.

## COUNT II – WRONGFUL DEATH

### Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, deceased

### v. Packaging Corporation of America

43. The Plaintiff incorporates Paragraphs 1 through 42 of this Complaint as if the same were set forth herein at length.

44. As a result of the foregoing, Plaintiff sets forth the following beneficiaries under the Wrongful Death Act of the Commonwealth of Pennsylvania who suffered damages:

a. Steven Plazio
   303 Marengo Lane
   Pennsylvania Furnace,
   Pennsylvania 16865

45.     As a result of the foregoing, Plaintiff claims damages under the Wrongful Death Act of the Commonwealth of Pennsylvania for and on behalf of the Decedent's aforementioned next of kin:

a.   Loss of services, consortium, and contribution, which the Plaintiff's decedent would have rendered during his lifetime had he not been killed by the conduct of the Defendants;

b.   Funeral and burial expenses; and

c.   Expenses of the administration of the Estate.

WHEREFORE, the Plaintiff, Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, respectfully requests judgment in his favor and against Defendants, Packaging Corporation of America, William Day, and J A Trucking Inc., in an amount in excess of the arbitration limits of this Court, plus costs of suit as sustained.

## COUNT III – SURVIVAL ACTION

### Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, deceased v. William Day

46.     Plaintiff incorporates Paragraphs 1 through 43 of this Complaint as if the same were set forth herein at length.

47.     All of the resultant losses, damages, and injuries sustained by Plaintiff's decedent were the direct and proximate result of the negligent and careless conduct of Defendant Day, as follows:

a.   In operating his tractor trailer in such a way so as to create an unreasonable risk of harm to foreseeable pedestrians located near the loading dock, such as Plaintiff's decedent;

b.   In failing to keep a reasonable lookout for hazards or obstructions in his path to the loading dock, such as Plaintiff's decedent;

c.   In failing to have his vehicle under proper and adequate control under the circumstances;

d.   In failing to use and/or apply the braking mechanism, or take any other reasonable steps to avoid a striking Plaintiff's decedent;

e.    In failing to observe Plaintiff's decedent until he had no opportunity to avoid striking Plaintiff's decedent;

f.    In failing to observe pedestrians, such as Plaintiff's decedent, located in his path to the loading dock;

g.    In failing to operate his tractor trailer in a reasonable manner under the circumstances;

h.    In failing to adhere to the policies and procedures of Defendant J A with regard to the safe operation of tractors and/or trailers within the scope of his employment; and

i.    In failing to adhere to the policies and procedures of Defendant PCA with regard to the safe operation of tractors and/or trailers on their property within the scope of this employment.

48.    As a direct result of the negligent and careless conduct of Defendant Day, Plaintiff claims the following on behalf of the Estate of Samuel Plazio:

a.    Pain, suffering, mental anguish, and inconvenience sustain by Plaintiff's decedent;

b.    Decedent's future earning power;

c.    Decedent's loss of retirement benefits and social security income; and

d.    Expenses for the administration of the Estate.

WHEREFORE, the Plaintiff, Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, respectfully requests judgment in his favor and against Defendants, Packaging Corporation of America, William Day, and J A Trucking Inc., in an amount in excess of the arbitration limits of this Court, plus costs of suit as sustained.

**COUNT IV – WRONGFUL DEATH**

**Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, deceased v. William Day**

49.    The Plaintiff incorporates Paragraphs 1 through 48 of this Complaint as if the same were set forth herein at length.

50.     As a result of the foregoing, Plaintiff sets forth the following beneficiaries under the Wrongful Death Act of the Commonwealth of Pennsylvania who suffered damages:

   a.  Steven Plazio
       303 Marengo Lane
       Pennsylvania Furnace,
       Pennsylvania 16865

51.     As a result of the foregoing, Plaintiff claims damages under the Wrongful Death Act of the Commonwealth of Pennsylvania for and on behalf of the Decedent's aforementioned next of kin:

   a.  Loss of services, consortium, and contribution, which the Plaintiff's decedent would have rendered during his lifetime had he not been killed by the conduct of the Defendants;

   b.  Funeral and burial expenses; and

   c.  Expenses of the administration of the Estate.

WHEREFORE, the Plaintiff, Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, respectfully requests judgment in his favor and against Defendants, Packaging Corporation of America, William Day, and J A Trucking Inc., in an amount in excess of the arbitration limits of this Court, plus costs of suit as sustained.

