UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Packaging Corporation of America, <br><br> Plaintiff, <br><br> v. <br><br> Northland Insurance Company, <br><br> Defendant. | No. 24-cv-01581 <br><br> Judge April M. Perry |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Packaging Corporation of America ("PCA") filed this case against Defendant Northland Insurance Company ("Northland") for declaratory judgment, breach of contract, and extra-contractual relief with respect to an insurance policy issued from Northland to J.A. Trucking, Inc. ("JA"), which names PCA as an additional insured (the "Policy"). Doc. 1. Northland has moved to dismiss PCA's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief can be granted. Doc. 10. For the reasons set forth below, Northland's motion is denied.

**Background**

    PCA's claims arise out of Northland's alleged failure to defend PCA in connection with a Pennsylvania lawsuit. That lawsuit (the "*Plazio* suit") arose out of the death of Samuel Plazio. According to the complaint in the *Plazio* suit (the "*Plazio* complaint"), Mr. Plazio was killed when a driver employed by JA, William Day, backed his truck into Mr. Plazio, pinning Mr. Plazio between the truck and a loading dock at a PCA facility. The *Plazio* complaint alleges that JA, Mr. Day, and PCA negligently caused Mr. Plazio's death. As to PCA, the *Plazio* complaint specifically alleges that PCA was negligent in operating and maintaining an unsafe facility where trucks, tractors and/or trailers were congested and forced to maneuver in ways that gave drivers severely limited visibility, especially when backing up.

    The Policy provides that Northland will reimburse all sums that an insured becomes legally obligated to pay as damages because of bodily injury caused by an accident resulting from the ownership, maintenance or use of a covered auto. It also provides that Northland will defend any insured against a suit seeking such damages. Believing that Northland owed it a duty

to defend against the *Plazio* suit, PCA reached out to Northland in mid-October 2023 notifying Northland of the *Plazio* suit and seeking defense and indemnity.

Northland initially responded to PCA's notice in late October 2023, communicating that it was in the process of evaluating PCA's request and would respond. Northland did not provide a coverage determination or seek additional information from PCA through January 2024, even though on January 9, 2024, counsel for PCA contacted Northland via email, imploring Northland to provide PCA with a coverage determination. PCA reached out to Northland again on February 1, 2024. PCA reminded Northland via email that it still owed PCA a coverage determination. On February 7, 2024, Northland denied coverage to PCA for the *Plazio* suit, "asserting that PCA does not qualify for coverage under the Policy on the purported basis that the Plazio suit's allegations against PCA are 'for PCA's independent acts of negligence.'" Doc. 23 at 6.

On February 26, 2024, PCA filed this suit against Northland. PCA argues that Northland breached its contractual obligations under the Policy by failing and refusing to perform its duty to defend PCA in connection with the *Plazio* suit. PCA seeks both damages and declaratory relief in connection with this alleged breach, asking the Court to declare that Northland is obligated to defend PCA against the *Plazio* suit under the Policy. PCA also brings a claim for extra-contractual relief, to the extent that Pennsylvania law applies, alleging that "Northland's breaches of the Policy and failure to defend PCA are unreasonable, frivolous, unfounded, outrageous and/or otherwise in violation of common law and applicable statute, including but not limited to 42 Pa. C.S.A. § 8371." Doc. 23 at 8. At least for the purposes of this motion, this last claim essentially accuses Northland of bad faith.