**COUNT V – SURVIVAL ACTION**

**Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, deceased v. J A Trucking, Inc.**

51.     Plaintiff incorporates Paragraphs 1 through 50 of this Complaint as if the same were set forth herein at length.

52.     All of the resultant losses, damages, and injuries sustained by Plaintiff's decedent were the direct and proximate result of the negligent and careless conduct of Defendant Day, for which Defendant J A is vicariously liable, as follows:

   a.  In operating his tractor trailer in such a way so as to create an unreasonable risk of harm to foreseeable pedestrians located near the loading dock, such as Plaintiff's decedent;

b.  In failing to keep a reasonable lookout for hazards or obstructions in his path to the loading dock, such as Plaintiff's decedent;

c.  In failing to have his vehicle under proper and adequate control under the circumstances;

d.  In failing to use and/or apply the braking mechanism, or take any other reasonable steps to avoid a striking Plaintiff's decedent;

e.  In failing to observe Plaintiff's decedent until he had no opportunity to avoid striking Plaintiff's decedent;

f.  In failing to observe pedestrians, such as Plaintiff's decedent, located in his path to the loading dock;

g.  In failing to operate his tractor trailer in a reasonable manner under the circumstances;

h.  In failing to adhere to the policies and procedures of Defendant J A with regard to the safe operation of tractors and/or trailers within the scope of his employment; and

i.  In failing to adhere to the policies and procedures of Defendant PCA with regard to the safe operation of tractors and/or trailers on their property within the scope of this employment.

53.  All of the resultant losses, damages, and injuries sustained by Plaintiff's decedent were the direct and proximate result of the negligent and careless conduct of Defendant J A, individually, as follows:

a.  In hiring Defendant Day as a driver when they knew or should have known that he was not qualified to safely operate a tractor trailer;

b.  In engaging the services of Defendant Day as a driver, when they knew or should have known he was not qualified to safely operate a tractor trailer;

c.  In failing to adequately train, supervise, and instruct Defendant Day in a manner as to how to properly and safely operate said tractor trailer;

      d.    In allowing Defendant Day to remain in their employ when they knew or should have known he was not qualified to safely operate the tractor trailer;

54.    As a direct result of the negligent and careless conduct of Defendant J A, Plaintiff claims the following on behalf of the Estate of Samuel Plazio:

      e.    Pain, suffering, mental anguish, and inconvenience sustain by Plaintiff's decedent;

      f.    Decedent's future earning power;

      g.    Decedent's loss of retirement benefits and social security income; and

      h.    Expenses for the administration of the Estate.

WHEREFORE, the Plaintiff, Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, respectfully requests judgment in his favor and against Defendants, Packaging Corporation of America, William Day, and J A Trucking Inc., in an amount in excess of the arbitration limits of this Court, plus costs of suit as sustained.

## COUNT VI – WRONGFUL DEATH

### Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, deceased v. J A Trucking, Inc.

55.    The Plaintiff incorporates Paragraphs 1 through 54 of this Complaint as if the same were set forth herein at length.

56.    As a result of the foregoing, Plaintiff sets forth the following beneficiaries under the Wrongful Death Act of the Commonwealth of Pennsylvania who suffered damages:

      a.    Steven Plazio
           303 Marengo Lane
           Pennsylvania Furnace,
           Pennsylvania 16865

57.    As a result of the foregoing, Plaintiff claims damages under the Wrongful Death Act of the Commonwealth of Pennsylvania for and on behalf of the Decedent's aforementioned next of kin:

      d.    Loss of services, consortium, and contribution, which the Plaintiff's decedent would have rendered during his lifetime had he not been killed by the conduct of the Defendants;

   e.   Funeral and burial expenses; and

   f.   Expenses of the administration of the Estate.

WHEREFORE, the Plaintiff, Steven Plazio, as Administrator of the Estate of Samuel R. Plazio, respectfully requests judgment in his favor and against Defendants, Packaging Corporation of America, William Day, and J A Trucking Inc., in an amount in excess of the arbitration limits of this Court, plus costs of suit as sustained.

Respectfully submitted,

Conlon Tarker, P.C.

Raymond J. Conlon, Esquire
Matthew T. McCune, Esquire

**CERTIFICATE OF SERVICE**

I hereby certify that the within document was served upon counsel named below on the

_____ 5ᵗʰ _____ day of October, 2023 by:

_____ (fax), ___X___ e-mail, _____ first class, U.S. mail, postage prepaid:

Mark A. Eck, Esquire
Tucker Arensburg, P.C.
One PPG Place
Suite 1500
Pittsburgh, PA 15222
*sent by email to meck@tuckerlaw.com*

Alan T. Silko, Esquire
SILKO & ASSOCIATES, P.C.
80 Emerson Lane
Suite 1305
Bridgeville, PA 15017

**Sent by email to asilko@silkolaw.com**

Conlon Tarker, P.C.

_____

Raymond J. Conlon, Esquire
Matthew T. McCune, Esquire
Attorneys for Plaintiff