On April 11, 2024, Northland filed a motion to dismiss. In it, Northland argues that PCA's complaint fails to state a claim upon which relief can be granted because PCA is not covered under the Policy. The Policy includes two types of coverage under which PCA might be entitled to coverage—the Commercial General Liability ("CGL") coverage and Commercial Auto Coverage. The Commercial Auto Coverage insures against "damages because of 'bodily injury' … caused by an 'accident' and resulting from the … use of a covered 'auto'" and requires Northland to defend an insured against suits seeking such damages. Doc. 23 at 48. The CGL coverage insures against "damages because of 'bodily injury'" and similarly includes a duty to defend. *Id*. at 97. However, CGL coverage is subject to an exclusion that bars coverage for bodily injury arising out of the use of an auto by an insured (the "Auto Exclusion"). *Id*. at 99. Northland argues that the Auto Exclusion applies such that PCA is not covered by CGL coverage and also argues that the *Plazio*-suit claims against PCA are not covered by the Commercial Auto Coverage. Therefore, Northland argues it does not owe PCA a duty to defend, and it never had a contractual obligation to PCA to breach. Finally, Northland challenges the sufficiency of PCA's

bad faith claims, arguing that because it owes no coverage to PCA, PCA's claims fail as a matter of law.[1]

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## Analysis

The parties agree that Illinois law determines Northland's duty to defend. Under Illinois law, the duty to defend is only excused if "it is clear from the face of the [underlying] complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Int'l Ins. Co. v. Rollprint Packaging Prods., Inc.*, 728 N.E.2d 680, 688 (Ill. App. Ct. 2000).

"When construing the language of an insurance policy" to determine coverage, "a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007). The policy "is to be construed as a whole, giving effect to every provision" and "taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose of the contract." *Id.* "If the words used in the insurance policy are reasonably susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy," particularly "with respect to provisions that limit or exclude coverage." *Id.* "If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning, and the policy will be applied as written, unless it contravenes public policy." *Id.* (internal citations omitted).

### *CGL Coverage and the Auto Exclusion*

---

[1] The parties agree to delay the choice-of law determination as to the bad-faith related claims until after the motion to dismiss is resolved. *See* Doc. 11 at 13–14; Doc. 24 at 13.

The Court begins by analyzing whether PCA has adequately stated a claim for CGL Coverage. For the purposes of this motion to dismiss, Northland concedes that PCA is considered an additional insured under the Policy with JA. However, Northland contends that the Auto Exclusion renders CGL coverage inapplicable to PCA. The Auto Exclusion provides that Northland has no duty to defend insureds against suits seeking damages for "'bodily injury' … arising out of … use of any … 'auto' … owned or operated by … any insured." Doc. 23 at 99. Northland argues that this exception bars coverage because Mr. Plazio's bodily injury arose out of use of an 'auto' operated by an insured. Specifically, Mr. Day was operating the truck when it pinned and killed Mr. Plazio, and Mr. Day is an insured for acts within the scope of his employment, such as driving. As a result, Northland argues it owes PCA no coverage.

The Court agrees with Northland's application of the Auto Exclusion. *Westfield Insurance Co. v. Vandenberg* provides useful guidance in this regard. 796 F.3d 773, 781 (7th Cir. 2015). In *Vandenberg*, the Seventh Circuit was tasked with interpreting a substantially similar policy exclusion which excluded from coverage "'[b]odily injury' ... arising out of the ownership, maintenance, use or entrustment to others of any ... watercraft owned or operated by or rented or loaned to any insured." 796 F.3d at 780. According to the *Vandenberg* complaint, the underlying plaintiff, Mr. Vandenberg, had been sitting on a bench on the top deck of a yacht and fell when the bench tipped over. *Id.* at 783. There was no railing to stop his fall, so he fell a substantial distance and suffered paralysis. *Id.* Mr. Vandenberg alleged that the insured-defendant's failure to provide a railing or prevent him from accessing the top deck of the yacht was negligent. *Id.* Applying Illinois law, the Seventh Circuit stated that "an insurance policy does not provide coverage for claims that are 'intertwined with an excluded liability." *Id.* at 781 (quoting *Nautilus Ins. Co. v. 1452–4 N. Milwaukee Ave., LLC,* 562 F.3d 818, 822 (7th Cir. 2009)). Thus, unless the plaintiff in the underlying suit alleges an injury independent of the injury sustained as a result of the excluded liability, the presence of an alternative theory of relief in connection with the claims against the party seeking coverage is not enough to bring those claims outside of the exclusion. *Id.* The Seventh Circuit then cited the Illinois Supreme Court for the related rule that a policy exclusion bars coverage unless the underlying complaint alleges that the injuries associated with the putative insured's conduct arose from events "wholly independent" of any negligent operation of the excluded vehicle. *Id.* at 781-82 (quoting *Northbrook Prop. & Cas. Co. v. Transp. Joint Agreement*, 194 Ill. 2d 96, 99, 741 N.E.2d 253, 254 (2000)). Applying these principles, the *Vandenberg* court held that the underlying plaintiff's alleged accident and resulting injuries were not wholly independent of the negligent operation, maintenance, or use of the yacht. *Id.* Thus, the claims were intertwined and the exclusion barred coverage.

The relevant facts here are substantially similar to those in *Vandenberg*, warranting the same result. The Auto Exclusion's language, save for the types of vehicles referenced, is nearly the same as the language of the exclusion in *Vandenberg*. The Auto Exclusion excepts from coverage suits seeking damages for "'bodily injury' … arising out of… use of any … 'auto … owned or operated by … any insured." Doc. 23 at 99; *Vandenberg*, 796 F.3d at 780 (interpreting

clause "'[b]odily injury' ... arising out of … use or entrustment to others of any ... watercraft owned or operated by … any insured"). PCA does not contest that Mr. Plazio's bodily injury arose out of Mr. Day's use of an auto, and that Mr. Day is an insured. PCA argues only that the claims lodged against did not arise out of that use, pointing to the fact that PCA is being sued for its own alleged negligence. But Mr. Plazio's death, the injury complained of in the *Plazio* suit, is not wholly independent from the injury sustained as a result of PCA's alleged negligence—the injury is exactly the same. And as Northland rightly describes, the claims against PCA and Mr. Day (the latter clearly constituting an excluded liability) are also inextricably intertwined. The *Plazio* complaint alleges that PCA negligently operated and maintained an unsafe facility that prevented drivers from safely maneuvering and required drivers to operate their trucks and trailers in reverse with restricted abilities to see pedestrians behind them. Doc. 23 at 189. Mr. Day is alleged to have backed his trailer towards a loading dock without spotting the decedent standing behind his trailer's path, causing his vehicle to hit Mr. Plazio and causing Mr. Plazio's death. It is certainly possible that Mr. Plazio's death may not have occurred if PCA had not allegedly been negligent in the operation and maintenance of the facility, which forced Mr. Day to maneuver backwards and with restricted rearview sightlines. Thus, like in *Vandenberg*, it cannot be said that injuries are wholly independent or that the claims are not intertwined. And, like in *Vandenberg*, the coverage exclusion applies. As a result, Northland has no coverage obligation to PCA under the CGL coverage provisions, and PCA's claims do not survive through CGL coverage.

In reaching this conclusion, the Court is mindful that the complaint's allegations and any relevant policy provisions must be liberally construed in the insured's favor. *United Servs. Auto. Ass'n v. Dare*, 830 N.E.2d 670, 679 (Ill. App. Ct. 2005). The Court agrees with PCA that there is some overlap between this case and the issue presented in *Dare*. But in light of *Vandenberg,* the Court believes that there can be no construction, not even a liberal one, of the relevant policy provision which favors PCA. Both *Dare* and *Vandenberg* considered the same Illinois Supreme Court case, *Northbrook Prop. & Cas. Co. v. Transp. Joint Agreement*, 194 Ill. 2d 96, 741 N.E.2d 253 (2000), when analyzing whether a claim was intertwined with an excluded liability. *Dare* distinguished *Northbrook* on its facts, whereas *Vandenberg* applied *Northbrook*. In so doing, *Vandenberg* had the benefit of a more recent Illinois Appellate Court opinion than *Dare*, *Maryland Casualty Co. v. Dough Management Co*., 36 N.E.3d 953 (Ill. App. Ct. 2015). Given that *Vandenberg* is both more recent and binding on this Court, *Vandenberg* must prevail. For all of these reasons, the Court finds that PCA has failed to state a claim alleging coverage under the CGL Policy.

### *Commercial Auto Coverage*

The Court next turns to the argument that PCA has failed to state a claim that it is entitled to Commercial Auto Coverage. Northland's duty to defend PCA under the Commercial Auto Coverage provisions turns on whether PCA is an "insured" under the Policy. If PCA is not an insured, then it is not entitled to coverage or Northland's defense. The relevant provision in the

Policy regarding "Who is an Insured" states that an insured includes "Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability." Doc. 23 at 49. The insureds "described above" include Mr. Day and JA. *Id.* Thus, if PCA could be "liable for the conduct of" Mr. Day or JA based upon the *Plazio* suit, then PCA is an insured entitled to Commercial Auto Coverage, and Northland has a duty to defend. Doc. 28 at 6; Doc. 24 at 6.

Northland urges the Court to interpret the phrase "liable for the conduct of" to mean that PCA would be covered only if it were vicariously liable for the conduct of JA or Mr. Day. Because the *Plazio* suit does not allege a theory of vicarious liability against PCA, but instead asserts a claim that PCA is directly liable due to its own negligence, Northland argues that PCA is not an insured for the purposes of the *Plazio* suit. PCA, on the other hand, rejects Northland's vicarious-liability interpretation as inconsistent with the language of the Policy and rules of insurance policy interpretation. PCA argues that the phrase "liable for the conduct of" is at the very least ambiguous as to whether it requires anything more than a factual, but-for causal link between PCA's liability and the conduct of Northland's other insureds. PCA points out that the facts in the *Plazio* complaint make clear that PCA would not be facing any liability but-for the conduct of Mr. Day, the driver of the truck that killed Mr. Plazio. Finally, PCA argues that Pennsylvania state law provides that PCA, if found at least 60% liable, may be held jointly and severally liable for all damages owed in the *Plazio* case. PCA asserts that this too provides a basis for the Court to determine that PCA might be held liable "for the conduct of an insured."

The Court believes PCA's interpretation is more compelling. As PCA rightly points out, Northland could have used policy language specifically limiting coverage to "vicarious liability" had it wanted to do so. *Cf., e.g., Pekin Ins. Co. v. Lexington Station, LLC*, 84 N.E.3d 554, 558 (Ill. App. Ct. 2017) (discussing policy explicitly stating additional insured was covered "only with respect to vicarious liability"). Without that specification, it is not at all clear that the intention of the parties was to limit coverage to situations where PCA is vicariously liable for the conduct of an insured, as opposed to liable for the conduct of an insured based upon some other legal theory. *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007) (emphasizing importance of searching for parties' intentions as evidenced by contractual language). Nor does Northland cite any cases to support its proposed interpretation that liability "for the conduct of an insured" must be interpreted only to include vicarious liability. To the contrary, the cases Northland cites all involve different policy language or are otherwise distinguishable. *E.g.*, *Vulcan Materials Co. v. Cas. Ins. Co.*, 723 F. Supp. 1263, 1264 (N.D. Ill. 1989) (interpreting provision covering "any other person or organization but only with respect to his or its liability because of acts or omissions of an insured" in a negligent failure-to-train context); *Belser v. Rockwood Cas. Ins. Co.*, 791 A.2d 1216, 1223 (Pa. Super. Ct. 2002) (listing vicarious liability as one example of liability "for the conduct" of another but not holding it is the only interpretation).

Meanwhile, PCA demonstrates that there are other reasonable interpretations for the phrase "liable for the conduct of an insured." Those other meanings include the possibility that PCA might ultimately be held jointly and severally liable for the conduct of Mr. Day or JA.

Under Pennsylvania state law, a defendant's liability is joint and several if it is held liable for at least "60% of the total liability apportioned to all parties." 42 Pa. C.S. § 7102(a.1)(3)(iii). The Pennsylvania Supreme Court has explained joint and several liability as follows: "A joint or concurrent tortfeasor whose tortious conduct was the legal cause of a plaintiff's injury bears liability for the full amount of damages … if his tortious conduct, along with the tortious conduct of other tortfeasors, caused an indivisible harm." *Bert Co. v. Turk*, 298 A.3d 44, 62 n.29 (Pa. 2023). Thus, if the jury in the *Plazio* suit finds PCA to be at least 60% at fault, PCA will be jointly and severally liable for all damages, including those attributable to the tortious conduct of JA and Mr. Day. This possibility matches the language of the Policy in a relatively straightforward way; PCA would be liable for the *conduct* of JA or Mr. Day, and the kind of liability would be joint and several.

But Northland asserts that if PCA were held jointly and severally liable for the entire verdict, PCA would owe such sums because of its own conduct. In support of this contention, Northland cites Pennsylvania case law establishing the justification for joint and several liability: Namely, that when two tortfeasors cause an indivisible injury each may be held fully liable for the damages in order to ensure the victim is made whole. While this is indeed the rationale for joint and several liability, it does not mean that the legislature is not also holding one party liable for the conduct of another. To the contrary, if the jury finds Party A 60% liable and Party B 40% liable but Party A has to pay 100% of the damages, Party A is quite literally being held liable "for the conduct of" Party B. The legislature has simply decided that to the extent it has to choose between one wrongdoer paying for the misconduct of another wrongdoer or a victim not being made whole, the better policy choice is to punish the wrongdoer rather than the victim.

PCA also proposes that "liable for the conduct of" can be interpreted to apply whenever there is a but-for causal link between PCA's liability and the conduct of Northland's other insureds. This interpretation finds support in *Great West Casualty Company,* a case applying Illinois law to an identical insurance provision. *Great W. Cas. Co. v. Marathon Oil Co.*, No. 99-cv-3101, 2001 WL 103426, *4 (N.D.Ill. Jan. 31, 2001). The court in *Great West Casualty Company* reviewed Illinois state-court precedent, none of which was directly on point, and decided that the provision could reasonably be interpreted to "refer only to cases where one party is legally responsible for the conduct of the other under a vicarious liability theory" and could also be interpreted to refer only to cases "where one party's conduct factually leads to another's liability." *Id.* Thus, the court concluded the clause was ambiguous, and as ambiguity should be resolved in favor of the insured, the court denied the insurance company's motion to dismiss.

Northland's counter that a "but-for" reading of the phrase would produce absurd results may have some legs. But Northland simply does not develop this argument convincingly enough to establish that the vicarious-liability limitation is the only and unambiguous meaning of the phrase such that it is entitled to dismissal. Moreover, it is not directly responsive to PCA's other proposed alternative, that the phrase "liable for the conduct of" entitles it to coverage when PCA

might be held jointly and severally liable for the conduct of Mr. Day or JA. The Court therefore concludes that PCA has adequately pled a claim for Commercial Auto Coverage.

*Bad Faith*

Finally, Northland argues that PCA's bad faith claims should be dismissed because bad faith claims predicated on a denial of coverage fail as a matter of law when the insurer in fact owes no coverage under the relevant policy. Northland also states that it at least had a reasonable basis for denying coverage, such that a *bona fide* dispute exists, and it should not be held liable. PCA responds that Northland's delay in providing a coverage decision for nearly four months is enough to make out a claim for bad faith. Because the Court determined above that PCA has sufficiently stated a claim for breach in that it might be covered under the Policy, and because PCA's complaint alleges that Northland did not have a reasonable basis for denying coverage or for delaying its decision by four months, the Court believes that the claims are pled adequately enough to survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court denies Northland's motion to dismiss.

Dated: February 18, 2025

_____
APRIL M. PERRY
United States District Judge